



# THE McENERY COMPANY

Est. 1980

## VALUATION & ADVISORY SERVICES

**PREPARED FOR:**
CMP, LLC
Mr. Thomas Carrere
P.O. Box 864
Columbia, MS 39429

**PREPARED BY:**
Baldwin R. Justice, MAI
The McEnery Company
810 Union Street,
Fourth Floor
New Orleans, LA 70112
mceneryco.com

### Recreational Tract of Land South of Rosethorne Road Lafitte, LA 70067

EFFECTIVE DATE OF
MARKET VALUE: June 1, 2024



FILE #    |    24-1748

APPRAISAL REPORT

Recreational Tract of Land – Determination of Just Compensation



## SUBJECT PHOTOGRAPHS









Exterior                                         Exterior





Exterior                                         Exterior





Exterior                                         Exterior

 **THE McENERY COMPANY**

June 27, 2025

Mr. Thomas Carrere
CMP, LLC
P.O. Box 864
Columbia, MS 39429

Re:  Acreage located South of Rosethorne Road
     Lafitte, LA 70067

     **Our File Number:**24-1748

Dear Mr. Carrere:

In accordance with the terms outlined in your engagement letter, we have conducted an examination of the subject property and analyzed factors relevant to the determination of the requested market value(s). Attached is our report, which outlines our methodology and presents the data gathered and used to arrive at a final value estimate. This appraisal report comprises a total of 105 pages.

## Summary of Subject Property:

The subject of this report is an approximately 1,374.99-acre tract of land owned as a fee simple estate and located on the southside of Rosethorne Road with access from Estuary Road and August Lane in Lafitte, Louisiana.  The subject acreage has historically been utilized for recreational purposes and is comprised of two distinct components:

- Approximately 198.99 acres of upland wooded acreage
- Approximately 1,176 acres of rear marsh acreage accessed via Vendome Canal

In addition to the noted components delineated by their topographies above, the subject property has historically been improved with a spoil berm running along the southern perimeter of the wooded acreage separating the wooded acreage from the Vendome Canal and marsh acreage.  This spoil berm enhanced the marketability of the property by providing protection from storm surge and inundation to the wooded acreage.

In May of 2024, a 17.697 acre portion of the subject tract was taken and utilized for the development of a levee as part of the Phase II "Back Levee" Project associated with the Rosethorne Basin Lafitte Tidal Protection Levee Project BA-75-2.

The purpose of this appraisal is to determine an opinion of the "just compensation" necessary to place the owner of the subject property in the "same pecuniary position" as prior to the taking.

810 Union Street, Fourth Floor | Telephone: 504-274-2701    170 Moores Road | Telephone: 985-246-3900
New Orleans, Louisiana 70112 | Facsimile: 504-274-2702    Mandeville, Louisiana 70471 | Facsimile: 985-246-3901

Real Estate Licenses and Certifications held in Louisiana, Mississippi, Alabama, Florida, and Texas

 THE McENERY COMPANY

Mr. Carrere
Page Two
June 27, 2025

**Values Reported:**
 ➢ Retrospective Fair Market Value – Before
 ➢ Retrospective Fair Market Value – After
 ➢ Retrospective Value of Acreage Taken

**Approaches to Value Employed:**
 ➢ Land/Site Valuation

Integral to the conclusions herein are the inferences drawn from the included level A market and marketability analysis.

**USPAP Requirements Note:**
This appraisal complies with the reporting requirements mandated by the 2024-2025 Edition of the United Standards of Professional Appraisal Practice (USPAP) adopted by the Appraisal Standards Board of The Appraisal Foundation. Additionally, as per Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) minimum appraisal standards, we HAVE completed previous appraisals of acreage land similar to the subject property in this area.

**Client & Intended User:**
The client and intended user of this report is CMP, LLC, as represented by Mr. Thomas Carrere. We are not responsible for the unauthorized use of this report.

**Property Taxes Note:**
According to the Sheriff's Office or Tax Collector, the 2025 ad valorem taxes of the property have been paid. Assessment information can be found in the *Scope of the Appraisal* section of this report.

810 Union Street, Fourth Floor | Telephone: 504-274-2701        170 Moores Road | Telephone: 985-246-3900
New Orleans, Louisiana 70112 | Facsimile: 504-274-2702        Mandeville, Louisiana 70471 | Facsimile: 985-246-3901

Real Estate Licenses and Certifications held in Louisiana, Mississippi, Alabama, Florida, and Texas



The following table summarizes our opinion(s) of market value based on the data and analyses contained herein.

| | |
|---|---|
| Market Value Before: | $5,500,000 |
| Value of Acreage Taken: | $1,520,000 |
| Indicated Remaining Value: | $3,980,000 |
| Estimated Remaining Value: | $1,745,000 |
| Indicated Severance Damages: | $2,235,000 |
| Add: Value of Total Part Required | $1,520,000 |
| Total Just Compensation: | $3,755,000 |

**This is to certify that we have no interest, present or contemplated, in the appraised property. Our opinions of value are subject to the General and Special Assumptions and Limiting Conditions, Certification, and Restriction Upon Disclosure and Use which are stated in the body of the report.**

Respectfully submitted,

_____
Baldwin R. Justice, MAI
Louisiana State Certified
General Real Estate Appraiser #G3000

810 Union Street, Fourth Floor | Telephone: 504-274-2701    170 Moores Road | Telephone: 985-246-3900
New Orleans, Louisiana 70112 | Facsimile: 504-274-2702    Mandeville, Louisiana 70471 | Facsimile: 985-246-3901

Real Estate Licenses and Certifications held in Louisiana, Mississippi, Alabama, Florida, and Texas

## SUMMARY OF SALIENT FACTS AND CONCLUSIONS

| GENERAL | |
|---|---|
| Property Address: | Acreage Located South of Rosethorne Road<br>Lafitte, LA 70067 |
| Property Type: | Acreage Land |
| Client: | CMP, LLC, as represented by Mr. Thomas Carrere |
| Ownership: | CMP, LLC |
| Interest Appraised: | Fee Simple |
| Type of Value: | Market Value |
| Date of Report: | June 27, 2025 |
| Property Inspected By: | Baldwin R. Justice, MAI |
| Intended Use: | The intended use is for Litigation Support Services related to a Taking or Inverse Condemnation and the determination of just compensation. |
| Intended User(s): | The intended user is CMP, LLC, as represented by Mr. Thomas Carrere |
| Sale History: | The subject property has not changed ownership within the past three years. To the best of our knowledge, the subject property has not been recently marketed for sale, nor is it known to be encumbered by a pending sale/purchase agreement. |

| Land Summary - Before | | | | |
|---|---|---|---|---|
| Parcel ID | Gross Land Area (Acres) | Gross Land Area (Sq Ft) | Topography | Shape |
| **Spoil Berm - Acreage Taken** | **17.697** | **770,881** | **5'-6' Elevation with downard Slope on either side** | **Irregular** |
| Wooded Area | 181.290 | 7,896,992 | Wooded Acreage | Irregular |
| Total Upland Tract | 198.987 | 8,667,874 | See Above | Irregular |
| Marshland | 1,176 | 51,226,560 | Marsh Acreage | Irregular |
| Totals | 1374.99 | 59,894,564 | | |

iii

| Land Summary -After | | | | |
|---|---|---|---|---|
| Parcel ID | Gross Land Area (Acres) | Gross Land Area (Sq Ft) | Topography | Shape |
| Wooded Area | 181.290 | 7,896,992 | Wooded Acreage | Irregular |
| Total After Upland Acreage | 181.290 | 7,896,992 | See Above | Irregular |
| | | | | |
| Marshland | 1,176 | 51,226,560 | Marsh Acreage | Irregular |
| Totals | 1357.29 | 59,123,552 | | |

**Legal Description:**   A certain tract of land situated in Sections 15 and 37, Township 15 South, Ranges 23 & 24 East, Jefferson Parish, State of Louisiana

**Zoning:**   Industrial, R-1-C, Country Residential
*Town of Jean Lafitte Planning and Zoning*

**Flood Zone:**   AE

**Highest and Best Use (As Vacant):**   Recreational Use with Long-term development potential for lodging/recreational use

**Estimated Marketing and Exposure Time:**   Less than 12 months

iv

| VALUE INDICATIONS | |
|---|---|
| Land Value – Before: | $5,500,000 |
| Land Value – Acreage Taken: | $1,520,000 |
| | |
| Total Land Value After: | $1,745,000 |

# TABLE OF CONTENTS

Subject Photographs ........................................................................................................ ii

Summary of Salient Facts and Conclusions ................................................................. iii

Table of Contents .......................................................................................................... vi

Certification .................................................................................................................... 1

Scope of Work ............................................................................................................... 2

    Assessment and Taxes ........................................................................................... 12

    Zoning ...................................................................................................................... 14

Subject Property Description - Before ........................................................................ 15

    Site Analysis - Before ............................................................................................. 16

Subject Property Description – Acreage Taken .......................................................... 18

Subject Property Description - After ........................................................................... 20

    Site Analysis - After ................................................................................................ 21

Market and Marketability Analysis ............................................................................. 23

BEFORE ANALYSIS ......................................................................................................... 32

    Highest and Best Use - Before ............................................................................... 33

    Land/Site Valuation – Before Taking .................................................................... 35

    Land/Site Valuation Reconciliation and Conclusion ........................................... 59

Just Compensation for Taken Acreage Reconciliation .............................................. 64

AFTER ANALYSIS ........................................................................................................... 67

    Description of the Remainder Site ........................................................................ 68

    Highest and Best Use -After ................................................................................... 72

    Land/Site Valuation – After Marsh Acreage ........................................................ 74

    Land/Site Valuation – After Wooded Acreage ..................................................... 86

Final Reconciliation and Value Conclusion ............................................................... 105

Assumptions And Limiting Conditions ...............................................................................

Addenda .............................................................................................................................

Glossary .............................................................................................................................

# CERTIFICATION

*We certify that to the best of our knowledge and belief:*

- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- We have no present or prospective interest in the property that is the subject of this appraisal report and we have no personal interest or bias with respect to the parties involved.
- We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
- Our engagement in this assignment was not contingent upon developing or reporting predetermined results.
- Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- We **have** performed **no** other services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.
- The reported analyses, opinions and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.
- Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice*.
- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.
- No one other than associates in this office or outside consultants as noted provided significant professional assistance in the preparation of this report.
- Baldwin R. Justice, MAI made a personal inspection of the property that is the subject of this report.
- Ryan P. Ellinghausen provided significant professional assistance in the preparation of this report. A summary of this assistance may be found within the Scope of the Appraisal.
- As of the date of this report, Baldwin R. Justice has completed the continuing education program for Designated Members of the Appraisal Institute.

Date Signed: June 27, 2025

Baldwin R. Justice, MAI
Louisiana State Certified
General Real Estate Appraiser #G3000

2

# SCOPE OF WORK

The subject property is a 1,374.99-acre tract of land, which has been defined as the larger parcel within this appraisal engagement. This tract of land is situated south of Rosethorne Road with access from Estuary Road and August Lane in Lafitte, Louisiana. An aerial image of the subject property is shown below:



Historically, the property has been utilized for recreational purposes with the intention of future development of an RV Park and other lodging applications under a larger concept of eco-tourism. Additionally, efforts had been made by the property owner to permit and develop the subject acreage tract as a wetlands mitigation bank with permits still pending by the U.S. Army Corp of Engineers. The subject tract of land is highly unique and marketable due to its roadway accessibility leading to the wooded acreage that is suitable for development, as well as its direct waterfront access to the Vendome Canal. This private canal provides the subject's wooded acreage with direct waterfront access to the large marsh acreage component located in the rear for recreational or commercial hunting and fishing, as well as other recreational activities. Additionally, the private Vendome Canal provides waterway access to other bodies of water such as Barataria Bay leading all the way to Grand Isle, Louisiana.

3

In May of 2024, a 17.697-acre portion of the subject tract was taken and utilized for the development of a levee as part of the Phase II "Back Levee" Project associated with the Rosethorne Basin Lafitte Tidal Protection Levee Project BA-75-2.

A breakdown of the larger parcel and taken acreage, as well as the remainder tract is show below

| Land Summary - Before | | | | |
|---|---|---|---|---|
| Parcel ID | Gross Land Area (Acres) | Gross Land Area (Sq Ft) | Topography | Shape |
| Spoil Berm - Acreage Taken | 17.697 | 770,881 | 5'-6' Elevation with downard Slope on either side | Irregular |
| Wooded Area | 181.290 | 7,896,992 | Wooded Acreage | Irregular |
| Total Upland Tract | 198.987 | 8,667,874 | See Above | Irregular |
| Marshland | 1,176 | 51,226,560 | Marsh Acreage | Irregular |
| Totals | 1374.99 | 59,894,564 | | |

| Land Summary -After | | | | |
|---|---|---|---|---|
| Parcel ID | Gross Land Area (Acres) | Gross Land Area (Sq Ft) | Topography | Shape |
| Wooded Area | 181.290 | 7,896,992 | Wooded Acreage | Irregular |
| Total After Upland Acreage | 181.290 | 7,896,992 | See Above | Irregular |
| Marshland | 1,176 | 51,226,560 | Marsh Acreage | Irregular |
| Totals | 1357.29 | 59,123,552 | | |

As shown above, the taking will reduce the total acreage size from 1,374.99 acres in the before to 1,357.29 acres in the after.  This reduction is representative of the taking of the spoil berm acreage, which will reduce the upland or non-marshland acreage from 198.987 acres to 181.29 acres.

### *Larger Parcel Determination:*
A requirement in the valuation of parcels for expropriation/appropriation projects is the larger parcel determination.  Per the Uniform Appraisal Standards for Federal Land Acquisition, larger parcel is defined as:

> *"The tract or tracts of land that possess a unity of ownership and have the same, or an integrated, highest and best use."*

The above outline represents our identification of the larger parcel, which requires an analysis of several key factors in the determination of said larger parcel:

- Unity of Ownership
- Unity or an integrated highest and best use
- Contiguous in nature (though not required)

4

Though this appraisal report is not required to conform with the Uniform Appraisal Standards for Federal Land Acquisitions, a determination of the larger parcel is required for the purposes of determining just compensation.

As noted above, we have defined the existing parent tract containing 1,374.99 acres as the larger parcel, as it meets all three parameters noted above.

*Taking Summary:*
The subject tract of land was negatively impacted by the taking of approximately 17.697 acres located at the southern perimeter of the noted wooded acreage, which bisects the property. The acreage taken by the Levee District not only included the underlying land, but also clay/dirt materials, which were designed on the site if the formation of a spoil berm that acted as a barrier and provided protection from inundation and storm surge to the wooded acreage. Additionally, it must be noted that the acreage taken was considered to be mitigated acreage that did not require a Section 404 Wetlands Mitigation permit. Lastly, the taking also impacted an exiting private road known as Container Road that provided interior accessibility throughout the tract.

*Remainder Tract Summary:*
As a result of the acreage taken, the subject property has been bifurcated into two distinctly separate tracts of land. This includes the remaining 181.29 wooded acres located to the northwest of the acreage taken and the 1,176 acres remaining of marshland. It is critical to note that prior to the taking, the subject property was a self-contained recreational tract of land with direct roadway access and waterfront access to the rear marsh acreage, as well as the other noted bodies of water such as Barataria Bay via the Vendome Canal. Following the taking, the subject tract no longer has direct waterfront access or physically viable access to the rear Vendome Canal or marsh acreage.

In effect, this has resulted in the bifurcation of the subject tract of land into two distinctly different properties – one with roadway access to wooded acreage and the other without any roadway access as an orphaned marsh tract of land. Based on the analysis contained herein, this has resulted in a diminution in value as a result of the taking and severance damages are necessary for just compensation.

*Purpose of the Appraisal & Effective Date of Value Note:*
The intended use of this appraisal is to provide opinions of fair market value in both the "before" and "after" date of taking and a determination of just compensation for litigation support services.

As there has been no official expropriate/appropriate order, there is no official date of taking that can be utilized within this report. As a result, I have utilized a date of June 1, 2024, as the date of taking, which is consistent with the facts provided by the formal complaint under the following court filing:



*CMP, LLC v. Board of Commissioners for the Lafitte Area Independent Levee District, United States District Court, Eastern District of Louisiana*

As a result, the retrospective date of value for the "before" valuation is June 1, 2024, or prior to the taking.   The retrospective date of value under the "after" valuation is also June 1, 2024, or following the commencement of taking.

Just Compensation is defined by several sources below:

"Just compensation means a full indemnity or remuneration for the loss or damage sustained by the owner of property taken or injured for public purposes; and just compensation means the full and perfect equivalent in money of the property taken, whereby the owner is put in as good a pecuniary position as he would have been had his property not been taken." (State Dept. of Transportation & Development v. Clark's Estate 432 So. 2d 405, *408 (La. App. 1 Cir., 1983)

"In condemnation, the amount of loss for which a property owner is compensated when property is taken.  Just compensation should put the owner in as good a position pecuniarily as he or she would have been if the property had not been taken." (Dictionary of Real Estate Appraisal, 7th Edition)

**With respect to the determination of just compensation, this appraisal report has provided a market value of the acreage taken inclusive of contributory value associated with the clay/dirt materials and all costs associated with the formation of the existing spoil berm.**

**In addition to the determination of the value of the acreage taken, this appraisal report has also provided an opinion of severance damages associated with the diminution in value to the parent tract due to the bifurcation of the property as a result of the taking.**

Fair Market Value:
We have reported the fair market value of the following components of the property:

- Before Larger Parcel
- After Larger Parcel
- Taken Area

The definition of Fair Market Value has been provided by several sources shown below:

"A type of value, stated as an opinion, that presumes the transfer of a property (i.e., a right of ownership or a bundle of such rights), as of a certain date, under specific conditions set forth in the value definition that is identified by the appraiser as applicable in an appraisal." (USPAP, 2025)



USPAP also requires that certain items be included in every appraisal report. Among these items, the following are directly related to the definition of market value:

- Identification of the specific property rights to be appraised.
- Statement of the effective date of the value opinion.
- Specification as to whether cash, terms equivalent to cash, or other precisely described financing terms are assumed as the basis of the appraisal.

If the appraisal is conditioned upon financing or other terms, specification as to whether the financing or terms are at, below, or above-market interest rates and/or contain unusual conditions or incentives. The terms of above—or below-market interest rates and/or other special incentives must be clearly set forth; their contribution to, or negative influence on, the value must be described and estimated; and the market data supporting the opinion of value must be described and explained."

"The most widely accepted components of market value are incorporated in the following definition: The most probable price, as of a specified date, in cash, or in terms of equivalent to cash, or in other precisely revealed terms, for which the specified property rights should sell after reasonable exposure in a competitive market under all conditions requisite to a fair sale, with the buyer and seller each acting prudently, knowledgeably, and for self-interest, and assuming that neither is under undue duress. " (Dictionary of Real Estate, 7th Edition).

The following definition of market value is used by agencies that regulate federally insured financial institutions in the United States: The most probable price that a property should bring in a competitive and open market under all condition's requisite to a fair sale, the buyer and the seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

- Buyer and seller are typically motivated;
- Both parties are well informed or well advised, and acting in what they consider their best interests;
- A reasonable time is allowed for exposure in the open market;
- Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
- The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale. (12 C.F.R. Part 34.42(g); 55 Federal Register 34696, August 24, 1990, as amended at 57 Federal Register 12202, April 9, 1992; 59 Federal Register 29499, June 7, 1994)

The Uniform Standards for Federal Land Acquisitions defines market value as follows: Market value is the amount in cash, or on terms reasonably equivalent to cash, for which in all probability the property would have sold on the effective date of the appraisal, after a reasonable exposure of time on the open competitive market, from a willing and reasonably knowledgeable seller to a willing and reasonably knowledgeable buyer, with neither acting under any compulsion to buy or sell, giving due consideration to all available economic uses of the property at the time of the appraisal. (Uniform Standards for Federal Land Acquisitions) (Dictionary, 6th Edition)

As previously noted, this appraisal complies with the reporting requirements mandated by the 2024-2025 Edition of the United Standards of Professional Appraisal Practice (USPAP) adopted by the Appraisal Standards Board of The Appraisal Foundation.

This appraisal has been prepared for the purpose of estimating just compensation in connection with a taking (eminent domain) proceeding. The applicable laws and regulations governing the valuation of property for eminent domain in the jurisdiction where the subject property is located require the application of specific valuation methodologies and principles which may conflict with certain requirements of the Uniform Standards of Professional Appraisal Practice (USPAP).  In this case, a judicial exception is employed with respect to the after valuation pertaining to the subject's wooded acreage and any enhancement that the proposed project may have on the "after" value.

8

According to the Uniform Standards of Professional Appraisal Practice, it is our responsibility to develop and report a scope of work that results in credible results that are appropriate for the appraisal problem and intended user(s). Therefore, we must identify and consider:

- the client and intended users;
- the intended use of the report;
- the type and definition of value;
- the effective date of value;
- assignment conditions;
- typical client expectations; and
- typical appraisal work by peers for similar assignments.

| | |
|---|---|
| **Client:** | CMP, LLC, as represented by Mr. Thomas Carrere |
| **Intended Use:** | The intended use is for Litigation Support Services related to a Taking or Inverse Condemnation and the determination of just compensation. |
| **Intended User(s):** | The intended user is CMP, LLC, as represented by Mr. Thomas Carrere |
| **Type of Value:** | Market Value |
| **Effective Date of Value:** | June 1, 2024 |
| **Report Type:** | This is an Appraisal Report as defined by Uniform Standards of Professional Appraisal Practice under Standards Rule 2-2(a). This format provides a summary or description of the appraisal process, subject and market data and valuation analyses. |
| **Inspection:** | A complete interior and exterior inspection of the subject property has been made, and photographs were taken. |
| **Market Analysis Level:** | Level A |

## Valuation Summary

| | |
|---|---|
| Land/Site Valuation: | A land/site valuation was developed as it is the only applicable approach to value within the confines of the required scope of work. Under this scope of work, it is necessary to perform a before and after valuation of the subject tract of land in order to determine not only the value of the acreage taken, but also the determination of severance damages for just compensation purposes. |
| Cost Approach: | A cost approach was not applied as it is not appropriate or applicable to produce credible results with respect to the intended use and intended user. |
| Sales Comparison Approach: (*As Improved*) | A sales comparison approach was not applied as it is not appropriate or applicable to produce credible results with respect to the intended use and intended user. |
| Income Approach: | An income approach was not applied as it is not applicable or appropriate to determine credible results with respect to the intended use and intended user. |

Hypothetical Conditions:

➢ There are no hypothetical conditions for this appraisal.

Assumptions:

➢ The subject parent tract acreage and acreage taken has been determined based on a review of historic surveys, legal descriptions and provided project plans. It is an extraordinary assumption that the acreage calculations utilized herein are accurate. Should these calculations vary, we reserve the right to alter our opinions of value.

➢ Given the retrospective nature of this appraisal assignment, it is unclear of the exact date that the levee protection project commenced. For purposes of determining the noted just compensation, we have chosen an effective date of value of June 1, 2024, as the effective date the project began and the acreage taken, which is based on the previously noted court filings.

It is assumption of this report, that the selected effective date of value represents an accurate date that the project commenced, and the subject acreage was taken.

➢ In order to properly determine the just compensation for the landlord, we have relied on project maps and legal descriptions provided by the client.  Furthermore, we have relied upon estimates of clay/dirt material volumes associated with the historic spoil berm and a replacement cost estimate provided for the taken Container Road.  It is an assumption of this report that these provided figures and estimates are accurate.  Should they be found to vary significantly, we reserve the right to alter our opinions of value.

