UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CMP, LLC | CIVIL ACTION |
| VERSUS | NO. 24-2298 |
| BOARD OF COMMISSIONERS FOR THE LAFITTE AREA INDEPENDENT LEVEE DISTRICT | SECTION: D (1) |

### ORDER AND REASONS

Before the Court is a Motion to Dismiss for Lack of Subject Matter Jurisdiction filed by Defendant Board of Commissioners for the Lafitte Area Independent Levee District ("LAILD").[1] Plaintiff has filed a Response in Opposition[2], and Defendant has filed a Reply.[3] After a careful review of the parties' memoranda, the record, and the applicable law, the Court **DENIES** Defendant's Motion to Dismiss.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

This case concerns an alleged taking of real property within the bounds of the Lafitte Area Independent Levee District in Jefferson Parish. Plaintiff CMP, LLC ("CMP") owns property within the boundaries of the LAILD in Jefferson Parish. As part of a larger project, the Rosethorne Basin Lafitte Tidal Protection Levee, LAILD raised the height of an existing levee on CMP's property.[4] Plaintiff alleges that LAILD trespassed on its land without permission, without providing any compensation to CMP, and before any appropriating resolution was passed by the

---

[1] R. Doc. 57. The Motion also contains an alternative Motion for Summary Judgment. In this Order and Reasons, the Court solely addresses the Motion to Dismiss. The Motion for Summary Judgment will be addressed in a subsequent Order and Reasons.
[2] R. Doc. 76.
[3] R. Doc. 83.
[4] R. Doc. 57-3 at ¶6; *see* R. Doc. 76-1.

LAILD.[5] On August 22, 2022, LAILD passed a resolution that provided for an appropriation of the portion of Plaintiff's land containing the levee.[6]

On September 20, 2024, CMP filed the instant suit against LAILD for a failure to pay just compensation for a taking under the Fifth and Fourteenth Amendments, as well as 42 U.S.C. §1983.[7] CMP seeks damages and a declaratory judgment that LAILD deprived it of its rights to the levee and that the LAILD has no right of appropriation to the land.[8]

In the instant Motion, the LAILD argues that it is entitled to Eleventh Amendment immunity from suit in federal court.[9] Defendant responds that the levee board is not an arm of the state and that the Fifth Circuit has found that levee boards do not constitute such. LAILD replies that Plaintiff's response does not include an individualized assessment of the LAILD under the six-factor immunity analysis required by the Fifth Circuit and that, in applying this analysis to this particular entity, LAILD is entitled to immunity under the Eleventh Amendment.[10]

## II.   LEGAL STANDARD

A motion to dismiss filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to challenge the subject matter jurisdiction of the district court to hear a case.[11] A case is properly dismissed pursuant to Rule 12(b)(1) "for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional

---

[5] R. Doc. 1; Because this fact is taken from Plaintiff's complaint, it is not afforded the benefit of truth.
[6] R. Doc. 57-18, *Resolution 495*.
[7] R. Doc. 1.
[8] *Id*. at p. 9.
[9] R. Doc. 57-1 at pp. 7-12.
[10] R. Doc. 83 at pp. 1-3.
[11] *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001).

power to adjudicate the case."[12] In considering a challenge to subject matter jurisdiction under Rule 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'"[13] Thus, a motion to dismiss for lack of jurisdiction may be decided by the Court based on: (1) the complaint alone; (2) the complaint and the undisputed facts in the record; or (3) the complaint, the undisputed facts in the record, and the court's own resolution of disputed facts.[14] The party asserting jurisdiction carries the burden of proof when facing a Rule 12(b)(1) motion to dismiss.[15] A motion to dismiss under 12(b)(1) should only be granted "if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[16]

### III.  ANALYSIS

Defendant argues that this case should be dismissed because it is entitled to sovereign immunity under the Eleventh Amendment. Defendant contends that because the Lafitte Area Independent Levee District ("LAILD") derives the vast majority of its funding from the state of Louisiana and because of the nature of the project at issue, a suit against the LAILD is essentially a suit against the state itself.[17] Plaintiff replies that, based on Fifth Circuit case law, levee boards are not "arms of the state," such that they would be entitled to immunity and that no court

---

[12] *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).
[13] *Krim*, 402 F.3d at 494 (quoting *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010).
[14] *Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019) (quoting *Robinson v. TCI/US W. Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997)) (internal quotation marks omitted).
[15] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (citing *Ramming*, 281 F.3d at 161).
[16] *Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010).
[17] R. Doc. 57-1 at pp. 8-9.

has ever found that a levee board enjoys Eleventh Amendment immunity.[18] In its Reply, Defendant emphasizes that the state exerted a great degree of control over the project at issue in this case, further showing how much the state was involved with the work of the LAILD.[19]

LAILD argues that it enjoys sovereign immunity under the Eleventh Amendment to the U.S. Constitution. The Eleventh Amendment provides that

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.[20]