**Marketing and Exposure Time**:

The definition of Market Value is based on a reasonable time allowed for exposure to the market. A reasonable time is a subjective period and will vary depending on the type of property, marketing effort, and price. Marketing Time is a prospective perspective or provides a perspective that is futuristic for the date of valuation with a presumed sale of the property under the assumption the property will sell at market value. Exposure Time is an opinion, based on supporting market data, of the length of time that the property interest being appraised would have been offered on the open market before the hypothetical consummation of a sale at market value on the effective date of the appraisal. For purposes of this appraisal, it is assumed that the property would be reasonably priced and aggressively marketed.

> ➢ Less than 12 months if priced to the market and aggressively marketed.

**Inspection Note:**

Baldwin R. Justice, MAI visited the subject property on January 8, 2025. A complete interior and exterior inspection of the subject property has been made, and photographs were taken.

**Analysis Note:**

In the process of determining the market value, the undersigned appraisers have gathered and analyzed comparable sales, rental, and operating data. The assignment's scope is further expanded by the utilization of various approaches to value, resulting in value conclusion(s) that are contingent upon all known information about the subject property, market conditions, and available market data.

**Assistance Note:**

Ryan P. Ellinghausen provided significant professional assistance in the preparation of this report. This includes the following:
   ➢ Marketing and sales history
   ➢ Ad Valorem taxes, zoning designation, legal description, flood zone
   ➢ Assistance with subject photos, sketch, aerial imagery

All pertinent property data has been verified by a signatory appraiser.

12

ASSESSMENT AND TAXES

**Taxing Authority**          Sheriff's Office or Tax Collector

**Assessment Year**          2025

| Real Estate Assessment and Taxes | | | | | |
|---|---|---|---|---|---|
| **Tax ID** | **Land** | **Improvements** | **Total Assessment** | **Tax Rate** | **Taxes** |
| 600003499 | $4,240 | $0 | $4,240 | 116.98 | $496 |

Notes:

According to the Sheriff's Office or Tax Collector, the 2025 ad valorem taxes of the subject property have been paid.

## Jefferson Parish Assessor
## 2024 Assessment Listing

**Parcel #**
0600003499

**Primary Owner**
CMP LLC

**Mailing Address**
PO BOX 864
COLUMBIA MS 39429

**Ward**
60

**Type**
REAL

**Legal**
CROWN POINT THAT PORTION OF GROUND SITUATED IN SEC 15 T15S R23E & SEC 37 T15S R24E COMP PORT OF ROSE THORNE SUB & PAUL JONES SUB APPROX 1470.74 ACRES LESS PT SOLD MAP # 4492 LESS 26.9 ACRES 863/363 LAND ONLY 1637/128 LESS 12310081

**Physical Address**

| Property Class | Assessed Value | Market Value | Units |
|---|---|---|---|
| MARSH, SALT WATER | 4240.00 | 4240.00 | 1414.25 |
| **TOTAL** | **4240.00** | **4240.00** | **1414.25** |

| Deed# | Type | Date | Amount | Book | Page |
|---|---|---|---|---|---|
| 11321933. | SALE | 5/1/2013 | 428000.00 | 3313 | 529 |
| 11606761. | SUCCESSION | 2/18/2016 | 0.00 | 3365 | 707 |

### Property Information

| Property Information | | | | |
|---|---|---|---|---|
| Address | Ward | 60 | Parcel | 0600003499 |
| Legal Description | CROWN POINT THAT PORTION OF GROUND SITUATED IN SEC 15 T15S R23E & SEC 37 T15S R24E COMP PORT OF ROSE THORNE SUB & PAUL JONES SUB APPROX 1470.74 ACRES LESS PT SOLD MAP # 4492 LESS 26.9 ACRES 863/363 LAND ONLY 1637/128 LESS 12310081 | | | |

| Property Tax Notices and Payments | | | | | | Total Due for Selected Notices |
|---|---|---|---|---|---|---|
| Tax Year | Tax Notice # | Assessment | Original Tax Due | Paid Amount** | Date Paid | Balance Due** |
| 2024 | 0600003499 | 4,240 | $491.07 | $495.98 | 01/28/2025 | 0.00 |

14

## ZONING

Based on conversations with the Town of Jean Lafitte Planning and Zoning Department, as well as a review of the Lafitte Zoning Map and documents provided by the client, the subject property is largely zoned industrial.  Below is zoning confirmation letter indicating as such:

**Inter-Office Communication**

To:  Regulatory Inspections                                   Date:  July 3, 2014

From:  Sheriff Newell Normand

Subject: Clearance for Occupational License

Name of Business:  Eco Tours, LLC

Location:  4926 Estuary Road, Lafitte,  LA  70067 **is zoned** Industrial

Nature of Business:  Tour Company

This Zoning        (Conform
                    Doesn't Conform)        for this type of business.

JPSO 3.56

That said, we have only been able to inspect portions of the zoning map and discussions with the Town of Lafitte Planning and Zoning have indicated that portions of the subject acreage may hold R-1-C, County Residential.  A copy of the district regulations is located in the *Addenda* to this report. A zoning map was unavailable online.

## SUBJECT PROPERTY DESCRIPTION - BEFORE



*(Red Outline indidcates the parent tract in the before)*

| Land Summary - Before | | | | |
|---|---|---|---|---|
| Parcel ID | Gross Land Area (Acres) | Gross Land Area (Sq Ft) | Topography | Shape |
| **Spoil Berm - Acreage Taken** | **17.697** | **770,881** | **5'-6' Elevation with downard  Slope on either side** | **Irregular** |
| Wooded Area | 181.290 | 7,896,992 | Wooded Acreage | Irregular |
| Total Upland Tract | 198.987 | 8,667,874 | See Above | Irregular |
| | | | | |
| Marshland | 1,176 | 51,226,560 | Marsh Acreage | Irregular |
| Totals | 1374.99 | 59,894,564 | | |

THE MCENERY COMPANY
REAL ESTATE APPRAISAL, BROKERAGE AND CONSULTING

| SITE ANALYSIS - BEFORE | |
|---|---|
| Location: | The subject property is situated below Rosethrone Road in Jean Lafitte, Louisiana |
| Current Use of Property: | Acreage Land |
| Shape: | Irregular |
| Frontage/Access: | The subject property has Average access with frontage as follows: <br> • Estuary Road to Rosethorne Road <br> • August Lane to Rosethorne Road <br> • Direct waterfront access to the Vendome Canal and the rear marsh acreage |
| Topography: | Varying topography with upland wooded acreage in the front of the site towards Rosethorne Road, as well as rear marsh acreage and waterbottoms within the Vendome Canal. <br><br> The 17.697 acres of spoil berm area is improved as a natural barrier against inundation and storm surge located along the southern perimeter of the upland wooded acreage. This formation of the spoil berm features a potato like shape, which reaches an elevation between 5' to 6' high. This spoil berm is comprised of compacted clay/dirt materials. |
| Utilities: | Electricity: Entergy <br> Sewer: City sewer <br> Water: Municipal Supply <br> Natural Gas: Atmos Energy <br> Underground Utilities: The site is serviced by above ground and underground utilities. <br> Adequacy: The subject's utilities are typical and adequate for the market area. |
| Flood Zone: | The subject is located in FEMA flood zone AE, which is classified as a flood hazard area. <br> FEMA Map Number: 22051C0275F <br> FEMA Map Date: February 2, 2025 |

Zone AE is a special flood hazard area in undated by 100-year floodplains, and includes areas in which base flood elevations are determined. Mandatory flood insurance requirements apply.

**Wetlands/Watershed**:      The subject site does appear to be encumbered by areas of wetlands based on the US Fish & Wildlife Service National Wetlands Inventory Map included in this report's Addenda.

**Environmental Issues:**      We were not provided a Phase I Environmental Impact Assessment. However, no adverse environmental conditions were noted upon inspection.

**Encumbrance/Easements:**      We note the subject property features an encumbrance in the form of Estuary Road, which is a ROW that has been dedicated by the landowner and features 60,061 square feet.   This 60' ROW provides access to the subject acreage and viewed as a benefit.

Additionally, we note a 79,541 square foot servitude that is 65' wide for the purposes of a drainage canal, access road, and pump station.

**Opportunity Zone**      The subject property is not located in an opportunity zone.

**Comments/Conclusions:**      The site has average and typical utility. The site is of adequate size and shape to accommodate a variety of large scale uses.

## SUBJECT PROPERTY DESCRIPTION – ACREAGE TAKEN





*(Yellow Outline indidcates the acreage taken)*



THE MCENERY COMPANY
REAL ESTATE APPRAISAL, BROKERAGE AND CONSULTING

Site Analysis

The acreage that was taken as of the effective date of value was an existing spoil berm, which had a potato shape formation with a height of approximately 5' to 6' at the peak.  This previously disturbed acreage as comprised of compacted clay/dirt materials that served as a natural barrier and offered protection from inundation and storm surge to the subect's upland acreage.  Given the nature of this acreage as having been previously determined it is considered as not requiring Section 404 Wetlands Mitigation permit for use.

Based on the provided project plans the total acreage of this area equates to 17.697 acres.

20

# SUBJECT PROPERTY DESCRIPTION - AFTER



*(Red Outline indidcates the parent tract in the After with the Yellow Outline no loner part of the subject tract)*

| Land Summary -After | | | | |
|---|---|---|---|---|
| Parcel ID | Gross Land Area (Acres) | Gross Land Area (Sq Ft) | Topography | Shape |
| Wooded Area | 181.290 | 7,896,992 | Wooded Acreage | Irregular |
| Total After Upland Acreage | 181.290 | 7,896,992 | See Above | Irregular |
| | | | | |
| Marshland | 1,176 | 51,226,560 | Marsh Acreage | Irregular |
| Totals | 1357.29 | 59,123,552 | | |

THE MCENERY COMPANY
REAL ESTATE APPRAISAL, BROKERAGE AND CONSULTING

| SITE ANALYSIS - AFTER | |
|---|---|
| Location: | The subject property is situated below Rosethrone Road in Jean Lafitte, Louisiana |
| Current Use of Property: | Acreage Land |
| Shape: | Irregular |
| Frontage/Access: | The subject property has Average access with frontage as follows:<br>• Estuary Road to Rosethorne Road<br>• August Lane to Rosethorne Road<br><br>**Paramount to the valuation of the subject property in the "After" is the understanding that the marsh acreage is now bifurcated from the upland acreage tract. As such, the upland wooded acreage land has lost all physically viable access to the Vendome Canal and marsh acreage.** |
| Topography: | Varying topography with upland wooded acreage in the front of the site towards Rosethorne Road, as well as rear marsh acreage and waterbottoms within the Vendome Canal.<br><br>The 17.697 acres of spoil berm area is improved as a natural barrier against inundation and storm surge located along the southern perimeter of the upland wooded acreage. This formation of the spoil berm features a potato like shape, which reaches an elevation between 5' to 6' high. This spoil berm is comprised of compacted clay/dirt materials. |
| Utilities: | Electricity: Entergy<br>Sewer: City sewer<br>Water: Municipal Supply<br>Natural Gas: Atmos Energy<br>Underground Utilities: The site is serviced by above ground and underground utilities.<br>Adequacy: The subject's utilities are typical and adequate for the market area. |

22

| | |
|---|---|
| **Flood Zone:** | The subject is located in FEMA flood zone AE, which is classified as a flood hazard area.<br>FEMA Map Number: 22051C0275F<br>FEMA Map Date: February 2, 2025<br><br>Zone AE is a special flood hazard area in undated by 100-year floodplains, and includes areas in which base flood elevations are determined. Mandatory flood insurance requirements apply. |
| **Wetlands/Watershed:** | The subject site does appear to be encumbered by areas of wetlands based on the US Fish & Wildlife Service National Wetlands Inventory Map included in this report's Addenda. |
| **Environmental Issues:** | We were not provided a Phase I Environmental Impact Assessment. However, no adverse environmental conditions were noted upon inspection. |
| **Encumbrance/Easements:** | We note the subject property features an encumbrance in the form of Estuary Road, which is a ROW that has been dedicated by the landowner and features 60,061 square feet.  This 60' ROW provides access to the subject acreage and viewed as a benefit.<br><br>Additionally, we note a 79,541 square foot servitude that is 65' wide for the purposes of a drainage canal, access road, and pump station. |
| **Opportunity Zone** | The subject property is not located in an opportunity zone. |
| **Comments/Conclusions:** | The site has average and typical utility. The site is of adequate size and shape to accommodate a variety of large scale uses. |

# MARKET AND MARKETABILITY ANALYSIS
### *(Level A Analysis)*

In recent years, the U.S. economy underwent a period of moderate recovery marked by adjusted expectations for GDP growth, employment, and inflationary pressures nationwide from the negative impacts of COVID-19 from 2020-2022. Despite these fluctuations, the commercial real estate sector demonstrated resilience, benefitting from historically low interest rates, consistent pricing, and appreciation in asset values across various segments. In 2023-2024, concerns regarding a potential recession surfaced due to widespread inflationary pressures impacting the economy, resulting in adjustments to the federal funds rate and borrowing costs. As we begin 2025, indications suggest that the nation has managed to avert a technical recession, with unemployment rates remaining stable and marginal growth observed in GDP. However, economists remain cautious about the sustainability of stable employment and the challenge of reining in inflation to a target rate of 2.0% annually. Additionally, the Federal Reserve reduced the Federal Funds rates several times in 2025, which was contingent upon inflation reaching an acceptable level. Uncertainty persists regarding these economic dynamics, as inflation remains a persistent issue, while GDP growth remains somewhat tepid despite the continued low unemployment rate.  Many economists are optimistic about the long-term outlook for the health of the economy but remain cautious given the potential for continued hurdles with respect to taming inflation and simultaneously growing the GDP.

In Louisiana, the overall economic outlook remains cautious, with tourism experiencing gradual growth. Nevertheless, optimism is buoyed by expansions within the port sector and the resilience of the oil and gas market. Recent years have seen a notable recovery in the energy sector, which has been further bolstered by the uptick in oil and gas prices. Our analysis focuses on the market for comparable acreage properties in the Lafitte market. To properly contextualize the national economic landscape, it is essential to consider the regional economic foundation. Given the cautiously optimistic yet delicate outlook for the economy, it is crucial to focus on the historical characteristics of the regional base, which is closely linked to the public employment sector, natural resources, agriculture, and port industry

> *The subject property is located on the Westbank of the Mississippi River in Lafitte, within Jefferson Parish. Jefferson Parish is west of an adjacent to Orleans Parish and makes up a large portion of the Greater New Orleans Area. The Eastbank of Jefferson Parish features the most prominent population centers including Metairie and Kenner in addition to a number of smaller communities such as River Ridge, Jefferson, Harahan and Elmwood. The Westbank of Jefferson Parish encompasses the towns of Lafitte, Marrero, Westwego, Gretna and Terrytown.*

The methodology employed to evaluate the market and marketability of the subject property includes the following five steps:

- *Market Area Delineation*
- *Property Productivity Analysis*
- *Supply and Demand Analysis*
- *Interaction of Supply and Demand*
- *Forecast of Subject Capture*

The analysis is presented in three main categories, following the truncation of the data sets. These categories include: market area delineation, assessment of the property's productivity and competitive strengths and weaknesses, and an analysis of supply and demand, including an estimation of absorption and capture rate for the subject property.

The following pages present an in-depth analysis of the subject's market area, focusing on key demographic and income statistics, as well as other relevant data, within 5, 10, and 15-minute drive times from the subject property. The demographic data presented is extracted from a report generated using the Site to do Business (www.STDBonline.com) software.



---

25

## Market Area Delineation:

The subject property's market area has been delineated as a fifteen-minute drive time area that encompasses all of Lafitte and parts of Estelle. As a agricultural-undeveloped property, we consider a fifteen-minute drive time to be an applicable delineated market area. The neighborhood surrounding the subject property is bounded by Bayou Barataria to the north, the Vendome Canal to the south, Louisiana Highway 23 to the east, and Bayou Barataria to the west. The pertinent demographic information for this delineated market area is presented in the infographic below.



Overall, the subject's immediate market area features a population of 452,, a median age of 42.3, an unemployment rate of 17.1%, and a median household income of $66,328, behind the national median household income of $74,580.



The subject's greater market area features a population of 16,023, a median age of 37.9, an unemployment rate of 10.2%, and a median household income of $73,334, above the national median household income of $74,580.

Furthermore, the forecasted annual growth rate for the population in the subject's greater market area is projected to decrease at a rate of 0.31% through 2026.

**Population Growth – Greater Market Area**

Lafitte, Louisiana, a small town nestled along Bayou Barataria with a population of just over 1,000 and suburb community of the larger New Orleans Metropolitan market area.  The town's economy is primarily supported by health care and social assistance, construction, and manufacturing sectors. Notably, SEMCO, LLC, a manufacturer of jack-up boats and coil tubing equipment, and Hard Rock Marine Service, specializing in boat building, are significant local employers.

Tourism plays a vital role in Lafitte's economy. The town offers a variety of lodging options, including waterfront cabins at Jean Lafitte Harbor and chalets provided by Get the Net Charters, catering to fishing enthusiasts and nature lovers. Vacation rentals are also available through platforms like Vrbo and Airbnb, accommodating diverse visitor preferences.

Recreational activities abound, with swamp tours offered by companies such as Jean Lafitte Swamp Tours and Airboat Adventures, providing immersive experiences into the region's unique ecosystems. The Lafitte Barataria Museum and Wetland Trace offers insights into the area's history and environment, enhancing the cultural experience for visitors.   Lafitte's tourism is anchored in its natural beauty and outdoor activities. The Jean Lafitte National Historical Park and Preserve's Barataria Preserve offers visitors a chance to explore Louisiana's wetlands through boardwalks and trails, showcasing the region's diverse ecosystems. Swamp tours, such as those provided by Jean Lafitte Swamp Tours, allow guests to experience the bayou's wildlife and scenery firsthand. Fishing charters are also popular, with local guides offering excursions that highlight the area's rich fishing heritage.

In addition to the above recreational activities, the Lafitte market area is also known for a very active recreational hunting and fishing sector. Southeast Louisiana, particularly around Lafitte, is renowned for its abundant recreational hunting and fishing opportunities, driven by the region's rich biodiversity and expansive wetlands. The Mississippi River Delta and surrounding marshes provide a diverse habitat that supports a wide range of fish and game species, making the area a prime destination for sportsmen. Lafitte, situated along Bayou Barataria, serves as a gateway to the Barataria Basin and adjacent coastal marshlands, which are among the most productive estuarine systems in the United States. Anglers flock to the area year-round for redfish, speckled trout, flounder, black drum, and largemouth bass, with numerous charter services like Bourgeois Fishing Charters and Get the Net Charters offering guided inshore trips. Duck hunting is especially prominent in the winter months, with species such as gadwalls, teal, and pintails commonly harvested in the flooded marshes and shallow bays. The abundance of public wildlife management areas (WMAs) such as Salvador/Timken WMA and the Jean Lafitte National Historical Park and Preserve supports accessible hunting and wildlife viewing. Moreover, private leases and camps are prevalent throughout the region, reflecting a strong culture of land stewardship and outdoor recreation. This vibrant outdoor industry not only drives seasonal tourism but also sustains numerous small businesses in Lafitte and nearby communities. The combination of world-class fishing, productive waterfowl hunting, and scenic natural landscapes positions southeast Louisiana—and Lafitte in particular—as a top-tier destination for recreational sportsmen across the Gulf South.

In summary, Lafitte's economy is anchored in its traditional industries and bolstered by a growing tourism sector that leverages its natural and cultural assets as well as recreational applications. With strategic development and investment, the town is poised to sustain and enhance its economic vitality in the coming years.

## Property Productivity:

The subject property is a highly unique acreage tract of land due to its scenic landscape with Oak Trees prevalent throughout the wooded acreage, as well as direct waterfront access to the 1,000 acres of march acreage for numerous recreational uses.  These recreational uses include the following:

- Fishing
- Hunting waterfowl
- Gator hunting
- Frogging
- Crabbing, etc…

In support of the above notable applications of the property, the owner has provided several historic leases of portions of the property for gator hunting and waterfowl hunting.

In addition to the access to the 1,000+ acres of marsh acreage, the subject's acreage also features direct frontage along the Intercoastal Waterway, as well as the Vendome Canal.  This is an extremely marketable attribute of the property as it affords it direct waterfront access to other bodies of water from the subject property including Barataria Bay, which leads all the way to Grand Isle.

Due to the landscape of the subject acreage, it is considered a highly unique acreage tract of land for recreational purposes, but could feasibly accommodate future commercial applications such as:

- Eco-Tourism
- Hunting/Fishing outfitting
- RV Park/Cottage development
- Residential campsites
- Wellness retreat center
- Mitigation banking

Below is a rendering of a proposed plan for RV Park Development and Eco-Tourism by the owner on the subject acreage site:



Given the nature of the property with the ability to accommodate lodging/residential applications, as well as highly desirable recreational activities in South Louisiana it is considered a very unique and marketable acreage tract of land.  Of critical importance is to also note the subject's proximity to the City of New Orleans, which is a major market four tourism throughout the United States.   <u>Based on google earth estimates, the subject property is roughly 25-30 minutes from downtown New Orleans.</u>



Finally, it should be noted that the subject property benefits substantially from the presence of an existing spoil berm located at the southern perimeter of the wooded acreage.  As previously noted, this existing improvement to the land provides protection to the subject's acreage from inundation and storm surge.

Overall, the subject property is a highly unique recreational tract of land, which features a very marketable location only 30 minutes away from downtown New Orleans.  Furthermore, the subject property benefits from an existing improvement (spoil berm) that affords the wooded acreage with protection from storm surge and inundation.  Finally, the nature of the property is highly marketable due to its complimentary nature of the wooded upland acreage directly adjoining the marsh acreage with waterway access to the Vendome Canal.  This provides the subject acreage with direct access to the marsh acreage for recreational activities, as well as access to other bodies of water such as Barataria Bay all the way to Grand Isle.  Given the unique attributes of the property it has long-term potential for future development towards a variety of potential uses tied to lodging and eco-tourism.  It should also be noted that at one time the property owner was working through the permitting process establish the subject property as a wetlands mitigation bank through the USACE.  Though the permitting process is reportedly still pending, this provides another highly lucrative use of the property that could be established in conjunction with traditional recreational applications.

## Supply and Demand Analysis:

Analyzing supply and demand for tracts of land such as the subject can be challenging, as there is only a finite supply of truly comparable properties, and sales activity is fairly limited due to the nature of highly marketable recreational tracts such as the subject property. Tracts are frequently not listed on the open market, and deals are frequently put together between parties in off-market  transactions.

There have been a handful of transactions of large acreage tracts in the immediate vicinity in recent years, which have been considered and in certain instances utilized within this analysis.

In summary, there are only a handful of other sites in the area that truly feature similar attributes  as the assembled acreage that includes the subject tract  of land. This scarcity, coupled with an increased demand for land, has  resulted in upward pressure being placed on pricing in the area.

## Forecast for Subject Capture:

With respect to the before nature of the subject property, recent land trades similar and comparable to the subject property indicate pricing in the range of $2,500 to $5,000 per acre.

Following the  taking of the subject acreage, the subject tract of land has effectively been bifurcated, which severely impact the marketability of the property  and orphans the marsh acreage tract from the balance of the site. As a result, the marsh acreage has been left as a stand-alone recreational tract with no roadway access.  The upland wooded acreage has lost its direct waterfront access to the Vendome Canal and adjoining marsh acreage.   Based on comparable land trades contained within the forthcoming analysis, the subject's upland wooded acreage is forecasted to capture pricing in the range of $5,000 to $10,000 per acre, while the orphaned marsh acreage is forecasted to capture pricing in the range of $200 to $300 per acre.