While broadly forming the constitutional basis for sovereign immunity, the amendment explicitly prohibits federal courts from hearing suits against a state that does not consent to be sued in federal court.[21] Sovereign immunity under the Eleventh Amendment deprives a federal court of jurisdiction to hear a suit against a state."[22] Eleventh Amendment immunity extends to state agencies and entities that are found to be "alter egos" or "arms" of the state.[23] The Fifth Circuit has held that if the entity is found to be so closely related to the state that "the state is the real, substantial party in interest," then the Eleventh Amendment will bar the federal action.[24] Eleventh Amendment sovereign immunity, however, does not apply to entities that possess "'an identity sufficiently distinct' from that of the State."[25]

---

[18] R. Doc. 76 at pp. 5-7.
[19] R. Doc. 83 at pp. 2-3.
[20] U.S. CONST. amend. XI.
[21] *Seminole Tribe of Fla. v. Fla.,* 517 U.S. 44, 54, 116 S. Ct. 1114, 1122, 134 L. Ed. 2d 252 (1996).
[22] *Warnock v. Pecos Cnty., Tex.,* 88 F.3d 341, 343 (5th Cir. 1996).
[23] *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 688 (5th Cir. 2002).
[24] *Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999).
[25] *Vogt*, 294 F.3d at 689 (quoting *Pendergrass v. Greater New Orleans Expressway Comm'n*, 144 F.3d 342, 344 (5th Cir.1998)).

The Fifth Circuit has eschewed any bright-line test to determine whether a political entity is an "alter ego" or "arm" of the state.[26] Instead, courts in the circuit generally consider six factors:

> (1) whether state statutes and case law characterize the agency as an arm of the state;
> (2) the source of funds for the entity;
> (3) the degree of local autonomy the entity enjoys;
> (4) whether the entity is concerned primarily with local, as opposed to statewide, problems;
> (5) whether the entity has authority to sue and be sued in its own name; and
> (6) whether the entity has the right to hold and use property.[27]

All factors need not be present for an entity to receive sovereign immunity.[28] In the balance of equities, the second factor is most important, while the fifth and sixth factors are weighed significantly less.[29] The Court analyzes each of these factors in turn as it relates to LAILD.

### 1. Characterization of the Entity

Louisiana law characterizes a levee district as "a political subdivision of this state organized for the purpose and charged with the duty of constructing and maintaining levees…within its territorial limits."[30] When analyzing the nature of levee districts, the Fifth Circuit has suggested that the title of "political subdivision" is mutually exclusive from "arm of the state."[31] Furthermore, political subdivisions are "not part of any department within the executive branch of government."[32] LAILD

---

[26] *Vogt*, 294 F.3d at 689.
[27] *Id.*
[28] *Hudson*, 174 F.3d at 682.
[29] *Cozzo v. Tangipahoa Par. Council--President Gov't*, 279 F.3d 273, 281 (5th Cir. 2002).
[30] La. R.S. § 38:281.
[31] *Cozzo*, 279 F.3d at 281–82.
[32] *Vogt*, 294 F.3d at 692.

5

acknowledges that it is a political subdivision of the state of Louisiana.[33] While LAILD argues that it functionally falls under the executive branch of the state government, as a matter of law, levee districts do not constitute part of the state executive branch.[34] As a result, the first factor weighs against Eleventh Amendment sovereign immunity from suit.

### 2. Source of Funds

The next factor to be considered is the source of LAILD's funding. Plaintiff relies on *Vogt*, which addressed the Orleans Parish Levee District, to argue that this factor favors a finding of no sovereign immunity.[35] Defendant takes issue with Plaintiff's reliance on *Vogt*, arguing that, unlike the levee district in that case, the LAILD receives substantial funds from the state and does not have the same independent funding sources that that levee district possessed.[36] LAILD contends that the "lion's share" of its funding in 2023, 2024, and 2025 is provided by the state[37]

When examining this factor, the Fifth Circuit has instructed that courts should examine, first, what is "the state's liability in the event there is a judgment against the defendant" and second, what is the state's liability for the defendant's general debts and obligations.[38] Regarding liability for a judgment, in the event of a judgment against LAILD, the state has no legal liability.[39] The Louisiana Constitution provides that a judgment against a political subdivision, like a levee district, is not exigible,

---

[33] R. Doc. 57-1 at p. 9.
[34] *See Vogt*, 294 F.3d at 692.
[35] R. Doc. 76 at pp. 5-6.
[36] R. Doc. 57-1 at p. 11.
[37] *Id.*
[38] *Hudson*, 174 F.3d at 687.
[39] *Vogt*, 294 F.3d at 693.

payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered."[40] While the legislature may appropriate funds to pay a judgment against a levee district, "the legislature certainly has no legal obligation to do so."[41]

The Court acknowledges that the state government provides the majority of LAILD's annual funding, which standing alone suggests a finding that this factor favors immunity under the Eleventh Amendment.[42] As discussed above, the source of annual funding is only one portion of the analysis. The state of Louisiana has no duty to pay a judgment on behalf of the LAILD, and Defendant has not shown that the state "regularly appropriates money to pay judgments against the entity."[43] As a result, the Court finds this factor neutral in its analysis of Eleventh Amendment immunity.