# BEFORE ANALYSIS

THE MCENERY COMPANY
REAL ESTATE APPRAISAL, BROKERAGE AND CONSULTING

## HIGHEST AND BEST USE - BEFORE

The most recent interpretation of this concept which defines value in use in real estate defines the highest and best use of a property according to The Appraisal of Real Estate, The Fourteenth Edition, Page 332, as "the reasonably probable use of property that results in the highest value." The Fourteenth Edition goes on to say "to be reasonably probable, a use must meet certain conditions:

- The use must be *physically possible* (or it is reasonably probable to render it so).
- The use must be *legally permissible* (or it is reasonably probable to render it so).
- The use must be *financially feasible*.
- The use must be *maximally productive*.

Uses that meet the three criteria of reasonably probable uses are tested for economic *productivity,* and the reasonably probable use with the highest value is the highest and best use." The level of analysis under the Highest and Best Use for the subject site is a level "A" analysis.

### *As Vacant:*

When determining the highest and best use of the subject property, four factors must be tested; they are as follows:

- *Legal Permissibility:* the first consideration relative to the determination of the highest and best use "as vacant" is to determine whether or not a proposed use would be allowed under the zoning designation in which the subject property is situated. The subject property is zoned Industrial and partially zoned R-1-C, Country Residential.  These zoning designations allow for a wide variety of applications.

- *Physical Possibility:* the next consideration relative to the determination of the highest and best use "as vacant" determines whether or not a proposed use would be physically possible relative to the shape and size of the subject site. The subject property contains 1,374.99 acres with access from Estuary Road and August Lane, which provide direct access to Rosethorne Lane.  Furthermore, the subject property benefits immensely from its direct waterfront access to the Vendome Canal, which provides access to the rear marsh acreage, as well as other bodies of water including Barataria Bay all the way to Grand Isle.  The complimentary nature of the nature of the wooded acreage with roadway access and the marsh acreage with water access results in a highly unique and marketable acreage tract of land that can physically accommodate a variety of potential uses.

- *Financial Feasibility:* this consideration is integral in determining the proposed use of a vacant site. This test determines whether or not construction costs and land acquisition are justified by the anticipated cash flows associated with a proposed subject property. Given the physical nature of the subject's acreage tract it is positioned to accommodate a variety of potential financially feasible uses such as an RV Park Development coupled



with other lodging components and eco-tourism or commercial hunting/fishing services. Apart from these uses, the subject tract could also accommodate subdivision and sell off or recreational hunting/fishing camp sites with direct access to the Vendome Canal. Finally, the subject acreage tract of land could feasibly accommodate a wetlands mitigation bank that can a highly lucrative use of acreage land in this market, but it is subject to permitting that is reportedly currently pending. All of these uses are potentially financially feasible; however, the subject is likely best positioned for continued recreational use in the interim with long-term future development potential from a financially feasibility standpoint.

- *Maximum Productivity:* this test determines the land use that would attribute the highest value to the land. Based on the preceding discourse, the maximum productive use of the property in the before was for continued recreational use in the interim with long-term future development towards a mixed-use including lodging/RV Park development couple with residential camp lot developments with both benefitting from the Vendome Canal access.

Thus, the highest and best use of the subject site "as vacant" was for recreational use in the interim with future long-term development towards a variety of potential commercial applications including lodging/RV Park development coupled with residential camp lots development.

---

THE MCENERY COMPANY
REAL ESTATE APPRAISAL, BROKERAGE AND CONSULTING

Highes and Best Use - Before

## LAND/SITE VALUATION – BEFORE TAKING

The subject's land value has been developed via the sales comparison approach.

### Sales Comparison Approach – Land Valuation

The Sales Comparison Approach is premised on the idea that a buyer would not pay more for a specific property than the cost of acquiring a property with the same quality, utility, and perceived benefits of ownership. It is based on the principles of supply and demand, equilibrium, substitution, and externalities. The following steps outline the process of the Sales Comparison Approach as applied.

- The market in which the subject property competes is investigated; comparable sales, contracts for sale, and current offerings are reviewed.

- The most pertinent data is further analyzed, and the quality of the transaction is determined.

- The most meaningful unit of value for the subject property is determined.

- Each comparable sale is analyzed and where appropriate, adjusted to equate with the subject property.

- The value indication of each comparable sale is analyzed, and the data reconciled for a final indication of value via the Sales Comparison Approach.

## Land Comparables

We have researched eight comparables for this analysis; these are documented on the following pages followed by a location map and analysis grid. All sales have been researched through numerous sources and verified by a party to the transaction unless otherwise noted.

| Comp | Address | Date | Acres | Land SF |
| --- | --- | --- | --- | --- |
| | City | Price | Price per Acre | Price Per Land SF |
| **Subject** | Various Lafitte Property | | 1,374.99 | 59,894,390 |
| | Lafitte | | | |
| 1 | Sucre Brut Coastal - Mitigation Bank II | 2/20/2024 | 792.53 | 34,522,607 |
| | Lockport | $1,402,590 | $1,770 | $0.04 |
| 2 | Highway 39 | 1/3/2022 | 1,135.00 | 49,440,600 |
| | Violet | $28,297,572 | $24,932 | $0.57 |
| 3 | 14580 Niblett Road | 12/15/2021 | 1,154.73 | 50,300,039 |
| | Jennings | $3,175,508 | $2,750 | $0.06 |
| 4 | West side of Highway 22 | 1/5/2021 | 1,149.00 | 50,050,440 |
| | Springfield | $2,387,000 | $2,077 | $0.05 |
| 5 | North of Highway 74 | 12/22/2020 | 2,365.00 | 103,019,400 |
| | Saint Gabriel | $3,900,000 | $1,649 | $0.04 |
| 6 | Off LA Highway 308 | 10/14/2019 | 1,272.69 | 55,438,376 |
| | Lockport | $4,100,000 | $3,222 | $0.07 |
| 7 | Grand Caillou Road | 11/30/2018 | 1,667.00 | 72,614,520 |
| | Houma | $2,750,000 | $1,650 | $0.04 |
| 8 | Avondale Garden Road | 8/23/2016 | 1,023.87 | 44,599,777 |
| | Avondale | $13,500,000 | $13,185 | $0.30 |

THE MCENERY COMPANY
REAL ESTATE APPRAISAL, BROKERAGE AND CONSULTING

Land/Site Valuation - Before

## Land Comparable 1



+/- 793 Acres

### Transaction

| | | | |
|---|---|---|---|
| ID | 54275 | Date | 2/20/2024 |
| Address | Sucre Brut Coastal - | Price | $1,402,590 |
| City | Lockport | Price Per Land SF | $0.04 |
| State | LA | Price Per Acre | $1,770 |
| Zip | 70374 | Transaction Type | Closed Sale |
| Grantor | Thomassie Commercial | Property Rights | Fee Simple |
| Grantee | Delta Land Services, LLC | | |
| Days On Market | 315 | | |
| Legal Description | A certain parcel or tract of land containing 457.43 acres, being Lot 46, Section 100, Township 17 South, Range 20 East, Lafourche Parish,  State of Louisiana. | | |
| Confirmation | Appraisal - The McEnery Company 2025, Listing Agent -  Bradley Cook - 225-505-6009 | | |

### Site

| | | | |
|---|---|---|---|
| Acres | 792.53 | Zoning | Unincorporated Lafourche |
| Land SF | 34,522,607 | Flood Zone | AE |

### Comments

This recreational tract of land was on the market for approximately 10 months prior to selling for the noted contract price of $1,402,590.  The original asking price was $1,500,000 and the property had historically been utilized for recreational purposes by the family that sold the property to Delta Land Services.  According to the listing agent, Mr. Bradley Cook, the property was formerly a part of the Valentine Oil Field and at one point there had been a paper mill on the site with the discharge of water from the mill onto portions of the property.  The listing agent confirmed that there we minimal if any environmental concerns associated with the property, as the purchasers acquired the property with the intention of developing a wetlands mitigation.  It is worth noting that the transaction included Lot 7-A, which contained 8.95 acres; however, the title regarding this portion of the property was questionable and it was not factored into the pricing.  The agent confirmed that title history of this acreage was unclear and though it technically sold with the property,  it was not factored into the acreage or pricing calculations.  For the purposes of this analysis, we have relied upon the acreage provided within the legal description at 792.53 acres.

The property is accessed via Joe Brown Road, which leads to Jay Drive and then continuous on along a paved roadway towards the site.  The property is located fully inside Flood Zone AE and encumbered by wetlands.

---

**THE MCENERY COMPANY**
REAL ESTATE APPRAISAL, BROKERAGE AND CONSULTING

Land/Site Valuation - Before

*Wetlands Map:*



---

## Land Comparable 2



### Transaction

| | | | |
|---|---|---|---|
| ID | 54125 | Date | 1/3/2022 |
| Address | Highway 39 | Price | $28,297,572 |
| City | Violet | Price Per Land SF | $0.57 |
| State | LA | Price Per Acre | $24,932 |
| | | Transaction Type | Closed Sale |
| Grantor | BorgneMouth Realty, LLC, | Property Rights | Fee Simple |
| Grantee | The Board of | Book/Page or Reference | Various - See Comments |
| Legal Description | Multiple Legal Descriptions | | |
| Confirmation | Previous Appraisal - The McEnery Company, Seller - Bruce Wallis, Media Articles | | |

### Site

| | | | |
|---|---|---|---|
| Acres | 1,135.00 | Zoning | I-1, I-2, C-2, C-1, & R-1 |
| Land SF | 49,440,600 | Flood Zone | AE & X |

### Comments

This is the sale of an assemblage of acreage land owned by various owners in 2022 to the Port of New Orleans for the proposed development of a Container Terminal. Relevant to this land acquisition is that the majority of the acreage was non-riverfront land, but rather rear acreage land that was bisected by Highway 39 and reportedly was encumbered by wetlands per the national wetlands mapper service. That said, the acquisition did include some batture areas, which were approximately 25 acres. The positioning of this batture limits its utility for maritime industrial use in coordination with the balance of acreage acquired. The acquisitions all took place on January 3, 2022 under the following breakdown:

Borgnemouth Realty, LLC to Port of New Orleans for $18,407,925 (Deed Book/Page 1225/148)
Louise Carrere Properties, LLC & Claverie Properties of St. Bernard, LLC to Port of New Orleans for $3,195,075 (Deed Book/Page 1225/206)
Willowbank, LLC to Port of New Orleans for $3,238,050 (Deed Book/Page 1225/292)
Dupuy Storage and Various Owners to Port of New Orleans for $3,456,522 (Multiple deeds)

in total the assemblage equates to 1,135 acres, which was acquired for a price of $28,297,572. The Port of New Orleans intends to construct and develop a $1.5 billion multi-modal container terminal as part of the overall master plan. Relevant to this sale acquisition is that the Port of New Orleans have previously acquired the adjoining batture land necessary for this port construction in separate acquisitions with this assemblage being acquired largely for the support areas for uses like storage, staging, warehousing, and transferring goods.

**THE MCENERY COMPANY**
REAL ESTATE APPRAISAL, BROKERAGE AND CONSULTING

Land/Site Valuation - Before

*Wetlands Map*:



## Land Comparable 3



### Transaction

| | | | |
|---|---|---|---|
| ID | 41743 | Date | 12/15/2021 |
| Address | 14580 Niblett Road | Price | $3,175,508 |
| City | Jennings | Price Per Land SF | $0.06 |
| State | LA | Price Per Acre | $2,750 |
| Zip | 70546 | Transaction Type | Closed Sale |
| Grantor | Barlan Properties, LLC, | Property Rights | Fee Simple |
| Grantee | Sabbaghian Properties, LLC | Book/Page or Reference | #728332 |
| Days On Market | N/A | | |
| Legal Description | Lot 2, Sections 27 and 34, T10S-R5W; Lot 3, Section 26, 37, and 35, T10S-R5E; Lots 55, 75, 76, and 77, Niblett Farms Subdivision, Section 3, T11S-R5W; | | |
| Confirmation | Q4 2021 McEnery Company Appraisal | | |

### Site

| | | | |
|---|---|---|---|
| Acres | 1,154.73 | Zoning | No zoning |
| Land SF | 50,300,039 | Flood Zone | A |
| Shape | Irregular | Road Frontage | Yes |

### Comments

This property sold in an arm's length transaction for $2,750 per acre. Prior to sale, much of the site was cleared pasture land. The site features paved road frontage on Niblett Road. The site is improved with a dirt roadway traversing the property. According to the US Wildlife & Fisheries Wetlands Inventory Map, the northern and westerns portions of the property appear to be encumbered with areas classified as wetlands.

42

*Wetlands Map:*



## Land Comparable 4



### Transaction

| | | | |
|---|---|---|---|
| ID | 39009 | Date | 1/5/2021 |
| Address | West side of Highway 22 | Price | $2,387,000 |
| City | Springfield | Price Per Land SF | $0.05 |
| State | LA | Price Per Acre | $2,077 |
| Zip | 70462 | Transaction Type | Closed Sale |
| Grantor | Ralston Pittman Cole, et al | Property Rights | Fee Simple |
| Grantee | Blood River Preserve, LLC | Book/Page or Reference | Book 1408, Page 517 and |

| | |
|---|---|
| Legal Description | A certain tract located in multiple sections of Township 7 south, Range 6 east, Livingston Parish, Louisiana |
| Confirmation | Broker, Evan Scroggs @ 225-295-0800 |

### Site

| | | | |
|---|---|---|---|
| Acres | 1,149.00 | Zoning | Agr. |
| Land SF | 50,050,440 | Flood Zone | Mostly AE |

### Comments

This 1,149 acre undeveloped tract was listed for $2,800,000 for approximately 15 months before selling in two transactions for $2,387,000. The property consists of both upland and low-lying property, but is located predominantly in flood zone AE. The property has about a mile of frontage along the Blood River. It also abuts the Carter Plantation, an upper tier residential development with golf course and country club. The buyer was reportedly the developer of Carter Plantation who planned to develop portions of this property for residential subdivision while leaving the remaining acreage as a nature conservancy. There were two barns situated on the property that were in good overall condition, but had minimal contributory value.

*Wetlands Map:*





## Land Comparable 5



### Transaction

| | | | |
|---|---|---|---|
| ID | 54283 | Date | 12/22/2020 |
| Address | North of Highway 74 | Price | $3,900,000 |
| City | Saint Gabriel | Price Per Land SF | $0.04 |
| State | LA | Price Per Acre | $1,649 |
| Zip | 70776 | Transaction Type | Closed Sale |
| Grantor | First Louisiana Resource, | Property Rights | Fee Simple |
| Grantee | Bohica Holdings, LLC | Book/Page or Reference | Deed Book/Page 715/76 |

| | |
|---|---|
| Legal Description | An acreage tract of land containing 2,365 acres comprised of three tracts: |
| Confirmation | Public Record |

### Site

| | | | |
|---|---|---|---|
| Acres | 2,365.00 | Zoning | No Zoning |
| Land SF | 103,019,400 | Flood Zone | AE |

### Comments

This is the sale of a 2,356 acre tract of raw land located just of Highway 74 in Saint Gabriel, Louisiana. The tract is raw wooded acreage and encumbered by wetlands with limited accessibility. Furthermore, this property had reportedly been encumbered partially by a wetlands mitigation bank and corresponding conservation servitude.

*Wetlands Map:*



## Land Comparable 6



### Transaction

| | | | |
|---|---|---|---|
| ID | 46369 | Date | 10/14/2019 |
| Address | Off LA Highway 308 | Price | $4,100,000 |
| City | Lockport | Price Per Land SF | $0.07 |
| State | LA | Price Per Acre | $3,222 |
| Zip | 60394 | Transaction Type | Closed Sale |
| Grantor | Clotilda Plantation, INC | Property Rights | Fee Simple |
| Grantee | Delta Land Services, LLC | Book/Page or Reference | Book: 2182, Page: 841 |
| Days On Market | -- | Proposed Use | -- |
| Legal Description | A certain 1,272.69-acre parcel of land situated in Sections 40 & 41, Township 3 North, Range 3 West, Lafourche Parish, State of Louisiana | | |
| Confirmation | Not Yet Confirmed | | |

### Site

| | | | |
|---|---|---|---|
| Acres | 1,272.69 | Zoning | Not Zoned |
| Land SF | 55,438,376 | Flood Zone | C, A |
| Shape | Irregular | | |

### Comments

This property was leased for sugar cane production at the time of sale and featured wooded acreage for recreational use. The improvements on site were not given any contributory value.

48

*Wetlands Map:*



## Land Comparable 7



### Transaction

| | | | |
|---|---|---|---|
| ID | 32135 | Date | 11/30/2018 |
| Address | Grand Caillou Road | Price | $2,750,000 |
| City | Houma | Price Per Land SF | $0.04 |
| State | LA | Price Per Acre | $1,650 |
| Zip | 70363 | Transaction Type | Closed Sale |
| Grantor | Warrior Met Coal LA, LLC | Property Rights | Fee Simple |
| Grantee | JMB Partnership, LLC | Book/Page or Reference | Book 2556, Page 755 |

| | |
|---|---|
| Legal Description | A certain 1,272.69-acre parcel of land situated in Sections 40 & 41, Township 3 North, Range 3 West, Lafourche Parish, State of Louisiana |
| Confirmation | Listing Broker: Hank Babin - 985.872.4597 |

### Site

| | | | |
|---|---|---|---|
| Acres | 1,667.00 | Zoning | No zoning |
| Land SF | 72,614,520 | Flood Zone | AE |

### Comments

This tract consists of agricultural and wetlands land along Grand Caillou Road to the Houma Navigational canal just south of Thompson Road. This property was originally priced at $2,750,000 and sold for the list price.

*Wetlands Map:*



## Land Comparable 8



### Transaction

| | | | |
|---|---|---|---|
| ID | 54455 | Date | 8/23/2016 |
| Address | Avondale Garden Road | Price | $13,500,000 |
| City | Avondale | Price Per Land SF | $0.30 |
| State | LA | Price Per Acre | $13,185 |
| Zip | 70094 | Transaction Type | Closed Sale |
| Grantor | Bayou Verret Lands, LLC & | Property Rights | Fee Simple |
| Grantee | West Jefferson Levee | Book/Page or Reference | 11638779 & |
| Days On Market | -- | Proposed Use | -- |
| Legal Description | A 775.10 acre tract of land located in Sections 3, 4, and 6, Township 14 South, Range 22 East, Jefferson Parish,  State of Louisiana, as well as a 248.77 acre tract of land | | |
| Confirmation | Public Record | | |

### Site

| | | | |
|---|---|---|---|
| Acres | 1,023.87 | Zoning | U1S, Unrestricted |
| Land SF | 44,599,777 | Flood Zone | AE/X |
| Shape | -- | Road Frontage | -- |

### Comments

This is the sale of a 1,024 acre tract of land, which transferred ownership in August of 2016 to the West Jefferson Levee District for $13,500,00.  The property was historically owned by the Marcello family, who sold the acreage to West Jefferson Levee District as part of a broader initiative aimed at environmental restoration efforts as it relates to the federally funded enhancements to the West Bank Flood protection system.  The acquisition of the assembled tract of acreage will be used to grow replacement trees, according to the Southeast Louisiana Flood Protection Authority.  The tract of land was acquired under two separate transactions by West Jefferson Levee

*Wetlands Map:*



## Land Comparables Map





# Land Comparables Analysis Grid

| Analysis Grid | Subject | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|---|
| Date | | 2/20/2024 | 1/3/2022 | 12/15/2021 | 1/5/2021 | 12/22/2020 | 10/14/2019 | 11/30/2018 | 8/23/2016 |
| Address | Rosethorne Road | Sucre Brut Coastal - | Highway 39 | 14580 Niblett Road | West side of | North of Highway 74 | Off LA Highway 308 | Grand Caillou Road | Avondale Garden |
| City | Lafitte | Lockport | Violet | Jennings | Springfield | Saint Gabriel | Lockport | Houma | Avondale |
| Sales Price | | $1,402,590 | $28,297,572 | $3,175,508 | $2,387,000 | $3,900,000 | $4,100,000 | $2,750,000 | $13,500,000 |
| Acres | 1,374.99 | 792.53 | 1,135.00 | 1,154.73 | 1,149.00 | 2,365.00 | 1,272.69 | 1,667.00 | 1,023.87 |
| Land SF | 59,894,390 | 34,522,607 | 49,440,600 | 50,300,039 | 50,050,440 | 103,019,400 | 55,438,376.40 | 72,614,520.00 | 44,599,777.20 |
| Flood Zone | AE | AE | AE & X | A | Mostly AE | AE | C, A | AE | AE/X |
| Zoning | Industrial, RC1 | Unincorporated | I-1, I-2, C-2, C-1, & R- | No zoning | Agr. | No Zoning | Not Zoned | No zoning | U1S, Unrestricted |
| Acre Unit Price | | $1,770 | $24,932 | $2,750 | $2,077 | $1,649 | $3,222 | $1,650 | $13,185 |
| Conditions of Sale/Property Rights | | 0.00% | -25.00% | 0.00% | 0.00% | 15.00% | 0.00% | 0.00% | -25.00% |
| **Adjusted Acre Unit Price** | | **$1,770** | **$18,699** | **$2,750** | **$2,077** | **$1,896** | **$3,222** | **$1,650** | **$9,889** |
| **Physical Adjustments** | | | | | | | | | |
| Size | | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Location | | 20.00% | 0.00% | 30.00% | 25.00% | 0.00% | 20.00% | 20.00% | 0.00% |
| Flood Zone | | 0.00% | -2.50% | 0.00% | 0.00% | 0.00% | -2.50% | 0.00% | -2.50% |
| Zoning | | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Utility | | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | -5.00% | 5.00% | 0.00% |
| Waterfrontage | | 10.00% | -20.00% | 0.00% | 0.00% | 10.00% | 10.00% | 0.00% | -10.00% |
| **Gross Adjustment** | | **30.00%** | **22.50%** | **30.00%** | **25.00%** | **10.00%** | **37.50%** | **25.00%** | **12.50%** |
| **Composite Adjustment** | | **30.00%** | **-22.50%** | **30.00%** | **25.00%** | **10.00%** | **22.50%** | **25.00%** | **-12.50%** |
| **Adjusted Acre Unit Price** | | **$2,301** | **$14,492** | **$3,575** | **$2,597** | **$2,086** | **$3,946** | **$2,062** | **$8,653** |

THE MCENERY COMPANY
REAL ESTATE APPRAISAL, BROKERAGE AND CONSULTING

Land/Site Valuation - Before

## COMPARABLE SALE ADJUSTMENTS

The sales data has been analyzed and compared to the subject property. Adjustments were made in the following areas:

- Property Rights Sold
- Financing
- Conditions of Sale
- Market Trends
- Location
- Physical Characteristics

As explained within the market area analysis, the subject property is a unique acreage tract of land, which benefits from its proximity to the City of New Orleans, ease of access from Rosethorne Road, and utilities present on site.  The topography and composition of the property is also very unique in that the subject's wooded acreage fronts along the private Vendome Canal, which provides direct access to the rear marsh acreage via watercraft.  This access to the rear marsh acreage lends the property to a high marketable and unique recreational tract of land with long-term viability for commercial applications previously discussed in the market area analysis.

Given the unique attributes of the property, as well as the scale of the subject acreage, a regional data set is necessary to account for the very unique nature of the subject acreage.  As explained, this analysis presumes the utility and nature of the subject tract of land prior to the discussed taking for the levee project.

### Conditions of Sale

All of the comparable sales were confirmed to be arm's length transactions; however, adjustments have been applied for Sales #2 and 8.  These acreage sales were purchased by public entities for a restoration project in the case of Sale #2 and the assemblage of acreage for development of a container terminal in the case of Sale #8.