### 3. Degree of Local Autonomy

In examining the degree of local autonomy of a political entity, courts look to the extent of the entity's independent management authority and the independence of the individual commissioners in charge of the entity.[44] The Board of Commissioners of the LAILD consists of five members, appointed by the Governor and confirmed by the State Senate.[45] There are various restrictions on who can fill the five seats on the board, including residency requirements, fixed terms of service, and nomination by

---

[40] La. Const. art 12, § 10(C).
[41] *Vogt*, 294 F.3d at 693.
[42] Because the factor examines the "source of the levee district's funding" (*see id.*), the Court declines to consider Defendant's argument regarding the funding of the project at issue in the present case.
[43] *Vogt*, 294 F.3d at 693
[44] *Id.* at 694.
[45] La. R.S. § 38:291 (Y).

legislators.⁴⁶ LAILD also possesses taxing authority.⁴⁷ The restrictions on the appointment of the commissioners and the district's taxing authority demonstrate a degree of independence from the state executive branch.⁴⁸ Further, each levee district has the authority to hold property, issue bonds, raise taxes up to a certain rate and make and execute contracts necessary to perform their functions.⁴⁹ Additionally, while Defendant argues that the state through the Coastal Protection and Restoration Authority ("CPRA") monitors its projects and receives reports from the district, its arguments center largely around the project at issue, not the overall workings of the LAILD Board of Commissioners. ⁵⁰ As a result, the Court finds that the third factor falls against Eleventh Amendment immunity because of the degree of local autonomy that the LAILD possesses.

### 4. Concern with Local or Statewide Problems

When analyzing to what degree a political entity is concerned with primarily local, as opposed to statewide, concerns, courts look to "whether the entity acts for the benefit and welfare of the state as a whole or for the special advantage of local inhabitants."⁵¹ Generally, the presence of limited territorial boundaries suggest that an entity is not an arm of the state.⁵² The LAILD argues that, while it is mostly

---

⁴⁶ *Id.*
⁴⁷ La. R.S. § 38:291 (Y)(6).
⁴⁸ *See Pendergrass v. Greater New Orleans Expressway Comm'n*, 144 F.3d 342, 347 (5th Cir. 1998) (holding that residency requirements, fixed term of appointments, local legislative delegation nomination, and senate approval "tug strongly" in the direction of local autonomy).
⁴⁹ La. R. S. § 38:314, 38:431, 38:401, 38:404, 38:306(A).
⁵⁰ R. Doc. 57-1 at p. 11; R. Doc. 83 at pp. 2-3.
⁵¹ *Pendergrass*, 144 F.3d at 347 (citing *Jacintoport Corp. v. Greater Baton Rouge Port Comm'n*, 762 F.2d 435, 443 (5th Cir. 1985)).
⁵² *Vogt*, 294 F.3d at 695.

concerned with levee protection for a specific geographical area, the projects are integrated into a larger coastal protection project.[53] Though the actions of the LAILD generate some statewide benefits, its activities are localized, and it possess a specific territorial jurisdiction.[54] As a result, this factor points toward the entity not being an arm of the state and lacking Eleventh Amendment Immunity.

### 5. Authority to Sue and Be Sued

The board of a levee district "may sue and be sued under the style of Board of Commissioners for the respective district."[55] While "the last two factors weigh significantly less in the six factor balance of equities" test to determine whether an entity is an arm of the state, this factor cuts against a claim of Eleventh Amendment immunity.[56]

### 6. Right to Hold and Use Property

"Each board of commissioners [of a levee district] may buy and hold, sell and transfer, or exchange property."[57] Defendant does not contest this factor, which weighs against a finding of immunity under the Eleventh Amendment.[58]

## IV. CONCLUSION

After assessing each factor in the six-factor balance of equities test regarding whether a political entity is considered to be an arm of the state, the Court concludes

---

[53] R. Doc. 57-1 at p. 12.
[54] *See Bonin v. Sabine River Auth.*, 65 F.4th 249, 259 (5th Cir.), *cert. denied*, 144 S. Ct. 287, 217 L. Ed. 2d 131 (2023).
[55] La. R.S. § 38:309(B).
[56] *Cozzo v. Tangipahoa Par. Council--President Gov't*, 279 F.3d 273, 281 (5th Cir. 2002).
[57] La. R.S. § 38:306(A).
[58] *See* R. Docs. 57-1 and 83. The Court acknowledges that this factor weighs less in the six-factor balance of equities analysis.

that the Lafitte Area Independent Levee District is not an arm of the state and, as such, is not entitled to immunity under the Eleventh Amendment.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction[59] is **DENIED**.

New Orleans, Louisiana, December 16, 2025.

**WENDY B. VITTER**
**United States District Judge**

---

[59] R. Doc. 57. The Court will address Defendant's alternative Motion for Summary Judgment in a subsequent Order and Reasons.

10