In the case of Sale #2, this was a very similar acreage tract of land to the subject property that was acquired by the West Jefferson Levee District for a restoration project necessary to offset damage tied to a previous federally funded protection project.  I have confirmed with a confidential participant involved in the transaction that this was an arm's length transaction with the sale price reportedly based on an appraised market value.  Regardless, I recognize that pricing of acreage land by public entities may fall towards the higher end of the range due to the motivations of the purchasing party as part of a larger overall project; however, this was not an expropriation/appropriation but an arm's length transaction that was reportedly based on an appraised value.  Given the likely strong motivations to acquire this particular land and the possibility that a premium was achieved, I have applied a downwards adjustment of 25%.

In the case of Sale #8, this large acreage tract of land was acquired by the Port of New Orleans to be assembled with existing riverfront acreage already owned by the Port of New Orleans for the development of a container terminal.

This property was acquired by the Port of New Orleans for support site area in conjunction with its existing Mississippi River frontage within St. Bernard Parish.  As previously mentioned, this site featured low-lying areas, was heavily wooded, and encumbered by wetlands.  I confirmed with the owner of a portion of this acreage tract of land that it was an arm's length transaction and that the agreed upon sale price was reportedly based on market value.  Nevertheless, I do recognize that the purchasing party had strong motivations to acquire this raw acreage that was historically utilized as greenspace/recreational land for purposes of assemblage for future development of the noted container terminal.   As a result, a downwards adjustment of 25% has been applied to this sale, as well.

These two indicators have been included as they are recent raw acreage tracts of land with composition similar to that of the subject property and located within the New Orleans metropolitan area.   Given the potential irregular motivations of the buying parties of this tract of land, I have given these indicators minimal weight in the final value conclusion.

### Property Rights
Sale #5 was encumbered by a restrictive conservation easement at the time of sale, which limited potential uses on the property.  As a result of this encumbrance an upwards adjustment is necessary.

### Market Trends
Large acreage tracts of land similar to the subject property tend to feature less drastic fluctuations in terms of achievable pricing over time.  This asset class typically features modest levels of growth or decline in terms of pricing over a period of 5 to 10 years. As a result, no sales required adjustment based on market conditions as they all conveyed at times when the market was similar to the effective date of value.

### Size
No adjustments were necessary for this consideration.

### Location
As discussed in great detail within the market area analysis, the subject property features good accessibility and is in close proximity to the City of New Orleans.   This unique location is highly marketable and positions the subject as a highly marketable recreational tract with potential for future commercial applications such as an RV Park/lodging, eco-tourism, subdivision and sell-off of recreational hunting camps, or a wellness retreat.  In the case of Sales #1, 3, 4, 5, and 6 strong upwards adjustments are necessary to account for their inferior locations that are more rural/remote or further away from major metropolitan areas.

58

## Flood Zone

The subject property is located fully within a flood hazard zoning designation. Modest downwards adjustments were applied to Sales #2, 6, and 8 for their partial locations in non-hazardous zoned areas.

## Zoning

No zoning adjustments were necessary.

## Utility

Sale #5 requires a downwards adjustment for utility, as this tract of land was partially utilized for agricultural purposes.  This use generates income for the acreage tract of land and is not a suitable use for the subject acreage.  Though this property features a different use of the land, its highest and best use did remain for partial recreational applications, and it is worthy of inclusion.

Sale #6 was largely low-lying wetlands, which limits its utility for recreational and commercial purposes.  An upwards adjustment is necessary for this indicator.

## Waterfrontage

The subject acreage benefits from its waterfrontage along the private Vendome Canal.  This a highly marketable aspect of the subject property, as it provides direct waterfront access to the marsh acreage for recreational hunting/fishing.  This acreage can also be utilized for commercial recreational hunting/fishing or eco-tourism applications.   Additionally, the subject's water accessibility also allows for transportation by watercraft to other areas of Jefferson Parish for recreational/hunting and fishing including Barataria Bay and Grand Isle. As a result, Sales #1, 5, 6 and 7 have all been adjusted upwards.

Sale #2 and 8 require downwards adjustment as they featured waterfrontage along the Mississippi River, which allows for more intensive industrial/commercial applications.  Sale #8 featured a minimal level of frontage and the batture land added limited value.  Only a modest downwards adjustment is necessary for this indicator.

## LAND/SITE VALUATION RECONCILIATION AND CONCLUSION

| Land Value Ranges & Reconciled Value | | | | |
|---|---|---|---|---|
| Number of Comparables: | 8 | Unadjusted | Adjusted | % Δ |
| Low: | | $1,649 | $2,062 | 25% |
| High: | | $24,932 | $14,492 | -42% |
| Average: | | $6,404 | $4,964 | -22% |
| Median: | | $2,414 | $3,086 | 28% |
| St. Dev. | | $8,436 | $4,420 | -48% |
| Reconciled Value/Unit Value: | | | $4,000 | |
| Subject Size: | | | 1,375 | |
| Indicated Value: | | | $5,499,944 | |
| Reconciled Final Value: | | | **$5,500,000** | |
| Five Million Five Hundred Thousand Dollars | | | | |

Following the applications, the range has tightened, and the standard deviation has decreased from $8,436 per acre to $3,858 per acre.

The data set presents a fairly wide range, which is largely due to the inclusion of Sales #2 and 8, which both fall towards the upper end of the range with adjusted values of $14,492 per acre and $8,653 per acre. As previously mentioned, both indicators feature similar topography and physical attributes to the subject property, as well as having a similar scale in terms of size. That said, both of these indicators were acquired by public agencies for special use purposes, which can be considered somewhat of an atypical motivation for market participants. With this in mind, limited weight and consideration has been given to these indicators, but they are worth noting within this analysis.

Following the exclusion of these two indicators, the range tightens even more from a low of $2,062 per acre to a high of $3,946 per acre with a mean of $2,761 per acre.

The above indicators are all reliable and worthy of consideration as large-scale acreage tracts of land featuring similar highest and best uses to the subject property. I note one of the two low-end indicators (Sale #5) was impacted by a conservation easement, which restricted its potential uses. Excluding this tract of land, results in a tightening of the range even more with a new mean of $2,896 per acre.

Given the subject's strong positioning within the New Orleans Metropolitan area and only 25-30 minutes from downtown New Orleans, a value conclusion towards the higher end of the range is justified.

Several additional factors have also been considered in the reconciliation of the subject's "before" opinion of value. Firstly, the subject wooded acreage component compliments the marsh acreage and provides for a recreational use or potentially a commercially viable land use for future development.

As previously noted, potential uses include RV Park development, Loding development, subdivision and lot development for recreational camp homesites, or potentially an institutionally oriented use such as a wellness retreat or religious use center.  The complimentary nature of the subject acreage assembled with the marsh acreage enhances its marketability.

The next attribute to consider is the subject's wooded acreage features roadway access with utilities brought to site and a location that is 20-30 minutes from downtown New Orleans.  This is unique and a very marketable component to the subject property, which provides a short drive time from a major population base for recreational applications.

Finally, the subject property (in the before state) benefited from an existing spoil berm at the south end perimeter of the wooded acreage tract of land, which featured ample clay/fill materials and acted as a natural barrier to prevent storm surge or inundation to the wooded acreage.  This spoil berm located on the subject tract of land was historically approximately 5' to 6' high and contained approximately 67,611 cubic yards of clay materials.  <u>With typical pricing of clay materials hovering around $5.00 per cubic yard, this reflected a benefit of approximately $338,055, which does not consider any softs costs or construction costs associated with the actual development of the spoil berm.  The addition of these costs would likely result in a substantially larger project cost for the spoil berm that existed on the property prior to the taking.  This speaks to the significant contributory value of this component to the property, which has been accounted for in the "before" land value reconciliation.</u>

Images of the spoil berm are shown below to illustrate the significance of this component and its enhancement to the marketability of the property.



*Imagery from April 2024*





*January 2025*

Lastly, the subject property benefited in the "before" state from a private canal known as the Vendome Canal, which provided direct waterfront access to the rear marsh acreage for recreational hunting/fishing, and eco-tourism related activities. Several of the indicators including Sales #1, 5, and 6 did not feature this highly marketable amenity. The presence of direct waterfront access to a recreational hunting and fishing tract is highly marketable in this market. Further, the Vendome Canal provides direct access to other bodies of water such as Barataria Bay, which leads all the way to Grand Isle. The assemblage of the marsh acreage/Vendome Canal complimenting the wooded acreage with direct access to Rosethorne Road, as well as the subject's location only 30 minutes from downtown New Orleans cannot be overlooked.

**With the above attributes taken into consideration and primary weight assigned to Sales #1, 3, 4, and 6 and minimal consideration to Sale #8, the data supports an opinion of value of $4,000 per acre.**

In support of this value conclusion, I have also considered the following qualitative analysis:

| Analysis Grid | Subject | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|---|
| Date | | 2/20/2024 | 1/3/2022 | 12/15/2021 | 1/5/2021 | 12/22/2020 | 10/14/2019 | 11/30/2018 | 8/23/2016 |
| Address | Various Lafitte | Sucre Brut Coastal - | Highway 39 | 14580 Niblett Road | West side of | North of Highway 74 | Off LA Highway 308 | Grand Caillou Road | Avondale Garden |
| City | Lafitte | Lockport | Violet | Jennings | Springfield | Saint Gabriel | Lockport | Houma | Avondale |
| Sales Price | | $1,402,590 | $28,297,572 | $3,175,508 | $2,387,000 | $3,900,000 | $4,100,000 | $2,750,000 | $13,500,000 |
| Acres | 1,374.99 | 792.53 | 1,135.00 | 1,154.73 | 1,149.00 | 2,365.00 | 1,272.69 | 1,667.00 | 1,023.87 |
| Land SF | 59,894,564 | 34,522,607 | 49,440,600 | 50,300,039 | 50,050,440 | 103,019,400 | 55,438,376.40 | 72,614,520.00 | 44,599,777.20 |
| Flood Zone | AE | AE | AE & X | A | Mostly AE | AE | C, A | AE | AE/X |
| Zoning | R-1-C | Unincorporated | I-1, I-2, C-2, C-1, & R- | No zoning | Agr. | No Zoning | Not Zoned | No zoning | U1S, Unrestricted |
| Acre Unit Price | | $1,770 | $24,932 | $2,750 | $2,077 | $1,649 | $3,222 | $1,650 | $13,185 |
| Conditions of Sale/Property Rights | | ( ) | (-,-,-, -) | ( ) | ( ) | (+, +, +) | ( ) | ( ) | (- ,-,-,-, -) |
| **Adjusted Acre Unit Price** | | **$1,770** | **$24,932** | **$2,750** | **$2,077** | **$1,649** | **$3,222** | **$1,650** | **$13,485** |
| **Physical Adjustments** | | | | | | | | | |
| Size | | ( ) | ( ) | ( ) | ( ) | ( ) | ( ) | ( ) | ( ) |
| Location | | (+, +, +, +) | ( ) | (+,+,+,+,+, +) | (+,+,+,+, +) | ( ) | (+, +, +, +) | (+, +, +, +) | ( ) |
| Flood Zone | | ( ) | ( - ) | ( ) | ( ) | ( ) | (-) | ( ) | (-) |
| Zoning | | ( ) | ( ) | ( ) | ( ) | ( ) | () | ( ) | ( ) |
| Utility | | ( ) | ( ) | ( ) | ( ) | ( ) | (-) | ( + ) | ( ) |
| Waterfrontage | | (+, +) | (-, -, -, -) | ( ) | ( ) | (+, +) | (+,+) | ( ) | (-,-) |
| **Composite Adjustment** | | **(+, +, +, +, +, +)** | **(-,-,-,-,-,-,-,-)** | **(+, +, +, +, +, +)** | **(+, +, +, +, +)** | **(+, +, +, +,+)** | **(+,+,+,+, +)** | **(+,+,+,+,+)** | **(-,-,-,-,-,-,-,-)** |
| **Adjusted Acre Unit Price** | | **$1,770** | **$24,932** | **$2,750** | **$2,077** | **$1,649** | **$3,222** | **$1,650** | **$13,485** |

The above analysis grid represents the Qualitative Analysis performed in conjunction with the quantitative analysis grid in this Land/Site Valuation. The qualitative analysis is based on a rating system that scores the comparable data set based on "a better than or worse than" analysis.   An explanation of the rating system is shown below.

Qualitative Adjustment Legend:
- (+) denotes positive adjustment to comparable sale to account for inferior attribute of comparable
- (-) denotes negative adjustment to comparable sale to account for superior attribute of comparable
- ( ) denotes no adjustment necessary as the comparable and subject are similar with respect to the specific attribute

THE MCENERY COMPANY
REAL ESTATE APPRAISAL, BROKERAGE AND CONSULTING

63

Qualitative adjustments have been applied to account for discrepancies with respect to the physical discrepancies previously discussed.

Overall, the qualitative adjustments indicate a value should fall below that of Sales #2 and #8, as well as above the balance of the data due to the marketable attributes of the subject property.

This qualitative analysis provides further supplemental support for the reconciled value conclusion of $4,000 per acre

INDICATION OF <u>BEFORE</u> MARKET VALUE OF SUBJECT PROPERTY:          $5,500,000

# JUST COMPENSATION FOR TAKEN ACREAGE RECONCILIATION

As discussed within the scope of work section, the ownership has effectively lost its full bundle of rights associated with the discussed acreage that has historically been utilized as a spoil berm for protection from storm surge and inundation to the wooded acreage.

Just Compensation is defined by several sources below:

"a full indemnity or remuneration for the loss or damage sustained by the owner of the property taken or injured by public use; and just compensation means the full and perfect equivalent in money of the property taken whereby the owner is put in as good as a pecuniary position as he would have been had his property not been take." (State Dept. of Transportation & Development v. Clark's Estate 432 So. 2d 405, *408 (La. App. 1 Cir., 1983)

"In condemnation, the amount of loss for which a property owner is compensated when property is taken.  Just compensation should put the owner in as good a position pecuniarily as he or she would have been if the property had not been taken." (Dictionary of Real Estate Appraisal, 7th Edition)

By taking the subject acreage without the implementation of a perpetual servitude, the ownership has effectively lost the bundle of rights to this acreage.  As such, this analysis has provided a total determination of just compensation for the taken acreage, as well as he contributory value associated with  the historic spoil berm improved upon the subject tract.

Below is a breakdown of the components incorporated into the total just compensation estimate for the acreage taken:

- Acreage Taken – 17.697 Acres
- Clay Materials – 67,611 Cubic Yards for Spoil Berm
- Softs Costs – associated with development of Spoil Berm
- Mitigation Costs – for Spoil Berm area
- Container Road - 1,460 Linear Feet of gravel paved road

*Acreage Taken:*

This area equates to 17.697 acres and the before value of $4,000 per acre has been assigned to this acreage for a value of $66,788.

*Clay/Dirt Materials:*

The spoil berm area contains approximately 67,611 cubic yards of clay/dirt materials.    Mr. Richard Lambert, PE, of Richard C. Lambert Consultants has estimated a total cost of $5.00 per cubic yard.  Below are several cost indicators of clay/dirt materials, which support this estimate of $5.00 per cubic yards.

| Name | Plaquemines Dirt & Clay | Midway Cattle | River Birch | 3C Riverside |
|---|---|---|---|---|
| Location | Plaquemines | Plaquemmines | Jefferson | St. Charles |
| Price/CY | $3.50-$6.00 | $4.00-$6.00 | $4.50-$8.00 | $4.00-$7.00 |

This results in a total cost estimate of $338,055 to account for lost or taken clay/dirt materials, which were historically situated and improved on the subject property.

*Soft Costs:*

Typically, there are soft costs associated with the development of a flood protection project, which based on discussions with site engineers can hover around 20% of material costs including the land.  This also considers some level of entrepreneurial incentive/profit associated with the development of a spoil berm.

*Mitigation Costs:*

As explained within the scope of work section, it is critical to note that the spoil berm area that was taken had been previously disturbed and considered mitigated wetlands.  This enhances the value associated with this acreage given the fact that there is no need to mitigate this acreage for purposes of maintaining a spoil berm barrier against storm surges or future levee construction.

Below are several indicators of costs associated with acreage mitigation:

| Mitigation Bank | Chef Menteur Pass | Jesut Bend | SpanishLake | Belle Point | Timberton | Jamestown |
|---|---|---|---|---|---|---|
| Location | Orleans | Plaquemmines | East Baton Rouge | St. John the Baptist | Ascencsion | Livingston |
| Credit Type | Brackish Marh | Fresh intermediate Marsh | BLH & SWP | BLH & Cypress SWP | BLH & Cypress SWP | BLH |
| Quoted Price | $11,792 per acre | $150,000 per acre | $20,000 per acre | $35,000 per acre | $45,000 per acre | $25,000 per acre |

The surveyed banks provide a wide range of potential costs for mitigation of wetlands.   An estimate of $35,000 per acre or $619,395 is justified and reasonable in this case.

*Container Road Costs:*

As part of the taking, the subject property has not only lost the acreage discussed above, but also the "container road" site improvements.  I have relied on a cost estimate prepared by Richard C. Lambert Consultants, LLC, which indicates a total replacement cost estimate of $553,150, which has been utilized herein.  A physical depreciation factor of 25% has been applied to this cost estimate, <u>which results in a contributory value of $414,863.</u>

<u>A breakdown of the determined Just Compensation for the acreage taken is shown below:</u>

| Component | Value |
|---|---|
| Acreage Land | $66,788 |
| Clay/Dirt Materials | $338,055 |
| Costs for Berm Construction | $80,969 |
| Mitigation Costs | $619,395 |
| Container Road | $414,863 |
| **Total** | **$1,520,070** |

**INDICATION OF JUST COMPENSATION FOR ACREAGE TAKEN:**            $1,520,000 (Rounded)

# AFTER ANALYSIS

68

## DESCRIPTION OF THE REMAINDER SITE

This analysis will provide an analysis of the "after" market value of the subject property following the taking of the previously noted subject acreage in May of 2024.    Below I have provided aerial imagery and a site plan of the subject acreage following the taking:





THE MCENERY COMPANY
REAL ESTATE APPRAISAL, BROKERAGE AND CONSULTING



The taking of the subject acreage and construction of a new levee on the existing spoil bermhas in effect bifurcated the subject property into two separate tracts of land.  The remainder tract is broken down into the following tracts of land as shown below:

| Bifurcated Remainder Tract | |
|---|---|
| Wooded Acreage | 181.29 |
| Marsh Acreage | 1,176.00 |
| | |
| **Total Remainder Acreage** | **1,357.29** |

*Wooded Acreage:*

The component of the acreage has lost 17.697 acres of spoil berm area that was previously utilzed as a natural barrier for the wooded acreage component.  In effect, this will reduce the size of the wooded acreage portion of the subject property to 181.29 acres.  Most crticially, this component of the subject acreage will now lose all viable waterfront access to the Vendome Canal and Marsh acreage to the south. With no physical ability to access the Vendome Canal via boat from the Wooded acreage, this has substantially hindered the marketability of the remainder acreage tract of land.

*Marsh Acreage:*

This component of the subject tract has not been impactedd by any lost acreage; however, it has lost its accessibility from the wooded aceage. In effect, the marsh acreage has been oprhaned with only watercraft accessiblity, which is a major detriment to its marketability.

## HIGHEST AND BEST USE -AFTER

The most recent interpretation of this concept which defines value in use in real estate defines the highest and best use of a property according to The Appraisal of Real Estate, The Fourteenth Edition, Page 332, as "the reasonably probable use of property that results in the highest value." The Fourteenth Edition goes on to say "to be reasonably probable, a use must meet certain conditions:

- The use must be *physically possible* (or it is reasonably probable to render it so).
- The use must be *legally permissible* (or it is reasonably probable to render it so).
- The use must be *financially feasible*.
- The use must be *maximally productive*.

Uses that meet the three criteria of reasonably probable uses are tested for economic *productivity,* and the reasonably probable use with the highest value is the highest and best use." The level of analysis under the Highest and Best Use for the subject site is a level "A" analysis.

### As Vacant:

When determining the highest and best use of the subject property, four factors must be tested; they are as follows:

- *Legal Permissibility:* the first consideration relative to the determination of the highest and best use "as vacant" is to determine whether or not a proposed use would be allowed under the zoning designation in which the subject property is situated. The subject property is zoned Industrial and partially zoned R-1-C, Country Residential. These zoning designations allow for a wide variety of applications.

- *Physical Possibility:* the next consideration relative to the determination of the highest and best use "as vacant" determines whether or not a proposed use would be physically possible relative to the shape and size of the subject site. Given the nature of the subject acreage following the taking of the noted acreage, the subject property is bifurcated by a levee, which distinctly divides the wooded acreage and the marsh acreage tracts of land. Furthermore, there is now no physically viable access to the Vendome Canal or marsh acreage from the subject's wooded acreage. These tracts of land are no longer complimentary to each other and have no physical accessibility to each other. As a result, the marsh acreage tract is effectively orphaned from the wooded acreage with direct roadway access from Rosethorne Road.

  The wooded acreage tract has lost its accessibility to the Vendome Canal for all intents and purposes, as well as its physical access to the marsh acreage. Due to this bifurcation of the subject tract, the physical uses of the property would remain separate with the wooded acreage tract of land utilized for recreational purposes or long-term commercial

---

development. While the marsh acreage can be utilized independently as a water-accessible only recreational tract of land.

- *Financial Feasibility:* this consideration is integral in determining the proposed use of a vacant site. This test determines whether or not construction costs and land acquisition are justified by the anticipated cash flows associated with a proposed subject property. The financial feasibility tests remains the same in the after as the before; however, under this analysis the marsh acreage is orphaned from the wooded acreage. As a result, the potential for future use of the subject tract for commercial purposes like eco-tourism or RV Park/lodging is severely neutered.  The only feasible use for either tract of land remains recreational use but independently of one another.

- *Maximum Productivity:* this test determines the land use that would attribute the highest value to the land.  Based on the preceding discourse, the maximum productive use of the subject property is for independent use of each tract for recreational purposes.

Thus, the highest and best use of the tract of land in the "After" analysis is for independent use of each tract of land for recreational purposes.  In the case of the wooded acreage, it has now lost physical access to the Vendome Canal and the marsh acreage, which severely impacts its marketability negatively as a recreational tract of land with limited future commercial development possibilities.  Though, an owner may be potentially allowed to physically cross the new levee, there is no realistic ability to launch watercraft, which effectively precludes any future use of the marsh acreage as a compliment to the wooded acreage.

The marsh acreage is now orphaned from the wooded acreage and lacks any means of roadway access.  This severely diminishes the marketability of this tract of land; however, its highest and best use remains for recreational purposes as an independent acreage tract of land.

## LAND/SITE VALUATION – AFTER MARSH ACREAGE

The subject's land value has been developed via the sales comparison approach.

### Sales Comparison Approach – Land Valuation

The Sales Comparison Approach is premised on the idea that a buyer would not pay more for a specific property than the cost of acquiring a property with the same quality, utility, and perceived benefits of ownership. It is based on the principles of supply and demand, equilibrium, substitution, and externalities. The following steps outline the process of the Sales Comparison Approach as applied.

- The market in which the subject property competes is investigated; comparable sales, contracts for sale, and current offerings are reviewed.

- The most pertinent data is further analyzed, and the quality of the transaction is determined.

- The most meaningful unit of value for the subject property is determined.

- Each comparable sale is analyzed and where appropriate, adjusted to equate with the subject property.

- The value indication of each comparable sale is analyzed, and the data reconciled for a final indication of value via the Sales Comparison Approach.

75

## Land Comparables

We have researched six comparables for this analysis; these are documented on the following pages followed by a location map and analysis grid. All sales have been researched through numerous sources and verified by a party to the transaction unless otherwise noted.

| Comp | Address | Date | Acres | Land SF |
|---|---|---|---|---|
| | City | Price | Price per Acre | Price Per Land SF |
| **Subject** | Rosethorne | | 1,176.00 | 51,226,560 |
| | Lafitte | | | |
| 1 | East of Highway 90 | 6/7/2023 | 292.04 | 12,721,262 |
| | Slidell | $110,000 | $377 | $0.01 |
| 2 | Pearl River Island | 7/21/2021 | 2,248.50 | 97,944,660 |
| | Slidell | $930,000 | $414 | $0.01 |
| 3 | Bayou Terre aux Boeufs | 2/13/2020 | 225.00 | 9,801,000 |
| | St. Bernard | $40,000 | $178 | $0.00 |
| 4 | Off Shell Mound Road | 10/5/2018 | 225.40 | 9,818,424 |
| | Paradis | $150,000 | $665 | $0.02 |
| 5 | Along the Intracoastal Waterway north of Larose | 8/21/2013 | 1,151.00 | 50,137,560 |
| | Larose | $400,000 | $348 | $0.01 |

## Land Comparable 1



### Transaction

| | | | |
|---|---|---|---|
| ID | 50482 | Date | 6/7/2023 |
| Address | East of Highway 90 | Price | $110,000 |
| City | Slidell | Price Per Land SF | $0.01 |
| State | LA | Price Per Acre | $377 |
| Zip | 70458 | Transaction Type | Closed Sale |
| Grantor | Berwick, LLC | Property Rights | Fee Simple |
| Grantee | KT Adventures, LLC | Book/Page or Reference | Instrument Number |

Legal Description    A certain parcel situated in Section 3, Township 10 south, Range 15 east, St. Tammany Parish, Louisiana

Confirmation    Agent, Michael Pou @ 504-525-9763

### Site

| | | | |
|---|---|---|---|
| Acres | 292.04 | Zoning | A-1 |
| Land SF | 12,721,262 | Flood Zone | V15 |

### Comments

This 292.04 acre recreational use tract is located east of Highway 90 in Slidell, Louisiana. The property has no street access and consists of brackish water marsh with frontage along Salt Bayou.

THE MCENERY COMPANY
REAL ESTATE APPRAISAL, BROKERAGE AND CONSULTING

Land/Site Valuation - After

## Land Comparable 2



| Transaction | | | |
|---|---|---|---|
| ID | 37657 | **Date** | 7/21/2021 |
| **Address** | Pearl River Island | **Price** | **$930,000** |
| **City** | Slidell | **Price Per Land SF** | **$0.01** |
| **State** | LA | **Price Per Acre** | **$414** |
| **Zip** | 70458 | **Transaction Type** | Closed Sale |
| **Grantor** | Marshland Holdings, LLC | **Property Rights** | Fee Simple |
| **Grantee** | Louisiana Jones LLC | **Book/Page or Reference** | Instrument # 2282392 |
| **Days On Market** | 74 | | |
| **Legal Description** | A certain parcel located in Section 7, 18, 19, 10, 17, 12, 13, 14 and 15 of Township 10 south, Range 16 east, St. Tammany Parish, Louisiana | | |
| **Confirmation** | Agent, Roger Belsomer @ 504-913-1031 | | |

| Site | | | |
|---|---|---|---|
| **Acres** | 2,248.50 | **Zoning** | A-1; Suburban |
| **Land SF** | 97,944,660 | **Flood Zone** | A |

| Comments |
|---|
| This property was listed in January of 2021 for $1,100,000. The site consists of coastal bottomland along the northern bank of Lake Borgne in Slidell, Louisiana. The site was being marketed for recreational purposes. The site has no road access and is only accessible by boat. The property went under contract on 3/31/2021 after 74 days on the market and eventually sold on 07/21/2021 for $930,000. |

## Land Comparable 3



| Transaction | | | |
|---|---|---|---|
| ID | 35683 | Date | 2/13/2020 |
| Address | Bayou Terre aux Boeufs | Price | $40,000 |
| City | St. Bernard | | |
| State | LA | Price Per Acre | $178 |
| Zip | 70085 | Transaction Type | Closed Sale |
| Grantor | Frank Robin, Jr. | Property Rights | Fee Simple |
| Grantee | 4153 Bayou Rd, LLC | Book/Page or Reference | Book 1189, Page 382 |
| Legal Description | Lots 25-B & 26-B, Swift Tract, Section 7, T15S-R15E, St. Bernard Parish, Louisiana | | |
| Confirmation | Listing agent Jennifer Kieff (504) 439-1288 | | |

| Site | | | |
|---|---|---|---|
| Acres | 225.00 | Zoning | A-1 |
| Land SF | 9,801,000 | Flood Zone | VE |

| Comments |
|---|
| This site was listed for $55,000 and sold for $40,000 shortly after coming to market. The listing agent confirmed an arm's length sale and the purchase price. The purchaser acquired the site for personal recreational purposes with speculative intentions of leasing a portion to another recreational user. The site does not have road frontage and is only accessible by boat from Bayou Terre aux Boeufs. The site is comprised of low, lying wetlands. |



THE MCENERY COMPANY
REAL ESTATE APPRAISAL, BROKERAGE AND CONSULTING

## Land Comparable 4



### Transaction

| | | | |
|---|---|---|---|
| ID | 35685 | Date | 10/5/2018 |
| Address | Off Shell Mound Road | Price | **$150,000** |
| City | Paradis | Price Per Land SF | **$0.02** |
| State | LA | Price Per Acre | **$665** |
| Zip | 70080 | Transaction Type | Closed Sale |
| Grantor | Warikub-Lauer Annuity | Property Rights | Fee Simple |
| Grantee | 3TS Pizz Land, LLC | Book/Page or Reference | Book 868, Page 648 |

| | |
|---|---|
| Legal Description | Two tracts of land being a portion of fractional Section 40, lying west of the section line between Sections 17 & 18, T14S-R20E, St. Charles Parish, Louisiana |
| Confirmation | Listing agent Janina Kinler-Bellew (985) 331-9898 |

### Site

| | | | |
|---|---|---|---|
| Acres | 225.40 | Zoning | Wetland |
| Land SF | 9,818,424 | Flood Zone | AE |

### Comments

Listed for $199,900, this site sold for $150,000 after about three months on the market. The listing agent confirmed the purchase price and an arm's length transaction, and stated that the purchaser acquired the tract for recreational use. The property is predominantly wetlands but also includes one 'dry' area. Although the property has no road frontage, the site was historically accessed through a private dirt road that runs through an adjoining property. The listing agent confirmed that this was an informal arrangement with no legally binding access servitudes.

## Land Comparable 5



| Transaction | | | |
|---|---|---|---|
| ID | 32134 | Date | 4/20/2018 |
| Address | Highway 23 | Price | $1,750,000 |
| City | Port Sulphur | Price Per Land SF | $0.01 |
| State | LA | Price Per Acre | $252 |
| Zip | 70083 | Transaction Type | Closed Sale |
| Grantor | Defelice Land Co, LLC | | |
| Grantee | Captain Zach's Myrtle | Book/Page or Reference | Book 1395, Page 178 |
| | | Proposed Use | -- |
| Legal Description | A certain parcel of land in the rear of Myrtle Grove Plantation and beyond the forty arpent line located in Plaquemines Parish, State of Louisiana | | |
| Confirmation | Listing Broker: Hank Babin - 985.872.4597 | | |

| Site | | | |
|---|---|---|---|
| Acres | 6,935.00 | Zoning | Agricultural |
| Land SF | 302,088,600 | Flood Zone | AE |

| Comments |
|---|
| Property is 6,935 acres total with 1,124 acres being state owned water bottoms. Approximately 800 acres are made up of Lake Hermitage Marsh Creation, which is a project dedicated to marsh restoration by the Louisiana Coastal Wetlands Conservation and Restoration Task Force. |

## Land Comparable 6



### Transaction

| | | | |
|---|---|---|---|
| ID | 21455 | Date | 8/21/2013 |
| Address | Along the Intracoastal | Price | $400,000 |
| City | Larose | Price Per Land SF | $0.01 |
| State | LA | Price Per Acre | $348 |
| Zip | 70373 | Transaction Type | Closed Sale |
| Grantor | Pompey, LLC | Property Rights | -- |
| Grantee | T-Bois Aquaculture, Inc. | Book/Page or Reference | Deed Book 1937, Page |
| Days On Market | -- | Proposed Use | Recreational |
| Legal Description | A certain tract of land siutated at about 28 miles below the Town of Thibodaux, and located on the left descending bank of Bayou Lafourche, located in Section 63, T17S, | | |
| Confirmation | Public Record | | |

### Site

| | | | |
|---|---|---|---|
| Acres | 1,151.00 | Zoning | No zoning in |
| Land SF | 50,137,560 | Flood Zone | AE, EL-8 |
| Shape | -- | Road Frontage | -- |

### Comments

This is the sale of a large recreational tract situated just north of the Town of Larose.  It has historically been leased to a hunting club, and is made up of marsh lands with small areas of higher ground along canal banks. The site was purchased for continued recreational use, and the seller reserved all mineral rights.

THE MCENERY COMPANY
REAL ESTATE APPRAISAL, BROKERAGE AND CONSULTING

Land/Site Valuation - After

## Land Comparables Map



## Land Comparables Analysis Grid

| Analysis Grid | Subject | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|---|
| Date | | 6/7/2023 | 7/21/2021 | 2/13/2020 | 10/5/2018 | 4/20/2018 | 8/21/2013 |
| Address | Rosethorne | East of Highway 90 | Pearl River Island | Bayou Terre aux | Off Shell Mound Road | Highway 23 | Along the Intracoastal |
| City | Lafitte | Slidell | Slidell | St. Bernard | Paradis | Port Sulphur | Larose |
| Sales Price | | $110,000 | $930,000 | $40,000 | $150,000 | $1,750,000 | $400,000 |
| Acres | 1,176 | 292 | 2,249 | 225 | 225 | 6,935 | 1,151 |
| Land SF | 51,226,560 | 12,721,262.40 | 97,944,660.00 | 9,801,000.00 | 9,818,424.00 | 302,088,600.00 | 50,137,560.00 |
| Flood Zone | AE | V15 | A | VE | AE | AE | AE, EL-8 |
| Zoning | 0.00 | A-1 | A-1; Suburban | A-1 | Wetland | Agricultural | No zoning in |
| Accessibility | | No Roadway Access | No Roadway Access | No Roadway Access | Roadway Access | Roadway Access | No Roadway Acces |
| Acre Unit Price | | $376.66 | $413.61 | $177.78 | $665.48 | $252.34 | $347.52 |
| COS/Market Adj. | | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Adjusted Acre Unit Price | | $376.66 | $413.61 | $177.78 | $665.48 | $252.34 | $347.52 |
| **Physical Adjustments** | | | | | | | |
| Size | | -10.00% | 5.00% | -10.00% | -10.00% | 10.00% | 0.00% |
| Location | | 0.00% | 0.00% | 0.00% | -10.00% | -10.00% | 0.00% |
| Flood Zone | | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Zoning | | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Gross Adjustment | | 10.00% | 5.00% | 10.00% | 20.00% | 20.00% | 0.00% |
| Composite Adjustment | | -10.00% | 5.00% | -10.00% | -20.00% | 0.00% | 0.00% |
| Adjusted Acre Unit Price | | $338.99 | $434.29 | $160.00 | $532.39 | $252.34 | $347.52 |

THE MCENERY COMPANY
REAL ESTATE APPRAISAL, BROKERAGE AND CONSULTING

Land/Site Valuation - After

84

## COMPARABLE SALE ADJUSTMENTS

The sales data has been analyzed and compared to the subject property. Adjustments were made in the following areas:

- Property Rights Sold
- Financing
- Conditions of Sale
- Market Trends
- Location
- Physical Characteristics

### Conditions of Sale
All of the comparable sales were confirmed to be arm's length transactions and no adjustments were necessary for conditions of sale.

### Market Trends
No sales required adjustment based on market conditions as they all conveyed at times when the market was similar to the present day.  As was the case in the "before" valuation, the pricing for recreational marsh acreage has remained stable over the past 10+ years in this greater market area.

### Size
Modest adjustments for size discrepancies have been applied based on the principle of *economies of scale.*

### Location/Access
All of the comparable sales are similar recreational marsh acreage tracts of land located outside the New Orleans Metropolitan market area.  Only Sales #4 and 5 required downwards adjustment for their superior accessibility from roadways.

### Flood Zone
No adjustments are necessary for this consideration.

### Zoning
No adjustments are necessary for this consideration.

## LAND/SITE VALUATION RECONCILIATION AND CONCLUSION

| Land Value Ranges & Reconciled Value | | | | |
|---|---|---|---|---|
| Number of Comparables: | 6 | Unadjusted | Adjusted | % Δ |
| Low: | | $177.78 | $160.00 | -10% |
| High: | | $665.48 | $532.39 | -20% |
| Average: | | $372.23 | $344.26 | -8% |
| Median: | | $362.09 | $343.26 | -5% |
| St. Dev. | | $167.65 | $131.10 | -22% |
| Reconciled Value/Unit Value: | | | $250.00 | |
| Subject Size: | | | 1,176 | |
| Indicated Value: | | | $294,000 | |
| Reconciled Final Value: | | | $295,000 | |
| Two Hundred Ninety Five Thousand Dollars | | | | |

Following the application of adjustments, the range has tightened, and the standard deviation has decreased from $167.65 per acre to $131.10 per acre.

The data set ranges from $160 to $532 per acre with a mean of $344.26 per acre.  The high end of the range is set by Sale #4, which was a much smaller marsh acreage tract that also featured roadway access.  Excluding this indicator tightens the range even more with a low of $160 per acre to a high of $434 per acre and a mean of $307 per acre.

Given the lack of roadway access to the subject acreage, a value conclusion of $250 per acre is justified and supportable.   This is well supported by Sales #1, 3, and 5.

**INDICATION OF AFTER MARKET VALUE OF MARSH ACREAGE:**                    **$295,000**

## LAND/SITE VALUATION – AFTER WOODED ACREAGE

The subject's land value has been developed via the sales comparison approach.

### Sales Comparison Approach – Land Valuation

The Sales Comparison Approach is premised on the idea that a buyer would not pay more for a specific property than the cost of acquiring a property with the same quality, utility, and perceived benefits of ownership. It is based on the principles of supply and demand, equilibrium, substitution, and externalities. The following steps outline the process of the Sales Comparison Approach as applied.

- The market in which the subject property competes is investigated; comparable sales, contracts for sale, and current offerings are reviewed.

- The most pertinent data is further analyzed, and the quality of the transaction is determined.

- The most meaningful unit of value for the subject property is determined.

- Each comparable sale is analyzed and where appropriate, adjusted to equate with the subject property.

- The value indication of each comparable sale is analyzed, and the data reconciled for a final indication of value via the Sales Comparison Approach.

## Land Comparables

We have researched six comparables for this analysis; these are documented on the following pages followed by a location map and analysis grid. All sales have been researched through numerous sources and verified by a party to the transaction unless otherwise noted.

| Comp | Address City | Date Price | Acres Price per Acre | Land SF Price Per Land SF |
|---|---|---|---|---|
| **Subject** | Rosethorne Lane<br><br>Lafitte | | 181.29 | 7,896,992 |
| 1 | Lot 1C Highway 23<br><br>Belle Chasse | 8/16/2023<br><br>$300,000 | 33.46<br><br>$8,966 | 1,457,518<br><br>$0.21 |
| 2 | 709 Jean Lafitte Hwy.<br><br>Lafitte | 3/9/2023<br><br>$135,000 | 26.90<br><br>$5,019 | 1,171,764<br><br>$0.12 |
| 3 | 21188 Highway 23<br><br>Port Sulphur | 12/29/2022<br><br>$6,500,000 | 292.58<br><br>$22,216 | 12,744,785<br><br>$0.51 |
| 4 | Main Street<br><br>Belle Chasse | 5/21/2020<br><br>$580,000 | 44.90<br><br>$12,918 | 1,955,844<br><br>$0.30 |
| 5 | 1-310 and River Road<br><br>Destrehan | 12/11/2017<br><br>$1,900,000 | 108.12<br><br>$17,573 | 4,709,707<br><br>$0.40 |
| 6 | Avondale Garden Road<br><br>Avondale | 8/23/2016<br><br>$13,500,000 | 1,023.87<br><br>$13,185 | 44,599,777<br><br>$0.30 |

## Land Comparable 1



### Transaction

| | | | |
|---|---|---|---|
| ID | 52791 | Date | 8/16/2023 |
| Address | Lot 1C Highway 23 | Price | $300,000 |
| City | Belle Chasse | Price Per Land SF | $0.21 |
| State | LA | Price Per Acre | $8,966 |
| Zip | 70037 | Transaction Type | Closed Sale |
| Grantor | Sharon A. Branan | Property Rights | Fee Simple |
| Grantee | Daniel J. Dorner | Book/Page or Reference | Book 1468 Page 21 |
| Days On Market | 326 | | |
| Legal Description | Lot 1C, Live Oak Plantation, Plaquemines Parish, State of Louisiana | | |
| Confirmation | Listing Broker: Jessica Rogers, 504-301-9757 | | |

### Site

| | | | |
|---|---|---|---|
| Acres | 33.46 | Zoning | A-2 |
| Land SF | 1,457,518 | Flood Zone | AE |
| Shape | Roughly rectangular | | |

### Comments

This 33.46-acre tract of land sold in August of 2023 for $300,000 which equates to $0.21 per square foot, or $8,966 per acre. The property was originally listed for $350,000 and sold after spending just under a year on the market. We reached out to the listing agent for further comment and confirmation, but after several attempts we never received a call back. This sale was confirmed via the Plaquemines Parish Clerk of Court. This was an arms-length transaction.

*Wetlands Map:*



## Land Comparable 2



### Transaction

| | | | |
|---|---|---|---|
| ID | 46373 | Date | 3/9/2023 |
| Address | 709 Jean Lafitte Hwy. | Price | $135,000 |
| City | Lafitte | Price Per Land SF | $0.12 |
| State | -- | Price Per Acre | $5,019 |
| Zip | 70067 | Transaction Type | Closed Sale |
| Grantor | CMP, LLC | Property Rights | Fee Simple |
| Grantee | Rosethorne Land Holdings | Book/Page or Reference | 3482/718 |
| Days On Market | Off market transaction | Proposed Use | -- |
| Legal Description | A certain 26.9-acre parcel of land situated in Sections 15 & 37, Township 15 south, Range 23 & 24 East, Jefferson Parish, State of Louisiana | | |
| Confirmation | Previous TMC Appraisal, Purchase Agreement | | |

### Site

| | | | |
|---|---|---|---|
| Acres | 26.90 | Zoning | C-1 |
| Land SF | 1,171,764 | Flood Zone | AE |
| Shape | Rectangular | | |

### Comments

This is an off-market transaction in which the buyer approached the owner with an offer. The buyer is a ship building and repair company that is next door to subject. The buyer wanted to acquire the land and clear some of the trees to expand their operations. The seller is reported to be a large land trust. The subject property went under contract on October 28, 2022 for a total consideration of $135,000 or $4,500 per acre.

THE MCENERY COMPANY
REAL ESTATE APPRAISAL, BROKERAGE AND CONSULTING

Land/Site Valuation - After

*Wetlands Map:*





## Land Comparable 3



### Transaction

| | | | |
|---|---|---|---|
| ID | 53473 | Date | 12/29/2022 |
| Address | 21188 Highway 23 | Price | $4,100,000 |
| City | Port Sulphur | Price Per Land SF | $0.38 |
| State | LA | Price Per Acre | $16,763 |
| Zip | 70083 | Transaction Type | Closed Sale |
| Grantor | William H. Nungesser & | Property Rights | Fee Simple |
| Grantee | BOLSU PCF, LLC | Book/Page or Reference | Book 1460 Page 648 and |
| Days On Market | 35 | Proposed Use | Riverfront industrial |
| Legal Description | Lots 18 - 26, Pointe Celeste Farms Subdivision & Tract A, Pointe Celeste Plantation, Plaquemines Parish, State of Louisiana | | |
| Confirmation | Listing Agent Bryce French (504) 427-2090 & Third Party  Market Participant  Bush Benton | | |

### Site

| | | | |
|---|---|---|---|
| Acres | 244.58 | Zoning | FP |
| Land SF | 10,653,905 | Flood Zone | VE |
| Shape | Irregular | | |

### Comments

This 292.58-acre site sold for $6,500,000. It was most recently listed for $6,750,000 in October 2022 and sold after 35 days on the market. The 48-acre portion of the property between Highway 23 and the Mississippi River features a 7,124 square foot 5Br/4.5Ba single-family residence in good overall condition. This residence and the immediately surrounding 10 acres were on and off the market since 2020 and were marketed as a single-family residence.  That said, the entire 292.58-acre property was more recently marketed as a riverfront industrial site with no  contributory value being given to this residence despite its overall good condition and large size. This is due to the fact that this property is located just down river from the Plaquemines Parish Venture Global LNG terminal, which is a large-scale and on-going deepwater terminal.

This property features two primary components. First is the above noted 48-acre portion situated between Highway 23 and the Mississippi River. This portion includes the batture along the river, which features 1,621 linear feet of water frontage. Additionally, there are 244.58 acres of pasture land located south of Highway 23. According to a source with knowledge of this transaction, the pasture land was assigned a contributory value of $4,100,000, while the 48-acre portion + the batture was assigned a value of $2,400,000 (with the batture alone contributing 1,300,000).

The purchaser was a concrete contractor that was associated with the adjacent Plaquemines Port terminal development. They intend to eventually develop the site into a river-oriented concrete terminal to assist in the development of the adjacent port property. The listing agent confirmed that the while the residence on site was given no contributory value, the purchasers have utilized this structure as an office in an interim capacity.

**THE MCENERY COMPANY**
REAL ESTATE APPRAISAL, BROKERAGE AND CONSULTING

Land/Site Valuation - After

*Wetlands Map:*



## Land Comparable 4



### Transaction

| | | | |
|---|---|---|---|
| ID | 34965 | Date | 5/21/2020 |
| Address | Main Street | Price | $580,000 |
| City | Belle Chasse | Price Per Land SF | $0.30 |
| State | LA | Price Per Acre | $12,918 |
| Zip | 70037 | Transaction Type | Closed Sale |
| Grantor | Diane S. Oliver | Property Rights | Fee Simple |
| Grantee | J Sercovich, LLC | Book/Page or Reference | Book: 1424, Page 629 |
| Days On Market | Not Applicable | Proposed Use | Residential Subdivision |
| Legal Description | Lots 8, 9, & 19, Section 9, Township 14 South, Range 25 East, Parish of Plaquemines, State of Louisiana | | |
| Confirmation | McEneryco Appraisal, Purchase Agreement | | |

### Site

| | | | |
|---|---|---|---|
| Acres | 44.90 | Zoning | Agricultural |
| Land SF | 1,955,844 | Flood Zone | B |
| Shape | Trapezoid | | |

### Comments

The buyer plans to subdivide the subject property into 1-2 acre lots that will be resold for single-family residential development. The subject property was never listed for sale, and the subject property buyer confirmed that this is an off-market transaction. The buyer had mentioned that the seller was going to list the property on the market for $615,000, but ultimately agreed with the buyer's offer of $580,000.

*Wetlands Map:*



## Land Comparable 5



### Transaction

| | | | |
|---|---|---|---|
| ID | 28074 | Date | 12/11/2017 |
| Address | 1-310 and River Road | Price | $1,900,000 |
| City | Destrehan | Price Per Land SF | $0.40 |
| State | LA | Price Per Acre | $17,573 |
| Zip | 70047 | Transaction Type | Closed Sale |
| Grantor | P&L Investments IX, LLC | Property Rights | Fee Simple |
| Grantee | 310 Development, LLC | Book/Page or Reference | Deed #428968 |

| | |
|---|---|
| Legal Description | Portions of Tract UDP-1, Lot C-2, and Tract UDP-3 of Plantation Business Campus of Destrehan Plantation situated in Section 4, Township 13 South, Range 8 East, |
| Confirmation | Listing agent Blake Murray (504) 377-0784; September 2017 McEnery Company Appraisal |

### Site

| | | | |
|---|---|---|---|
| Acres | 108.12 | Zoning | R-1B. Single-Family |
| Land SF | 4,709,707 | Flood Zone | X and AE |

### Comments

This property was listed without a listing price for approximately one year before going under contract. The listing agent invited potential buyers to make an offer on the property. The purchaser approached the seller with an offer of $2,000,000 that was accepted. The site sold for a recorded price of $1,900,000. The purchasers plan to develop a residential subdivision and large industrial park on the acreage.

The site is a 108.12 acre irregularly shaped tract. The site is bisected by the interstate and has somewhat irregular accessibility.

*Wetland Map:*



## Land Comparable 6



### Transaction

| | | | |
|---|---|---|---|
| ID | 54455 | Date | 8/23/2016 |
| Address | Avondale Garden Road | Price | $13,500,000 |
| City | Avondale | Price Per Land SF | $0.30 |
| State | LA | Price Per Acre | $13,185 |
| Zip | 70094 | Transaction Type | Closed Sale |
| Grantor | Bayou Verret Lands, LLC & | Property Rights | Fee Simple |
| Grantee | West Jefferson Levee | Book/Page or Reference | 11638779 & |

| | |
|---|---|
| Legal Description | A 775.10 acre tract of land located in Sections 3, 4, and 6, Township 14 South, Range 22 East, Jefferson Parish, State of Louisiana, as well as a 248.77 acre tract of land |
| Confirmation | Public Record |

### Site

| | | | |
|---|---|---|---|
| Acres | 1,023.87 | Zoning | U1S, Unrestricted |
| Land SF | 44,599,777 | Flood Zone | AE/X |

### Comments

This is the sale of a 1,024 acre tract of land, which transferred ownership in August of 2016 to the West Jefferson Levee District for $13,500,00. The property was historically owned by the Marcello family, who sold the acreage to West Jefferson Levee District as part of a broader initiative aimed at environmental restoration efforts as it relates to the federally funded enhancements to the West Bank Flood protection system. The acquisition of the assembled tract of acreage will be used to grow replacement trees, according to the Southeast Louisiana Flood Protection Authority. The tract of land was acquired under two separate transactions by West Jefferson Levee District from Bayou Verret Lands, LLC and Churchhill Farms, Incorporated. The property appears to be largely situated in Flood Zone AE with portions in X, as well as fully encumbered by wetlands. The property features direct frontage and access from Avondale Garden Road, which leads to Highway 90 and there are various low lying marsh areas, and canals. The rear of the property frontage along the Lake Catahoula Levee Canals and the Waggaman Canal.

*Wetlands Map:*



## Land Comparables Map



## Land Comparables Analysis Grid

| Analysis Grid | Subject | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|---|
| Date | | 8/16/2023 | 3/9/2023 | 12/29/2022 | 5/21/2020 | 12/11/2017 | 8/23/2016 |
| Address | Rosethorne Road | Lot 1C Highway 23 | 709 Jean Lafitte Hwy. | 21188 Highway 23 | Main Street | 1-310 and River Road | Avondale Garden |
| City | Lafaitte | Belle Chasse | Lafitte | Port Sulphur | Belle Chasse | Destrehan | Avondale |
| Sales Price | | $300,000 | $135,000 | $4,100,000 | $580,000 | $1,900,000 | $13,500,000 |
| Acres | 181.29 | 33.46 | 26.90 | 244.58 | 44.90 | 108.12 | 1,024 |
| Land SF | 7,896,992 | 1,457,518 | 1,171,764 | 10,653,905 | 1,955,844 | 4,709,707 | 44,599,777 |
| Flood Zone | AE | AE | AE | VE | B | X and AE | AE/X |
| Zoning | R-C-1 | A-2 | C-1 | FP | Agricultural | R-1B. Single-Family | U1S, Unrestricted |
| Acre Unit Price | | $8,965.93 | $5,018.59 | $16,763.43 | $12,917.59 | $17,573.07 | $13,185.27 |
| COS/Market Adj. | | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | -25.00% |
| **Adjusted Acre Unit Price** | | **$8,965.93** | **$5,018.59** | **$16,763.43** | **$12,917.59** | **$17,573.07** | **$9,888.95** |
| **Physical Adjustments** | | | | | | | |
| Size | | -10.00% | 0.00% | 0.00% | -10.00% | -5.00% | 10.00% |
| Location | | -5.00% | 0.00% | -15.00% | -5.00% | -25.00% | 0.00% |
| Flood Zone | | 0.00% | 0.00% | 0.00% | -2.50% | -2.50% | -2.50% |
| Zoning | | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Utility | | 0.00% | 10.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| | | | | | | | |
| **Gross Adjustment** | | **15.00%** | **10.00%** | **15.00%** | **17.50%** | **32.50%** | **12.50%** |
| **Composite Adjustment** | | **-15.00%** | **10.00%** | **-15.00%** | **-17.50%** | **-32.50%** | **7.50%** |
| **Adjusted Acre Unit Price** | | **$7,621.04** | **$5,520.45** | **$14,248.92** | **$10,657.02** | **$11,861.82** | **$10,630.62** |

## COMPARABLE SALE ADJUSTMENTS

The sales data has been analyzed and compared to the subject property. Adjustments were made in the following areas:

- Property Rights Sold
- Financing
- Conditions of Sale
- Market Trends
- Location
- Physical Characteristics

### Conditions of Sale

All of the comparable sales were confirmed to be arm's length transactions; however, an adjustment has been applied to Sale #6.

In the case of Sale #6, this was a very similar acreage tract of land to the subject property by the West Jefferson Levee District for a restoration project necessary to offset damage tied to a previous federally funded protection project. I have confirmed with a confidential participant involved in the transaction that this was an arm's length transaction with the sale price reportedly based on an appraised market value. Regardless, I recognize that pricing of acreage land by public entities may fall towards the higher end of the range due to the motivations of the purchasing party as part of a larger overall project; however, this was not an expropriation/appropriation but an arm's length transaction that was reportedly based on an appraised value. Given the likely strong motivations to acquire this particular land and the possibility that a premium was achieved, I have applied a downwards adjustment of 25%.

Given the potential irregular motivations of the buying parties of this tract of land, I have given this indicator minimal weight in the final value conclusion.

### Market Trends

No sales required adjustment based on market conditions as they all conveyed at times when the market was similar to the present day.

### Size

Adjustments have been applied based on the principle of *economies of scale.*

### Location

Modest adjustments were applied to Sales #1 and 4 for their superior locations and accessibility from Highway 23 in Belle Chasse, Louisiana. Sale #3 required a stronger downwards adjustment as this indicator is located in close proximity to the Venture Global LNG plant, which had a positive impact on land pricing in this market and is superior to the subject tract of land.

Finally, Sale #5 required the strongest downwards adjustment for its superior location in Destrehan, Louisiana, which is a superior market in terms of commercial/industrial development and accessibility.

### Flood Zone
Modest adjustments have been applied for flood zone considerations.

### Zoning
No adjustments were necessary for this consideration.

### Utility
This acreage tract of land featured an irregular shape, which limited its potential for use by a potential purchaser.  This is illustrated by the fact that the purchaser was an adjoining land owner that acquired the property for assemblage purposes within an existing site.  This speaks to the diminished marketability of this tract of land due to its irregular shape relative to its size.  As a result, an upwards adjustment has been applied to this indicator of value.

## LAND/SITE VALUATION RECONCILIATION AND CONCLUSION

| Land Value Ranges & Reconciled Value | | | | |
|---|---|---|---|---|
| Number of Comparables: | 6 | Unadjusted | Adjusted | % Δ |
| Low: | | $5,018.59 | $5,520.45 | 10% |
| High: | | $17,573.07 | $14,248.92 | -19% |
| Average: | | $12,403.98 | $10,089.98 | -19% |
| Median: | | $13,051.43 | $10,643.82 | -18% |
| St. Dev. | | $4,753.16 | $3,099.24 | -35% |
| Reconciled Value/Unit Value: | | | $8,000.00 | |
| Subject Size: | | | 181.29 | |
| Indicated Value: | | | $1,450,320 | |
| Reconciled Final Value: | | | $1,450,000 | |
| One Million Four Hundred Fifty Thousand Dollars | | | | |

The comparable data set is comprised of similar acreage tracts of land from the greater market area, which are comparable to the subjects "after" wooded acreage component. Following the application of adjustments, the range has tightened, and the standard deviation has decreased from $4,753 per acre to $3,099 per acre.

Sale #3 represents the higher end of the range at $14,249 per acre. This sale represents the allocated contributory value of the pastureland associated with this transaction, which sold to a user for industrial development to service the Venture Global LNG plant in Plaquemines Parish. In this regard, this property features a superior location, and no weight has been given to this indicator.

Following the extraction of this comparable, the data set tightens even more with a low of $5,520 per acre to a high of $11,862 per acre with a mean of $9,258 per acre.   With primary weight assigned to Sales 1, 2, 4, while also giving minimal weight to Sales #5 and 6, the data supports a value of $8,000 per acre.

INDICATION OF AFTER MARKET VALUE OF WOODED ACREAGE:          $1,450,000

## FINAL RECONCILIATION AND VALUE CONCLUSION

The reconciliation process involves a thorough analysis of each approach to value, considering factors such as the quality of data used, the relevance of each approach to market conditions, and the ability to defend each approach. The final step is to evaluate each approach individually and in relation to the others, in order to arrive at a comprehensive and well-supported conclusion.

### Value Indications

| | |
|---|---|
| Before Land Value: | $5,500,000 |
| | |
| After Land Value | $1,450,000– Wooded Acreage |
| After Land Value: | $   295,000 – Marsh Acreage |
| Total After Land Value: | $1,745,000 |

A determination of the total just compensation is shown below:

| | |
|---|---|
| Market Value Before: | $5,500,000 |
| Value of Acreage Taken: | $1,520,000 |
| Indicated Remaining Value: | $3,980,000 |
| Estimated Remaining Value: | $1,745,000 |
| Indicated Severance Damages: | $2,235,000 |
| Add: Value of Total Part Required | $1,520,000 |
| Total Just Compensation: | $3,755,000 |

# ASSUMPTIONS AND LIMITING CONDITIONS

This report is subject to the following conditions and such specifications and limiting conditions that also might be outlined in this report. These conditions affect the analyses; opinions, and value conclusions contained in this report.

1. It is assumed that the property is owned in Fee Simple Title. Fee Simple Title implies that the property is owned free and clear, unencumbered and unless otherwise specified. There are to be no leases, liens, easements, encroachments, or other encumbrances on the subject property that have not been specified in this report.

2. No responsibility is assumed for matters of a legal nature affecting the appraised property or title. This appraisal assumes that the subject property is presented with a good and marketable title unless otherwise specified. The appraiser has not rendered an opinion as to the title and does not have the expertise to do so. Data on ownership and legal descriptions were obtained from sources generally considered reliable.

3. The property is appraised assuming it is to be under responsible ownership and competent management. Unless otherwise specified, the property is assumed to be available for its highest and best use.

4. Any survey contained in this report is assumed to be true and correct, and it is also assumed that there are no hidden encroachments upon the property appraised except as noted. Any sketch prepared by the appraiser and included in this report may show approximate dimensions and is included to assist the reader in visualizing the property only. The appraiser has not surveyed the property and does not warrant any surveys or other presented plans or sketches.

5. The appraiser assumes that there are no hidden or unapparent conditions of the property, subsoil, or other structures, which would render it more or less valuable. The appraiser assumes no responsibility for such conditions or for engineering which might be required to discover these factors. This includes the presence of unusual/extraordinary mineral deposits or subsurface rights not typically transferred with normal comparable data (i.e., valuable mineral rights associated with oil/gas production, etc., are not part of this assignment).

6. Any distributions of the valuation of the report between land and improvements apply only under the existing program of utilization. The separate valuation for land and building must not be used in conjunction with any other appraisal and are invalid if used in conjunction with any other appraisal.

7. No responsibility is assumed for changes in matters that are legal, political, social, or economic which could affect real estate values that take place after the effective date of this evaluation.

8. Information, estimates, and opinions furnished to the appraiser, and contained in the report, were obtained from sources considered reliable and believed to be true and correct. However, no responsibility for the accuracy of such information furnished to the appraiser during the appraisal process is warranted by the appraiser. The appraiser assumes no responsibility for the accuracy of such information as measurements, survey, title information, and other information furnished by comparable sales data found in courthouse records and information obtained from Realtors and other parties during any type of comparable survey.

9. This report is predicated upon the assumption that the property has reached a stabilized occupancy as of the date of valuation unless otherwise noted.

10. On all appraisals, subject to satisfactory completion, repairs, or alterations, the appraisal report and value conclusion are contingent upon completion of the improvements in a workmanlike manner and in accord with the referred to plans and specifications.

11. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question unless required to do so by a court.

12. Disclosure of the contents of this appraisal report is governed by the By-Laws and Regulations of the Appraisal Institute.

13. Neither all nor any part of the contents of this report, especially any conclusions as to value, the identity of the appraiser or the firm with which he (they) is connected or any reference to the Appraisal Institute shall be disseminated to the public through advertising media, public relations media, news media, sales media, or any other public means of communication without the prior consent of the undersigned.

14. Unless otherwise stated in this report, the existence of hazardous material, which may or may not be present on the property, was not observed by the appraiser. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation, or other potentially hazardous materials or gases may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for such conditions, or for any expertise or engineering knowledge required to discover them. The client is urged to retain an expert in this field if desired. This report further assumes that there are no under/above ground storage tanks of any kind on the property (unless otherwise noted). Possible leakage problems have _not_ been addressed. The site history of the subject property has not been explored, nor has the historical land-use patterns of surrounding properties been investigated. Again, the appraiser has _not_ addressed any environmental issues that might affect value. This report assumes that no such issues of any kind are present or affecting the Fee Simple Value in any manner (unless otherwise noted). The appraiser urges the client to retain an outside environmental expert to determine the subject property's status from this perspective.

15. We have personally inspected the property and found no obvious evidence of structural deficiencies except as stated in the report. However, no responsibility for hidden or unnoticed defects is assumed. No responsibility for conformity to specific governmental requirements (such as fire, building, and safety, earthquake, or occupancy codes) can be assumed without provisions of specific professional or governmental inspections.

16. We have personally inspected the subject property and found no evidence of termite damage or infestation (unless otherwise noted). No termite inspection report was made available to the appraiser; the appraiser is not responsible for damages resulting from any type of insect infestation whatsoever. This is beyond the scope of the appraisal assignment.

ACCEPTANCE OF AND USE OF THIS APPRAISAL REPORT CONSTITUTES ACCEPTANCE OF ABOVE

# ADDENDA

Qualifications of the Appraisers
Publications Authored within Previous 10 Years
Previous Four Years of Litigation Support Experience
Legal Description
Survey
Flood Map
Wetlands Map
Regional Map
Neighborhood Map
Subject Photos

CURRICULUM VITAE
BALDWIN R. JUSTICE, MAI

*Primary Real Estate Business Experience:*

- The McEnery Company, Inc., New Orleans, Louisiana – <u>Director of Valuation Services</u> (April 2010 - Present)

*Practical Real Estate Experience - Institutional Lending/Private Client Appraisal:*

- Medical and Office Buildings
- Mixed-Use Buildings
- Industrial Warehouses, Office Warehouses, Warehouse Condominiums
- Land – Commercial Lots, Bulk Acreage and Subdivision Analyses
- Multi-family Buildings
- Special Use Properties (Marinas, RV Parks, Shipyards, Bowling Centers)
- Net Leased Properties
- Bed and Breakfast Properties/Hotel Properties
- Convenience Stores-Gasoline Stations
- Self-Storage Facilities
- Funeral Homes
- Subdivisions
- Acreage tracts
- Timberland
- Industrial Shipyards
- High-Rise Office Buildings

*Memberships, Licenses, Etcetera:*
- Member – The Appraisal Institute ®, awarded the designation of MAI
- State of Louisiana Certified General Real Estate Appraiser #G3000
- State of Mississippi Certified General Real Estate Appraiser #GA-1208
- State of Alabama Certified General Real Estate Appraiser #G01336
- State of Florida Certified General Real Estate Appraiser #RZ4260
- State of Texas Certified General Real Estate Appraiser #TX1381113G

*Primary Education:*

- *<u>University of Alabama – Tuscaloosa, Al</u>*
  - Culverhouse College of Commerce and Business Administration – (August 2005 – December 2009)
    - Department of Economics, Finance, and Legal Studies
  - Bachelor of Science (December 2009)
  - Major: Finance / Concentration Areas: Real Estate

- o Real Estate Related Courses: FI 331/Principles of Real Estate; FI 334/Introduction to Real Estate Property Management; FI 432/Real Estate Appraisal; FI 436/ Real Estate Finance

*Real Estate Related Education:*

- o <u>Appraisal Institute – Chicago, Illinois – 2010 – Present</u>

  - o Course 110 - Appraisal Principles    (Nashville, TN – 2010)
  - o Course 120 - Appraisal Procedures    (Nashville, TN – 2010)
  - o 15 Hour National USPAP    (Nashville, TN – 2010)

  - o Course 300 - Real Estate Finance, Statistics, and Valuation Modeling    (Online – 2012)

  - o Course 401G - General Appraiser Sales Comparison Approach    (Dallas, TX – 2012)

  - o Course 400G - General Appraiser Market Analysis and H & B Use    (Ft. Lauderdale, FL – 2012)

  - o Course 402G - General Appraiser Site Valuation & Cost Approach    (Online – 2014)

  - o Course 403G - General Appraiser Income Approach/Part 1    (Online -  2014)

  - o General Appraiser Report Writing and Case Studies    (Online - 2014)

  - o General Appraiser Income Approach/ Part 2    (Online - 2015)

  - o Advanced Market Area Analysis and Highest and Best Use    (Atlanta, GA – September 2015)

  - o Advanced Income Capitalization    (Atlanta, GA – April 2018)

  - o Quantitative Analysis    (Houston, TX – August 2019)

  - o Advanced Concepts & Case Studies   (New Orleans, LA – February 2022)

- o  Appraisal of Self-storage facilities – McKissock Learning (2017)

- o  Basic Hotel Appraising - McKissock (2017)

- o  Appraisal of Land Subject to Ground Leases - McKissock (2017)

- o  Appraisal of Fast-Food Facilities – McKissock (2021)

- o  Appraisal of REO & Foreclosure Properties - McKissock (2021)

- o  Complex Properties - McKissock (2021)

*Qualified as Expert Witness in Real Estate Appraising:*

- United States District Court Eastern District of Louisiana
- United States Bankruptcy Court for the Southern District of Mississippi
- 24th Judicial District Court for the Parish of Jefferson, Louisiana
- 19th Louisiana Judicial District Court, Parish of East Baton Rouge
- 22nd Judicial District Court Parish of St. Tammany

Email: Baldwin@mceneryco.com

# Louisiana Real Estate Appraisers Board

Having complied with the requirements of Chapter 51 of Title 37 of the Louisiana Revised Statutes of 1950 and the requirements of the Louisiana Real Estate Appraisers Board,

## Certified General Appraiser

license is hereby granted to

## Baldwin R. Justice

License Number - APR.03000-CGA

First Issuance Date - 03/17/2016

Expiration Date - 12/31/2025

F. Troy Williams
Chairperson

Terry L. Myer
Secretary



Publications Authored within Previous 10 Years

(No Publications)

## Previous Four Years of Litigation Support Experience

1. January 2025 - Ongoing

Retained by:  Kirkendall Dwyer, LLP & Chehardy Sherman Williams

In Re:  Anne Cannon, et. al. v. Metairie Towers Condominium Association, Inc., et. al.

Appraisal Issue: Diminution in Value

Baldwin R. Justice provided deposition testimony in April of 2025.

2. May of 2022 – Ongoing

Retained by:  Jones Walker, LLP

In Re:  Renton Properties, LLC vs. 213 Upland, LLC, Et Al., 24th Judicial District Court for the Parish of Jefferson, Louisiana, Case NO: 775-357, Division "K"

Appraisal Issue: Contestation of Damages due to Real Estate Transaction

Baldwin R. Justice provided trial testimony as an expert witness in July of 2022.  Baldwin Justice completed this litigation assignment.

3. May of 2021-April 2024

Retained by:  Liskow & Lewis, as represented by Mr. Matthew D. Simone

In Re:  State of Louisiana, Department of Transportation & Development vs. P & F LUMBER COMPANY (2000), LLC, PF MONROE PROPERTIES, LLC, AND MARKLE INTERESTS, LLC,

Case No. 2021-13398, in the 22nd Judicial District Court Parish of St. Tammany, State of Louisiana, Division E

Appraisal Issue: Just Compensation dispute for expropriation

Baldwin R. Justice provided deposition testimony & Trial Testimony in December of 2023 & April of 2024. Baldwin Justice completed this litigation assignment.

4. November 2021

Retained by:  Cosmich Simmons & Brown, LLC, as represented by Mr. Ren Wilkes

In Re:   Lake Charles Harbor & Terminal District vs. Reynolds Metal Company, Civil Action No. 2:17 – CV – 0114, United States District Court West District of Louisiana, Lake Charles Division

Appraisal Issue: Landfill Contamination

Baldwin R. Justice provided expert witness testimony in a deposition in 2022.  Baldwin Justice completed this litigation assignment.


5. July 2021

Retained:  Mr. Derek A. Henderson, Attorney at Law on behalf of
        Kessler Federal Credit Union

In Re:  Briars Investments, Inc., United States Bankruptcy Court for the Southern District of Mississippi, Case No. 21-00740 KMS

Appraisal Issue: Bankruptcy Issue

Baldwin R. Justice provided trial testimony as an expert witness in July of 2021.  Baldwin Justice completed this litigation assignment.

6. December of 2021 - March of 2024

Retained:  Scandurro & Layrisson, LLC

In Re:  Plaquemines Dirt & Clay Company, LLC vs. Plaquemines Parish Government

Appraisal Issue: Just Compensation for Expropriation Purposes

Baldwin R. Justice provided trial testimony as an expert witness in March of 2024.  Baldwin Justice completed this litigation assignment.

7.  March 2020 – April 2024

Retained by:  Connick and Connick, LLC as represented by Mr. Mark Futrell

     Elias Jorge "George" Ictech-Bendeck, Plaintiff,  v. Waste  Connections Bayou,

Inc., et al., Defendants, USDC, Eastern District, NO. 18-7889, Consolidated with 18-8071,18-8218, 18-9312, Section: "E"(5), and

Frederick    Addison, et al., Plaintiffs, v. Louisiana Regional Landfill Company, et al., Defendants, USDC, Eastern District, NO. 19-11133, Section: "E"(5)

Engaged by:  Connick and Connick, LLC to perform consultation and valuation services with respect to potential damages issues as a result of landfill operations.

Baldwin Justice was deposed in April of 2024 and completed this litigation assignment.

7.  September 2024 – February 2024

Retained by:  Kelly Hart, as represented by Ms. Erin Arnold

SBN v. Baldone, Et. Al., 32nd Judicial District Court, Section D, Case Number 196553,

Engaged by:  Kelly Hart to perform valuation services for real estate portfolio with respect to potential bankruptcy proceedings.

Baldwin Justice was deposed in February of 2025 and completed this litigation assignment.

8.  June 2023

Retained by:  Nick Berg, Berg Law, LLC

GKM Properties and Gregory Monroe vs. Octave Francies, III, The Francis Financial Group, and The Brokerage, Inc., Civil District Court for the Parish of Orleans, Docket: 2018-9395

Engaged by:  Nick Berg to provide a retrospective opinion of market value for litigation support services.

Baldwin Justice was deposed in June of 2023 and completed this litigation assignment.

9. July of 2020 – April 2022

Retained by:  Roedel Parsons Blache Fontana Piontek & Pisano, as represented by
Mr. Luke Piontek

In Re:  Venture Global Gator Express, LLC vs. Land, Et Al., United States District Court Eastern District of Louisiana, Civil Action NO: 20-2802, Section: J (3)

Appraisal Issue: Compensation dispute for Condemnation of property

Baldwin R. Justice provided trial testimony as an expert witness in April of 2022.  Baldwin Justice completed this litigation assignment.

9.  2023-Ongoing

Retained by:  Pendley, Baudin, and Coffin, as represented by Mr. Patrick Pendley

STATE OF LOUISIANA, DEPARTMENT. OF TRANSPORTATION AND DEVELOPMENT VS. E. DEMPSEY PENDARVIS, ET AL

Appraisal Issue: Compensation dispute for Condemnation of property

Baldwin R. Justice provided testimony in a deposition in September 2024.  Baldwin Justice completed this litigation assignment.

## Statement of Compensation

I note that my compensation structure for this appraisal assignment is based on the following hourly rate.

Baldwin R. Justice, MAI:                 $400 per hour

Legal Description – Acreage Taken

A certain **PERPETUAL FLOOD PROTECTION SERVITUDE** located in a portion of Paul Jones Subdivision, Jefferson Parish, Louisiana, in an area bounded by Jean Lafitte Boulevard, Berthoud Plantation, and Verdin Street, designated as **Parcel R113** of the **Lafitte Tidal Protection Rosethorne Basin – Phase 2** and described as follows:

Commence from intersection of easterly R/W line of Lafitte-Larose Highway and the southernly R/W of Jean Lafitte Boulevard, and go south a distance of 2891.92' to the POINT OF BEGINNING. Thence South 80°50'39" East a distance of 1023.66'; thence North 08°54'44" East a distance of 10.00'; thence with a curve turning to the left with an arc length of 657.76', a radius of 553.30', and a chord length of 619.71', bearing North 64°28'42" East; thence North 29°44'42" East a distance of 750.67'; thence South 60°15'17" East a distance of 12.64'; thence North 32°30'32" East a distance of 6.85'; thence with a curve turning to the right with an arc length of 31.47', a radius of 32.65', and a chord length of 30.27', bearing North 68°28'31" East; thence with a curve turning to the left with an arc length of 20.90', a radius of 36.37', and a chord length of 20.61', bearing North 25°41'18" West; thence North 42°09'03" West a distance of 115.47'; thence with a curve turning to the right with an arc length of 40.88', a radius of 27.01', and a chord length of 37.09', bearing North 62°29'40" West; thence North 12°25'19" West a distance of 99.25'; thence North 05°05'48" East a distance of 115.28'; thence North 36°56'47" East a distance of 275.92'; thence North 66°34'37" East a distance of 298.29'; thence North 56°41'12" East a distance of 63.92'; thence North 35°30'30" East a distance of 94.16'; thence North 57°59'23" East a distance of 89.53'; thence South 74°55'54" East a distance of 55.27'; thence South 46°22'04" East a distance of 48.43'; thence North 84°22'56" East a distance of 19.06'; thence South 40°17'34" East a distance of 157.08'; thence South 32°13'49" East a distance of 108.70'; thence South 34°49'30" East a distance of 146.61'; thence South 41°10'25" East a distance of 786.34'; thence South 79°57'22" East a distance of 582.32'; thence South 75°08'43" East a distance of 757.56'; thence North 14°51'17" East a distance of 15.00'; thence with a curve turning to the left with an arc length of 449.68', a radius of 348.65', and a chord length of 419.16', bearing North 67°54'37" East; thence South 59°03'56" East a distance of 10.00'; thence North 30°56'04" East a distance of 323.20'; thence North 27°47'29" East a distance of 1299.27'; thence North 27°59'30" East a distance of 1330.67'; thence North 59°29'29" East a distance of 308.07'; thence North 01°07'24" East a distance of 1359.41'; thence with a curve turning to the left with an arc length of 61.12', a radius of 25.45', and a chord length of 47.46', bearing North 67°39'57" West; thence South 46°27'14" East a distance of 5.00'; thence South 43°32'45" West a distance of 432.17'; thence with a curve turning to the right with an arc length of 102.93', a radius of 65.49', and a chord length of 92.66', bearing South 88°34'10" West; thence North 46°24'25" West a distance of 23.41'; thence North 43°35'35" East a distance of 60.00'; thence South 46°24'25" East a distance of 23.41'; thence with a curve turning to the left with an arc length of 8.63', a radius of 5.49', and a chord length of 7.77', bearing North 88°34'12" East; thence North 43°32'45" East a distance of 432.17'; thence South 46°27'15" East a distance of 5.00'; thence with a curve



**DUFRENE SURVEYING & ENGINEERING INC.**

P.O. BOX 753  —  1624 MANHATTAN BLVD.  — HARVEY, LA.  70058
TELEPHONE (504)368-6390      FAX (504)368-6394
dufrenesurveying.com

turning to the right with an arc length of 181.18', a radius of 75.45', and a chord length of 140.68', bearing South 67°39'57" East; thence South 01°07'24" West a distance of 1381.46'; thence South 59°29'29" West a distance of 253.41'; thence South 54°02'14" West a distance of 52.62'; thence South 27°46'40" West a distance of 1332.69'; thence South 27°47'29" West a distance of 1301.08'; thence South 30°56'04" West a distance of 324.80'; thence with a curve turning to the right with an arc length of 551.90', a radius of 423.77', and a chord length of 513.71', bearing South 68°14'52" West; thence North 74°45'48" West a distance of 750.00'; thence North 79°57'22" West a distance of 553.16'; thence South 45°59'58" West a distance of 36.98'; thence North 43°58'58" West a distance of 221.59'; thence North 41°08'31" West a distance of 319.53'; thence North 44°15'44" West a distance of 79.23'; thence North 41°20'53" West a distance of 143.07'; thence North 34°49'30" West a distance of 265.05'; thence North 14°11'14" West a distance of 82.03'; thence North 40°17'34" West a distance of 187.29'; thence North 74°55'54" West a distance of 48.11'; thence South 57°59'23" West a distance of 67.33'; thence South 35°30'30" West a distance of 107.59'; thence South 56°41'12" West a distance of 61.02'; thence South 66°34'37" West a distance of 206.59'; thence South 23°25'23" East a distance of 5.00'; thence South 66°34'37" West a distance of 83.26'; thence South 36°56'47" West a distance of 251.18'; thence South 05°05'48" West a distance of 95.51'; thence South 12°25'19" East a distance of 118.90'; thence South 42°09'03" East a distance of 179.56'; thence South 29°44'40" West a distance of 422.64'; thence South 30°31'57" West a distance of 370.11'; thence with a curve turning to the right with an arc length of 617.26', a radius of 635.00', and a chord length of 593.25', bearing South 58°22'48" West; thence with a compound curve turning to the right with an arc length of 220.82', a radius of 1728.83', and a chord length of 220.67', bearing South 89°53'13" West; thence North 76°02'59" West a distance of 191.31'; thence North 04°37'34" East a distance of 13.22'; thence North 81°05'16" West a distance of 332.81'; thence South 08°54'44" West a distance of 36.00'; thence North 81°05'16" West a distance of 90.00'; thence North 08°54'44" East a distance of 36.00'; thence North 81°05'16" West a distance of 352.93'; thence North 28°04'00" East a distance of 78.71' to the point of beginning.

All as shown on a plan by Dufrene Surveying & Engineering Inc dated October 3, 2024 and having an area of 17.697 acres.

# LAFITTE TIDAL PROTECTION ROSETHORNE BASIN — PHASE 2 BACK LEVEE JEFFERSON PARISH, LOUISIANA

*Entrie Tract:*

## CROWN POINT TRACT

That portion of ground, together with all the buildings and improvements thereon, and all of the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the Parish of Jefferson, State of Louisiana, In Section 15, Township 15 South, Range 23 East and Section 37, Township 15 South, Range 24 East, Southeast Land District of Louisiana, West of the Mississippi River, comprising portions of Rose Thorne Subdivision and Paul Jones Subdivision, which portion of ground is more particularly described in accordance with a plat of survey, by the Office of Gandolfo, Kuhn & Associates, dated June 2, 1967, as follows:

From point "A" on said survey, which point corresponds with the southwest corner of the Rose Thorne Subdivision and has an X co-ordinate of 2,389,497.03 and a Y co-ordinate of 398,202.18, based on the Louisiana Plane Grid System of Surveys, run in an easterly direction, along the southerly or rear line of the Rosa Thorne Subdivision, bearing North 84 degrees 23 minutes 25 seconds East, a distance of 1359.45 feet to point "B"; thence turn left and run in a northerly direction or towards

**10718634**

Bayou Barataria, along the easterly line of Rose Thorne Park (plan of J.J. Krebs, December 20,1963), bearing North 5 degrees 36 minutes 35 seconds West, a distance of 1745.17 feet, more or less, to point "C" in the left descending bank of Bayou Barataria; thence turn right and run in an easterly direction, along the left descending bank of said bayou, upstream, South 84 degrees 23 minutes 25 seconds East, a distance of 200 feet, more or less, to point "D", thence turn right and run in a southerly direction, along a line parallel with and 200 feet distant, at right angels and in an easterly direction, from line B-C, bearing South 5 degrees 36 minutes 35 seconds East, a distance to 1745.17 feet to point "E" in the southerly or rear line of the Rose Thorne Subdivision; thence turn left and run in an easterly direction, along the southerly or rear line of Rose Thorne Subdivision, bearing North 84 degrees 23 minutes 25 seconds East, a distance of 1243.52 feet to point "G"; thence turn left and run in a northerly direction or towards Bayou Barataria, along the easterly line of Lot 35 of the Rose Thorne Subdivision, bearing North 5 degrees 36 minutes 35 seconds West a distance of 1745.17 feet to point "H", in the left descending bank of Bayou Barataria; thence turn right and run in a southeasterly direction, along the westerly line of Lot 34 of the Rose Thorne Subdivision, bearing South 46 degrees 21 minutes 35 seconds East, a distance of 2303.66 feet to point "I" in the southerly or rear line of said Rose Thorne Subdivision, thence turn left and run in an easterly direction, along the southerly or rear line of said Rose Thorne Subdivision, bearing North 84 degrees 23 minutes 25 seconds East, a distance of 1194 feet to point "J".

Thence from said point "J", continue along the southeasterly or rear line of said Rose Thorne Subdivision, with an exterior angle of 139 degrees 15 minutes, run in a northeasterly direction, bearing North 43 degrees 38 minutes 25 seconds East, a distance of 1982.74 feet to point "K"; thence turn right and run, along the prolongation of the side line common to Lots 21 and 22 of the Rose Thorne Subdivision, bearing South 46 degrees 21 minutes 35 seconds East, a distance of 208.71 feet to point "L"; thence turn left and run North 43 degrees 38 minutes 25 seconds East, a distance of 417.42 feet to point "M"; thence turn left and run in a northwesterly direction or towards Bayou Barataria, along the prolongation of the side line common to Lots 19 and 20 of the Rose Thorne Subdivision, bearing North 46 degrees 21 minutes 35 seconds West, a distance of 208.71 feet to intersect the southeasterly or rear line of the Rose Thorne Subdivision, at point "N", thence turn right and run in a northeasterly direction, along the southeasterly or rear line of the Rose Thorne Subdivision, bearing North 43 degrees 38 minutes 25 seconds East, a distance of 2191.45 feet to point "0", thence turn right and run in a southeasterly direction, along the prolongation of the line between Lots 9 and 10 of the Rose Thorne Subdivision, bearing South 46 degrees 21 minutes 35 seconds East, a distance of 626.13 feet to point "P", thence turn left and run in a northeasterly direction, bearing North 43 degrees 38 minutes 25 seconds East, a distance of 1252.26 feet to point "Q "; thence turn left and run in a northwesterly direction or towards Bayou Barataria, along the line between Lots 3 and 4 of the Rose Thorne Subdivision and the prolongation of said line, a distance of 1346 feet, more or less, to a point in the left descending bank of Bayou Barataria and/or Gulf Intracoastal Waterway, at point "R".

Thence turn right and run in a northeasterly direction, along the left descending bank of said bayou and/or said Gulf Intracoastal a distance of 850 feet, more or less, to point "S" in the Parish line between Jefferson and Plaquemines; thence turn right and run in a southeasterly direction, along said Parish line, bearing South 24 degrees 44 minutes 03 seconds East, a distance of 7480 feet, more or less to a 6 inch by 6 inch concrete monument in said Parish line to point " T "; thence turn right with said Parish line and run in a southerly direction along said Parish line, bearing

South 6 degrees 00 minutes 57 seconds West, a distance of 1824.20 feet to point "U".

Thence, leaving the Parish line, turn right and run in a westerly direction, along the northerly line of the 64 acre (more or less) tract sold by Thorne to Mayronne on August 10, 1938 (C.O.B. 144, folio 480), bearing South 89 degrees 15 minutes 57 seconds West, a distance of 2807 feet to point "V"; thence turn left and run in a southwesterly direction, along the westerly line of the said 64 acre (more or less) tract, bearing South 54 degrees 15 minutes 57 seconds West, 954.20 feet; thence continue along the west line of said 64 acre (more or less) tract, bearing South 48 degrees 45 minutes 57 seconds West, a distance of 296.30 feet to point "W"; thence turn right and run in a northwesterly direction, along the northeasterly line of Lot "118-C " sold by Thorne to Foster Creppel on March 27, 1942 (C.O.B. 181, folio 592), bearing North 50 degrees 51 minutes 03 seconds West, a distance of 1657.93 feet to point "X"; thence turn left and run in a southwesterly direction, along the westerly line of said Lot "118-C ", bearing South 36 degrees 15 minutes 57 seconds West, a distance of 2330 feet to point "Y" in the northerly line of Lot "118-A", being the south 50 acres of Lot 118 sold by Thorne to Foster Creppel on June 10, 1937 (C.O.B135, folio 383); thence turn right and  run in a westerly direction, along the northerly line of said 50 acre tract (north line of Lot "118-A"), bearing South 89 degrees 15 minutes 57 seconds West, a distance of 3240 feet to point "Z"; thence turn right and run in a northwesterly direction, bearing North 32 degrees 38 minutes 00 seconds West, a distance of 5450.55 feet to point "A", and the point of beginning, being contained within the lines A-B, B-C, C-D, D-E, E-F, F-G, G-H, H-I, I-J, J-K, K-L, L-M, M-N, N-O, O-P, P-Q, Q-R, R-S, S-T, T-U, U-V, V-W, W-X, X-Y, Y -Z and Z-A, and enclosing a gross acreage of 1470.74 acres, more or less.

LESS AND EXCEPT:

I.        Two (2) certain tracts or parcels of land together with all of the improvements situated wholly or partially thereon, together with all of the rights, ways, servitudes, privileges and advantages thereunto belonging or in anywise appertaining, situated in Section 15, Township 15 South, Range 23 East, Southeastern Land District, Jefferson Parish, Louisiana, sold to the State of Louisiana and the Department of Highways of the State of Louisiana, dated March 28, 1973, registered at COB 806, folio 726, of the records of Jefferson Parish, Louisiana, identified as Parcel Nos. 8-4 and 8-14 on the property survey map made for and required to accommodate the construction of STATE PROJECT NO. 429-02--08, F.A.P. NO. S-507-1 (002), LaROSE-LAFITTE HIGHWAY (PAILET CANAL-JCT. LA 303), ROUTE LA 3134, JEFFERSON PARISH, LOUISIANA, prepared by deLaureal Engineers, Consulting Engineers of New Orleans, Louisiana and Surveys, Inc. of Metairie, Louisiana, signed by R. P. Bernard, Registered Land Surveyor, for the Louisiana Department of Highways, said map dated May 18, 1972, a copy of which is on file in the office of the Louisiana Department of Highways in the City of Baton Rouge, Louisiana, said parcels of land are more particularly described in accordance with said map as follows:

<u>PARCEL NO. 8-4:</u>

Begin at the point of intersection of Vendor's Easterly property line and the Northerly existing right of way Line of Route La 303 said point of beginning also being Vendor's Southeasterly property corner from said point of beginning proceed South 85° 31'39" West along the Northerly existing right of way line of State Route La 303 a distance of 200.14 feet to the Point of Intersection of Vendor's Westerly property line and corner; thence North 05°36' 35" West along said Westerly property line a distance

of 14.35 feet to a point and corner; thence North 83°07'36" East a distance of 184.24 feet to a point; thence North 83°02'08" East a distance of 15.92 feet to the point of Intersection of Vendor's Easterly property line and corner; thence South 05°36'35" East along said Easterly property line a distance of 22.76 feet to the point of beginning and embracing a net required area of 0.085 of an acre, more or less, exclusive of the existing right of way of Route La 303.

PARCEL NO. 8-14:

Begin at the point of intersection of Vendor's Easterly property line and the Northerly existing right of way line of Route La 303 said point of beginning being Vendor's Southeasterly property corner from said point of beginning proceed South 86°31'13" West along said Northerly existing right of way line of Route La 303 a distance of 220.67 feet to the point of intersection of Vendor's Westerly property line and corner; thence North 05°36'35" West along said Westerly property line a distance of 6.91 feet to a point and corner; thence North 85°22'55" East a distance of 210.67 feet to the point of intersection of Vendor's Easterly property line and corner; thence South 46°21'35" East along said Easterly property line a distance of 15.14 feet to the point of beginning and embracing a net required area of 0.045 of an acre, more or less, exclusive of the existing right of way of Route La 303 and Parcel No. 8-4 hereinabove described,

II.  Three (3) certain tracts or parcels of land, together with all of the improvements thereon, and all of the rights, ways, privileges, servitudes and advantages thereunto belonging or in anywise appertaining, situated in Section 15, Township 15 South, Range 23 East, Southeastern Land District, Parish of Jefferson, State of Louisiana, sold to the State of Louisiana and the Department of Highways of the State of Louisiana, dated March 16, 1973, registered at COB 786, folio 23, of the records of Jefferson Parish, Louisiana, and being portions of a tract of land comprising 1,470.74 acres, identified as PARCEL NOS. 7-1, 8-3 and 8-13 on the right of way map for the LAROSE - LAFITTE HIGHWAY, (PAILET CANAL - JCT. LA. 303), STATE PROJECT NO. 429-02-08, STATE ROUTE LA. 3134, JEFFERSON PARISH, LOUISIANA, prepared by deLaureal Engineers, Inc., Consulting Engineers, dated May 18, 1972, said map being on file in the office of the Department of Highways In the City of Baton Rouge, Louisiana, the boundary lines of which tracts are more particularly described as follows:

PARCEL NO. 7-1:

Begin at the intersection of Vendor's Southerly property line with the centerline of State Project No. 429-02-08 at Highway Survey Station 160+53.38, which said point has coordinates of X=2,390,314.10 and Y=396,926.20, which said point is also the beginning of Construction Project No. 429-02-05; thence North 32° 38' 0" West along Vendor's Southerly property line, a distance of 356.15 feet, to a point on the curve having a radius of 1,001.92 feet; thence, in a Northerly direction along the arc of a curve to the left having a radius of 1,001.92 feet (the chord of which bears North 24°29' 29" East, 112.31 feet) a distance of 112.37 feet, to a point of tangent, which said point has coordinates of X=2,390,168.61 and Y=397,328.33 and is 419.35 feet measured perpendicular in a Northwesterly direction from the centerline of State Project No. 429-02-08 at Highway Survey Station 161+37.20; thence North 21° 16' 42" East, a distance of 250.00 feet to a point of curve, which said point is 571.64 feet measured perpendicular in a Northwesterly direction from the centerline of State Project No. 429-02-08 at Highway Survey Station 163+35.46; thence along the arc of a curve to the right having a radius of 609.74 feet (the chord of which bears North 34° 9' 24" East, 271.81 feet) a distance of 274.11 feet to a point which is 674.21 feet measured along a radial line in

a Northwesterly direction from the centerline of State Project No. 429-02-08 at Highway Survey Station 166+72.20; thence North 74° 33' 26" East, a distance of 581.74 feet to a point of curve, which said point is 349.52 feet measured along a radial line in a Northwesterly direction from the centerline of State Project No. 429-02-08 at Highway Survey Station 173+39.54; thence, along the arc of a curve to the left having a radius of 340.74 feet (the long chord of which bears North $51^0$ 52' 28" East, 262.80 feet) a distance of 269.79 feet to a point of tangent, which said point is 238.57 feet measured along the radial line in a Northwesterly direction from the centerline of State Project No. 429-02-08 at Highway Survey Station 176+21.54; thence North 24° 59' 6" East a distance of 305.30 feet to a point on vendor's Northerly property line; thence North 84° 23' 25" East along the Vendor's Northerly property line a distance of 424.50 feet to a point on a curve having a radius of 2,183.48 feet; thence in a Southerly direction along the arc of a curve to the right having a radius of 2,183.48 feet (the chord of which bears South 6° 37' 48" West, 103.07 feet) a distance of 103.09 feet to a point of tangent, which said point is 215.01 feet measured along the radial line in a Southeasterly direction from the centerline of State Project No. 429-02-08 at Highway Survey Station 179+90.23; thence South $9^0$ 52' 59" West a distance of 322.51 feet to a point of curve, which said point is 249.35 feet measured along a radial line in a Southerly direction from the centerline of State Project No. 429-02-08 at Highway Survey Station 177+04.04; thence in a Southerly direction along the arc of a curve to the right having a radius of 2,183.48 feet (the long chord of which bears South 22° 22' 03" West, 437.26 feet) a distance of 438.00 feet to a point of tangent, which said point is 277.45 feet measured along a radial line in a Southeasterly direction from the centerline of State Project No. 429-02-08 at Highway Survey Station 173+19.90; thence South 28° 06' 51" West a distance of 700.00 feet to a point, which said point is 429.12 feet measured along a radial line in a Southeasterly direction from the centerline of State Project No. 429-02-08 at Highway Survey Station 167+40.67; thence South 24° 50' 06" West, a distance of 355.08 feet to a point, which said point is 596.42 feet measured along a radial line in a Southeasterly direction from the centerline of State Project No. 429-02-08 at Highway Survey Station 164+93.43; thence in a Southwesterly direction along the arc of a curve to the right having a radius of 1,314.92 feet (the long chord of which bears South 48° 06' 42" West, 199.81 feet) a distance of 200.00 feet to a point, which said point is 631.62 feet measured perpendicular in a southeasterly direction from the centerline of State Project No. 429-02-08 at Highway Survey Station 163+20.17; thence in a southwesterly direction along the arc of a curve to the right having a radius of 584.74 feet (the chord of which bears South 64°57'54" West 253.04 feet) a distance of 255.05 feet to a point on Vendor's southerly property line; thence North 32°38' 0" West along Vendor's southerly property line a distance of 604.68 feet to its intersection with the centerline of State Project No. 429-02-08 at Highway Survey Station 160+53.38 and point of beginning and containing 36.751 acres.

PARCEL NO. 8-3:

Commence at the intersection of the existing southerly right of way of La. Highway 303 with the centerline of State Project No. 429-02-08 at Highway Survey Station 194+70.34; thence South 85°20'42" West along the existing southerly right of way of La. Highway 303 a distance of 128.21 feet to a point; thence continuing along the existing southerly right of way of La. Highway 303 South 86°33'34" West a distance of 417.72 feet to the intersection with Vendor's easterly property line and point of beginning, which said point has coordinates of X=2,390,904.92 and Y=399,800.01; thence South 05°36'35" East along Vendor's easterly property line a distance of 10.80 feet to a point; thence South 87°6' 3" West a distance of 18.83 feet to a point; which is 38.00 feet measured

**10718634**

perpendicular in a southerly direction from the centerline of La. Highway 303 at Survey Station 14+35.94; thence South 85°31'39" West a distance of 181.33 feet to a point on Vendor's westerly property line; thence north to a point on Vendor's westerly property line; thence North 5°36'35" West along Vendor's westerly property line a distance of 13.89 feet to the intersection with the existing southerly right of way of La. Highway 303; thence North 86°33'34" East along the existing southerly right of way of La. Highway 303 a distance of 200.25 feet to its intersection with Vendor's easterly property line and point of beginning and containing 0.056 acre.

PARCEL NO. 8-13:

Commence at the intersection of the existing southerly right of way of La. 303 with the centerline of State Project No. 429-02-08 at Highway Survey Station 194+70.34; thence North 85°20'42" East along the existing southerly right of way of La. 303 a distance of 146.98 feet to a point; thence continuing along said right of way North 83°2'14" East a distance of 254.11 feet to a point; thence continuing along the said southerly right of way North 80°41'30" East a distance of 199.81 (178.00 + 21.37) feet to a point; thence continuing along the existing southerly right of way of La. 303, North 86°31 °13" East a distance of 97.37 feet to its intersection with Vendor's westerly property line and point of beginning; thence continuing along the existing southerly right of way of La. 303, North 86°31'13" East a distance of 265.25 feet to a point on Vendor's easterly property line; thence South 46°21'35" East along Vendor's easterly property line a distance of 19.69 feet to a point; thence South 83°12'30" West a distance of 190.77 feet to a point; thence South 83°11'23" West a distance of 87.20 feet to a point on Vendor's westerly property line; thence North 5° 36' 35"West along Vendor's westerly property line a distance of 30.54 feet to its intersection with the existing southerly right of way of La. 303 and point of beginning and containing 0.141 acre.

The bearings and coordinates shown are grid and are on the Louisiana Coordinate System (South Zone).

III. A CERTAIN PIECE OR PORTION OF GROUND together with all the buildings and improvements thereon and all the rights, ways, privileges, servitudes, advantages and appurtenances thereinto belonging or in anywise appertaining situated in the Parish of Jefferson, State of Louisiana, forming a portion of Section 15, Township 15 South, Range 23 East, Southeast District of Louisiana, West of the Mississippi River in Jefferson Parish, sold to the Parish of Jefferson, dated May 26, 1976, registered at COB 863, folio 363, of the records of Jefferson Parish, Louisiana, as shown on a plan by S. K. Landry, Land Surveyor, dated June 7, 1974, more particularly described as follows:

Beginning at the intersection of the South side of Louisiana Highway #303 with the East side of the present Rose Thorne Park, which point is located at Louisiana Grid Coordinates X=2,390,706.40 feet and Y=399,774.17 feet.

Thence North 85°31'39" East for 181.33 feet. Thence South 5°36'35" East for 1442.20 feet. Thence North 84°23' 25" East for 262.72 feet to the Eastern Right of Way of Louisiana State Highway Project No. 429-02-08. Thence along the Eastern Right of Way of the Project as follows: Go South 24°59'06" West for 305.30 feet; thence on a 269.79 foot arc having a 340.74' radius and a 262.80 foot chord bearing South 51°52'28" West. Thence South 74°33'26" West for 581.74 feet. Thence on a 274.11 foot arc having a 609.74 foot radius a 271.81 foot chord bearing South 34°09'24" West, Thence South 21°16'42" West for 250 feet. Thence on a 114.53 foot arc having a 1001.92 foot radius and a 114.47 foot chord bearing South 24°33'57" West to the Eastern line of the Berthoud Plantation. Thence along the Eastern line of the Berthoud Plantation North 32°38' West for 1161.03 feet to the South Boundary of Rose Thorne Subdivision. Thence North 84°23'25" East for 1359.45 feet to the Southeast corner of the existing Rose Thorne Park. Thence North 5°36'35" West along the East side of Rose Thorne Park for 1446.25 feet to the point of beginning; containing 26.945 acres.

IV. The approximately 1.0 acre parcel proposed to be sold to the Full Gospel Church, as shown on attached survey marked Exhibit B, as Lot 34-A1 and Lot 34-A2.

AND

V. The approximately 1.18 acre parcel proposed to be sold to Pamela Pipes, which approximately 1.18 acre is colored in red on the sketch attached as Exhibit C, and on the excerpt of the survey of Gandolfo, Kuhn & Associates dated June 2, 1987, marked as Exhibit C-1 to the above act.

Being the same property acquired by Vendor on this date from Rosethorne Partnership by Act of Cash Sale passed before James R. Morton, Notary Public, and registered in COB_____, folio_____of the records of Jefferson Parish, Louisiana

## SERVITUDE DESCRIPTION

That portion of ground, together with all the buildings and improvements thereon, and all of the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the Parish of Jefferson, State of Louisiana, In Section 15, Township 15 South, Range 23 East and Section 37, Township 15 South, Range 24 East, Southeast Land District of Louisiana, West of the Mississippi River, running generally from the southerly end of the August Lane right-of-way westerly and adjacent to the rear property line of original lots 31, 32, 33 and 34 to a canal and comprising and designated as a 65' Right-of-Way across said portion of the property owned by River Realty, LLC, all as shown on a plan of survey by BFM Corporation, Registered Professional Land Surveyor, dated August 7, 2004. Drawing No. F-5248-2004/Proj. No. 4003, a copy of which is attached hereto and made a part hereof, and is more fully described as follows:

COMMENCE at the intersection of the Southerly right-of-way line of LA State Highway 303 and the Westerly right-of-way line of August Lane;

THENCE, along the aforesaid Westerly right-of-way line of August Lane, proceed S 46°18'47" E a distance of 1,946.45 feet, more or less, to the POINT OF BEGINNING, being the intersection of the westerly right-of-way line of August Lane and the rear property line of lot 31;

THENCE, S 84°26'45" W adjacent to the rear **10718634** of original lots 31, 32, 33 and 34 a distance of 1,055.51 feet to a point;
THENCE, S 40°15'19" E a distance of 42.37 feet to a point;
THENCE, S 35°33'58" E a distance of 154.83 feet to a point;
THENCE, N 55°01'54" E a distance of 41.57 feet to a point;
THENCE, N 33°58'38" W a distance of 56.66 feet to a point;
THENCE, N 39°30'31" W a distance of 40.72 feet to a point;
THENCE, N 84°26'45" E parallel to the rear property line of original lots 31, 32, 33 and 34 a distance of 1,115.38 feet to a point;
THENCE, N 46°17'42" W a distance of 85.79 feet to a point;
THENCE, S 84°26'45" W a distance of 91.95 feet to the POINT OF BEGINNING.

The above described portion of ground contains 79,541 square feet or 1.826 acres, more or less, all in accordance with a plan of survey by BFM Corporation, Registered Professional Land Surveyor, dated August 7, 2004. Drawing No. F-5248-2004/Proj. No. 4003, a copy of which is attached hereto and made a part hereof.

Survey



Flood Map



**Pt. 1** (29.7542, -90.0952)

**Community:** Jean Lafitte

**Effective FIRM (Effective: 2/2/2018)**
   **Flood Zone:** AE, EL 8
   **FIRM Panel ID:** 22051C0275F
   **FIRM Panel Date:** 2/2/2018
**Ground Elevation[1]:**  -2.3 ft

## Wetlands Map



April 11, 2025

**Wetlands**

<table>
<tr><td>■ Estuarine and Marine Deepwater</td><td>■ Freshwater Emergent Wetland</td><td>■ Lake</td></tr>
<tr><td>■ Estuarine and Marine Wetland</td><td>■ Freshwater Forested/Shrub Wetland</td><td>■ Other</td></tr>
<tr><td></td><td>■ Freshwater Pond</td><td>■ Riverine</td></tr>
</table>

This map is for general reference only. The US Fish and Wildlife Service is not responsible for the accuracy or currentness of the base data shown on this map. All wetlands related data should be used in accordance with the layer metadata found on the Wetlands Mapper web site.

National Wetlands Inventory (NWI)
This page was produced by the NWI mapper

Regional Map



Neighborhood Map



Subject Photographs





































































































































# GLOSSARY

This glossary contains the definitions of common words and phrases, used throughout the appraisal industry, as applied within this document. Please refer to the publications listed in the **Works Cited** section below for more information.

### Works Cited

- Appraisal Institute. *The Appraisal of Real Estate.* 13th ed. Chicago: Appraisal Institute, 2008. Print.
- Appraisal Institute. *The Dictionary of Real Estate Appraisal.* 7th ed. 2022. Print.

### Band of Investment

A technique in which the capitalization rates attributable to components of capital investment are weighted and combined to derive a weighted-average rate attributable to the total investment (i.e., debt and equity, land and improvements). (Dictionary, 7th Edition)

### Common Area

1. The total area within a property that is not designed for sale or rental but is available for common use by all owners, tenants, or their invitees, e.g., parking and its appurtenances, malls, sidewalks, landscaped areas, recreation areas, public toilets, truck and service facilities.
2. In a shopping center, the walkways and areas onto which the stores face and which conduct the flow of customer traffic. (ICSC) (Dictionary, 7th Edition)

### Common Area Maintenance (CAM)

1. The expense of operating and maintaining common areas; may or may not include management charges and usually does not include capital expenditures on tenant improvements or other improvements to the property.
2. The amount of money charged to tenants for their shares of maintaining a center's common area. The charge that a tenant pays for shared services and facilities such as electricity, security, and maintenance of parking lots. Items charged to common area maintenance may include cleaning services, parking lot sweeping and maintenances, snow removal, security, and upkeep. (ICSC) (Dictionary, 7th Edition)

### Debt Coverage Ratio (DCR)

The ratio of net operating income to annual debt service (DCR = NOI/Im), which measures the relative ability of a property to meet its debt service out of net operating income; also called debt service coverage ratio (DSCR). A larger DCR typically indicates a greater ability for a property to withstand a reduction of income, providing an improved safety margin for a lender. (Dictionary, 7th Edition)

### Discount Rate

A rate of return on capital used to convert future payments or receipts into present value; usually considered to be a synonym for *yield rate*.
(Dictionary, 7th Edition)

### Effective Age

The age of property that is based on the amount of observed deterioration and obsolescence it has sustained, which may be

different from its chronological age. (Dictionary, 7th Edition)

## Effective Date

1. The date to which an appraiser's analyses, opinions, and conclusions apply; also referred to as the date of value. (2024-2025 USPAP)

2. The date that a lease goes into effect (Dictionary, 7th Edition)

## Exposure Time

An opinion, based on supporting market data, of the length of time that the property interest being appraised would have been offered on the open market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal. (2024-2025 USPAP)

## Excess Land

Land that is not needed to serve or support the existing use. The highest and best use of the excess land may or may not be the same as the highest and best use of the improved parcel. Excess land may have the potential to be sold separately and is valued separately. (Dictionary 7th Edition)

## External Obsolescence

A type of depreciation; a diminution in value caused by negative external influences and generally incurable on the part of the owner, landlord, or tenant. The external influence may be either temporary or permanent. There are two forms of external obsolescence: economic and locational (Dictionary, 7th Edition)

## Extraordinary Assumption

An assignment-specific assumption as of the effective date regarding uncertain Information used in an analysis which, if found to be false, could alter the appraiser's opinions or conclusions. Comment: Uncertain information might include physical, legal, or economic characteristics of the subject property, or conditions external to the property, such as market conditions or trends, or about the integrity of data used in an analysis. (USPAP, 2024-2025 ed.) (Dictionary, 7th Edition)

## Fee Simple Estate

Absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat. (Dictionary, 7th Edition)

## Functional Obsolescence

The impairment of functional capacity of improvements according to market tastes and standards. (Dictionary, 7th Edition)

## Functional Utility

The ability of a property or building to be useful and to perform the function for which it is intended according to current market tastes and standards; the efficiency of a building's use in terms of architectural style, design and layout, traffic patterns, and the size and type of rooms. (Dictionary, 7th Edition)

## Going-Concern Value

An outdated label for the market value of all the tangible and intangible assets of an established and operating business with an indefinite life, as if sold in aggregate; more accurately termed the market value of the going concern or market value of the total assets of the business. (Dictionary, 7th Edition)

### Gross Building Area (GBA)
1. Total floor area of a building, excluding unenclosed areas, measured from the exterior of the walls of the above-grade area. This includes mezzanines and basements if and when typically included in the market area of the type of property involved.
2. Gross leasable area plus all common areas.
3. For residential space, the total area of all floor levels measured from the exterior of the walls and including the super-structure and substructure basement; typically does not include garage space. (Dictionary, 7th Edition)

### Gross Leasable Area (GLA)
Total floor area designed for the occupancy and exclusive use of tenants, including basements and mezzanines; measured from the center of joint partitioning to the outside wall surfaces. (Dictionary, 7th Edition)

### Highest & Best Use
1. The reasonably probable use of property that results in the highest value. The four criteria that the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum productivity.

2. The use of an asset that maximizes its potential and that is possible, legally permissible, and financially feasible. The highest and best use may be for continuation of an asset's existing use or for some alternative use. This is determined by the use that a market participant would have in mind for the asset when formulating the price that it would be willing to bid. (IVS)

3. [The] highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future. (Uniform Appraisal Standards for Federal Land Acquisitions)

4. [For fair value determination] The use of a nonfinancial asset by market participants that would maximize the value of the asset or the group of assets and liabilities (for example, a business) within which the asset would be used. (FASB Glossary) The highest and best use of a nonfinancial asset takes into account the use that is physically possible, legally permissible, and financially feasible. (FASB 820-10-35-10B). The highest and best use of a nonfinancial asset establishes the valuation premise used to measure the fair value of the asset, as follows: (a) The highest and best use of a nonfinancial asset might provide maximum value to market participants through its use in combination with other assets as a group (as installed or otherwise configured for use) or in combination with other assets and liabilities (for example, a business). (b) The highest and best use of the asset might provide maximum value to market participants on a standalone basis. (FASB 820-10-35-10E) (Dictionary, 7th Edition)

### Highest and Best Use of Land or a Site as Though Vacant
Among all reasonable, alternative uses, the use that yields the highest present land value, after payments are made for labor, capital, and coordination. The use of a property based on the assumption that the parcel of land is vacant or can be made vacant by demolishing any improvements. (Dictionary, 5th Edition)

## Highest and Best Use of Property as Improved

The use that should be made of a property as it exists. An existing improvement should be renovated or retained as is so long as it continues to contribute to the total market value of the property, or until the return from a new improvement would more than offset the cost of demolishing the existing building and constructing a new one. (Dictionary, 5th Edition)

## Hypothetical Condition

1. A condition that is presumed to be true when it is known to be false. (SVP)
2. A condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis. Comment: Hypothetical conditions are contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of data used in an analysis. (USPAP, 2024-2025 ed.) (Dictionary, 7th Edition)

## Investment Value

1. The value of a property to a particular investor or class of investors based on the investor's specific requirements. Investment value may be different from market value because it depends on a set of investment criteria that are not necessarily typical of the market.
2. The value of an asset to the owner or a prospective owner for individual investment or operational objectives. (may also be known as worth) (IVS) (Dictionary, 7th Edition)

## Leased Fee Interest

The ownership interest t held by the lessor, which includes the right to receive the contract rent specified in the lease plus the reversionary right when the lease expires. (Dictionary, 7th Edition)

## Leasehold Estate

The right held by the lessee to use and occupy real estate for a stated term and under the conditions specified in the lease. (Dictionary, 7th Edition)

## Market Area

The geographic region from which a majority of demand comes and in which the majority of competition is located. Depending on the market, a market area may be further subdivided into components such as primary, secondary, and tertiary market areas, or the competitive market area may be distinguished from the general market area. (Dictionary, 7th Edition)

## Market Rent

The most probable rent that a property should bring in a competitive and open market under all conditions requisite to a fair lease transaction, the lessee and lessor each acting prudently and knowledgeably, and assuming the rent is not affected by undue stimulus. Implicit in this definition is the execution market support of a lease as of a specified date under conditions whereby

• Lessee and lessor are typically motivated;

• Both parties are well informed or well advised, and acting in what they consider their best interests;

• Payment is made in terms of cash or in terms of financial arrangements comparable thereto; and

• The rent reflects specified terms and conditions typically found in that market, such as permitted uses, use restrictions, expense obligations, duration, concessions, rental adjustments and revaluations, renewal and purchase options, frequency of payments (annual, monthly, etc.), and tenant improvements (TIs). (Dictionary, 7th Edition)

## Market Value

A type of value that is the major focus of most real property appraisal assignments. Both economic and legal definitions of market value have been developed and refined, such as the following.

1. The most widely accepted components of market value are incorporated in the following definition: The most probable price, as of a specified date, in cash, or in terms of equivalent to cash, or in other precisely revealed terms, for which the specified property rights should sell after reasonable exposure in a competitive market under all conditions requisite to a fair sale, with the buyer and seller each acting prudently, knowledgeably, and for self-interest, and assuming that neither is under undue duress.

2. Market value is described in the Uniform Standards of Professional Appraisal Practice (USPAP) as follows: A type of value, stated as an opinion, that presumes the transfer of a property (i.e., a right of ownership or a bundle of such rights), as of a certain date, under specific conditions set forth in the value definition that is identified by the appraiser as applicable in an appraisal. (USPAP, 2024-2025 ed.)

USPAP also requires that certain items be included in every appraisal report. Among these items, the following are directly related to the definition of market value:

- Identification of the specific property rights to be appraised.
- Statement of the effective date of the value opinion.
- Specification as to whether cash, terms equivalent to cash, or other precisely described financing terms are assumed as the basis of the appraisal.
- If the appraisal is conditioned upon financing or other terms, specification as to whether the financing or terms are at, below, or above-market interest rates and/or contain unusual conditions or incentives. The terms of above—or below-market interest rates and/or other special incentives must be clearly set forth; their contribution to, or negative influence on, the value must be described and estimated; and the market data supporting the opinion of value must be described and explained.

3. The following definition of market value is used by agencies that regulate federally insured financial institutions in the United States: The most probable price that a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and the seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

- Buyer and seller are typically motivated;

- Both parties are well informed or well advised, and acting in what they consider their best interests;
- A reasonable time is allowed for exposure in the open market;
- Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
- The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale. (12 C.F.R. Part 34.42(g); 55 Federal Register 34696, August 24, 1990, as amended at 57 Federal Register 12202, April 9, 1992; 59 Federal Register 29499, June 7, 1994)

4. The International Valuation Standards Council defines market value for the purpose of international standards as follows: The estimated amount for which an asset or liability should exchange on the valuation date between a willing buyer and a willing seller in an arm's length transaction, after proper marketing and where the parties had each acted knowledgeably, prudently and without compulsion. (International Valuation Standards, 8th ed., 2007)

5. The Uniform Standards for Federal Land Acquisitions defines market value as follows: Market value is the amount in cash, or on terms reasonably equivalent to cash, for which in all probability the property would have sold on the effective date of the appraisal, after a reasonable exposure of time on the open competitive market, from a willing and reasonably knowledgeable seller to a willing and reasonably knowledgeable buyer, with neither acting under any compulsion to buy or sell, giving due consideration to all available economic uses of the property at the time of the appraisal. (Uniform Standards for Federal Land Acquisitions) (Dictionary, 7th Edition)

## Marketing Time

An opinion of the amount of time it might take to sell a real or personal property interest at the concluded market value level during the period immediately after the effective date of an appraisal. Marketing time differs from exposure time, which is always presumed to precede the effective date of an appraisal. (Advisory Opinion 7 of the Appraisal Standards Board of The Appraisal Foundation and Statement on Appraisal Standards No. 6, "Reasonable Exposure Time in Real Property and Personal Property Market Value Opinions" address the determination of reasonable exposure and marketing time.) (Dictionary, 7th Edition)

## Net Operating Income (NOI)

The actual or anticipated net income that remains after all operating expenses are deducted from effective gross income but before mortgage debt service and book depreciation are deducted. Note: This definition mirrors the convention used in corporate finance and business valuation for EBITDA (earnings before interest, taxes, depreciation, and amortization). (Dictionary, 7th Edition)

## Obsolescence

One cause of depreciation; an impairment of desirability and usefulness caused by new inventions, changes in design, improved

processes for production, or external factors that make a property less desirable and valuable for a continued use; may be either functional or external.   (Dictionary, 7th Edition)

### Parking Ratio

A ratio of parking area or parking spaces to an economic or physical unit of comparison. Minimum required parking ratios for various land uses are often stated in zoning ordinances. (Dictionary, 7th Edition)

### Prospective Opinion of Value

A value opinion effective as of a specified future date. The term does not define a type of value. Instead, it identifies a value opinion as being effective at some specific future date. An opinion of value as of a prospective date is frequently sought in connection with projects that are proposed, under construction, or under conversion to a new use, or those that have not yet achieved sellout or a stabilized level of long-term occupancy. (Dictionary, 7th Edition)

### Rentable Area

For office buildings, the tenant's pro-rata portion of the entire office floor, excluding elements of the building that penetrate through the floor to the areas below. The rentable area of a floor is computed by measuring to the inside finished surface of the dominant portion of the permanent building walls, excluding any major vertical penetrations of the floor. Alternatively, the amount of space on which the rent is based; calculated according to local practice (Dictionary, 7th Edition)

### Replacement Cost

The estimated cost to construct, at current prices as of a specific date, a substitute for a building or other improvement, using

modern materials and current standards, design, and layout. (Dictionary, 7th Edition)

### Retrospective Value Opinion

A value opinion effective as of a specified historical date. The term retrospective does not define a type of value. Instead, it identifies a value opinion as being effective at some specific prior date. Value as of a historical date is frequently sought in connection with property tax appeals, damage models, lease renegotiation, deficiency judgments, estate tax, and condemnation. Inclusion of the type of value with this term is appropriate, e.g., "retrospective market value opinion." (Dictionary, 7th Edition)

### Scope of Work

1. The type of data and the extent of research and analyses. (SVP)

2. The type and extent of research and analyses in an appraisal or appraisal review assignment. (USPAP, 2024-2025 ed.) (Dictionary, 7th Edition)

### Stabilized Occupancy

1. The occupancy of a property that would be expected at a particular point in time, considering its relative competitive strength and supply and demand conditions at the time, and presuming it is priced at market rent and has had reasonable market exposure. A property is at stabilized occupancy when it is capturing its appropriate share of market demand.
2. An expression of the average or typical occupancy that would be expected for a property over a specified projection period or over its economic life. (Dictionary, 7th Edition)

### Surplus Land

Land that is not currently needed to support the existing use but cannot be separated from the property and sold off for another use. Surplus land does not have an independent highest and best use and may or may not contribute value to the improved parcel. (Dictionary 7th Edition)

### Tenant Improvements (TIs)

1. Fixed improvements to the land or structures installed and paid for use by a lessee.
2. The original installation of finished tenant space in a construction project; subject to periodic change for succeeding tenants. (Dictionary, 7th Edition)

### Vacancy and Collection Loss

A deduction from potential gross income (PGI) made to reflect income reductions due to vacancies, tenant turnover, and nonpayment of rent; also called vacancy and credit loss or vacancy and contingency loss. (Dictionary, 7th Edition).



## VALUATION & ADVISORY SERVICES

The McEnery Company
810 Union Street,
Fourth Floor
New Orleans, LA 70112
mceneryco.com