# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**CMP, LLC**                                                    **CIVIL ACTION**

**VERSUS**                                                      **NO. 24-2298**

**BOARD OF COMMISSIONERS FOR THE**                 **SECTION: D (1)**
**LAFITTE AREA INDEPENDENT**
**LEVEE DISTRICT**

## ORDER AND REASONS

Before the Court is a Motion for Partial Summary Judgment Related to Issue of Liability Pursuant to FRCP Rule 56 filed by Plaintiff CMP, LLC ("CMP")[1] and a Motion for Summary Judgment filed by Defendant the Board of Commissioners for the Lafitte Area Independent Levee District ("LAILD").[2] CMP and LAILD have each filed a Response[3] and a Reply.[4] After a careful review of the parties' memoranda, the record, and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** CMP's Motion for Partial Summary Judgment and **DENIES** LAILD's Motion for Summary Judgment.

---

[1] R. Doc. 48. For reasons unknown, CMP seems to have filed two identical Motions to Have Requests for Admission Deemed Admitted Pursuant to FRCP Rule 36 and for Partial Summary Judgment Related to Issue of Liability Pursuant to FRCP Rule 56. *See* R. Doc. 43 and R. Doc. 48. The Court previously ruled on CMP's Motion to Have Requests for Admission Deemed Admitted. R. Doc. 48. That Order and Reasons on that issue is in R. Doc. 96. The Court now turns solely to CMP's alternative Motion for Partial Summary Judgment. Further, as it pertains to CMP's previously filed Motion for Partial Summary Judgment Related to Issue of Liability Pursuant to FRCP Rule 56 (R. Doc. 43), the Court denies such Motion only as it pertains to the request for Partial Summary Jud (R. Doc. 43) as moot. R. Doc. 48 appears to be identical to R. Doc. 43, except for an additional exhibit located at R. Doc. 48-2.

[2] R. Doc. 57. Having already ruled on the Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction, R. Doc. 97, the Court now turns solely to the alternative Motion for Summary Judgment.

[3] R. Doc. 51 and R. Doc. 76, respectively.

[4] R. Doc. 55 and R. Doc. 83, respectively.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[5]

This case arises from LAILD's actions to raise an existing levee located in Jefferson Parish, Louisiana. On May 27, 2024, without formal notice or service of any kind, LAILD entered CMP's land to perform work raising a levee in conjunction with the Rosethorne Basin Lafitte Tidal Protection Levee Project.[6] LAILD's activities consisted of excavating and moving rocks, dirt, and soil on CMP's property to raise the existing levee.[7] LAILD also utilized private roads and areas for staging materials and equipment to assist in construction activities.[8] Approximately three months later, on August 22, 2024, LAILD passed Resolution 495 to provide for an appropriation of the portion of CMP's land containing the levee.[9]

Thereafter, CMP filed suit against LAILD on September 20, 2024, claiming violations of both the United States and Louisiana Constitutions.[10] On July 21, 2025, after commencement of the lawsuit, LAILD issued a check in the amount of $63,527.00 to CMP for LAILD's activities relating to the Rosethorne Basin Lafitte Tidal Protection Levee Project.[11] CMP has not negotiated or accepted the check.[12] On August 6, 2025, CMP filed its Motion to Have Requests for Admission Deemed

---

[5] The factual and procedural background are detailed in the prior Order and Reasons on the Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction based on its alleged immunity under the Eleventh Amendment. The Court adopts that factual background and incorporates it here by reference. *See* R. Doc. 97. Additional factual background is taken from the Complaint. *See* R. Doc. 1.

[6] R. Doc. 1; *see* R. Doc. 48-2, *LAILD Daily Project Diary* at pp. 35-39.

[7] R. Doc. 1 at p. 3.

[8] *Id.*

[9] R. Doc. 57-18, *Resolution 495*.

[10] R. Doc. 1.

[11] R. Doc. 50-2.

[12] *Id.*; R. Doc. 50-1.

Admitted and for Partial Summary Judgment.[13] Nearly two weeks later, LAILD filed its Motion to Dismiss for Lack of Jurisdiction and, Alternatively, Motion for Summary Judgment on August 18, 2025.[14] The Court will detail each of the party's Motions for Summary Judgment in turn.

## A. Plaintiff's Motion for Partial Summary Judgment

Plaintiff filed the instant Motion on August 6, 2025, seeking partial summary judgment on the following issues:

> 1. Declaring that the Board had no right to appropriate CMP's property;
> 2. That the Board willfully effected a physical invasion of CMP's property and thus a categorical taking without just compensation, and with callous disregard for CMP's rights, in violation of the 5th and 14th Amendments of the U.S. Constitution, and/or Article I, Section 4 of the Louisiana Constitution;
> 3. That the Board is liable for just compensation, damages, and all remedies available under 42 USC 1983, *et seq.*, including punitive damages, attorney's fees and all costs; and
> 4. That this matter proceed to the scheduled jury trial solely on the issue of just compensation and damages.[15]

CMP's complaint-in-chief is that LAILD never had the authority to appropriate CMP's land under Louisiana Civil Code Article 665 and La. R.S. § 38:301.[16] CMP contends that it is entitled to compensation based on an inverse condemnation theory of liability, in which the governmental entity must compensate an owner for land that has already been taken or occupied.[17]

---

[13] R. Doc. 48.
[14] R. Doc. 57.
[15] R. Doc. 48-1 at p. 9.
[16] *Id.* at pp. 13-14.
[17] *Id.* at pp. 15-16.

LAILD, in opposition, advances that it did have the authority under Louisiana law to appropriate the land belonging to CMP.[18] LAILD additionally contends that CMP has failed to assert a claim under 42 U.S.C. §1983, because, according to LAILD, it has followed the Louisiana statutory scheme for the process of appropriation.[19] Lastly, Defendant contends that, if anything, this claim is one for the tort of trespass, as opposed to an alleged violation of CMP's constitutional rights.[20] In its Reply, CMP reiterates its argument that LAILD had no authority to appropriate its land and that this claim is not one for trespass but for a taking because LAILD deprived CMP of its property rights.[21]

**B. Defendant's Alternative Motion for Summary Judgment[22]**

On August 18, 2025, LAILD filed the instant motion asking the court to grant summary judgment in its favor finding that:

> 1. LAILD appropriated and paid the compensation due for such appropriation of Plaintiff's property in accordance with Louisiana Constitution Article I § 4 and Article VI § 42, Louisiana Civil Code Article 655, Louisiana Revised Statute § 38:301 and the applicable case law.
> 2. Plaintiff is not entitled to any remedies or compensation other than what is provided for in Louisiana Constitution Article I § 4 and Article VI § 42, Louisiana Civil Code Article 655, Louisiana Revised Statute § 38:301. The compensation due has been paid.[23]

In direct contrast to CMP, LAILD argues that it had the authority to appropriate Plaintiff's property under Louisiana Civil Code Article 665 and La. R.S. § 38:301.[24]

---

[18] R. Doc. 51 at p. 10.
[19] *Id.* at pp. 17-19.
[20] *Id.* at pp. 20-21.
[21] R. Doc 55.
[22] R. Doc. 57.
[23] *Id.* at pp. 1-2.
[24] *Id.* at pp. 20-22.

Thus, LAILD contends that the property was appropriated under Louisiana law. As such, LAILD states that there was no constitutional taking and thus that CMP has no compensable claim for a taking under federal law.[25]

CMP, in opposition, asserts that the LAILD never had the authority to appropriate the land under Louisiana law and reiterates that Plaintiff's claim is one for a taking under the U.S. Constitution, not a federal tort case or a claim for trespass.[26] In its Reply, LAILD reiterates that it had the authority under Louisiana law to appropriate the property and that it effected an appropriation of Plaintiff's property under Louisiana law.[27]

## II.    LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28]  A dispute is "genuine" if it is "real and substantial, as opposed to merely formal, pretended, or a sham."[29]  Further, a fact is "material" if it "might affect the outcome of the suit under the governing law."[30]  When assessing whether a genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[31]  While all reasonable

---

[25] *Id.* at pp. 23-24.
[26] R. Doc. 76 at pp. 8-14.
[27] R. Doc. 83.
[28] FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[29] *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)).
[30] *Anderson*, 477 U.S. at 248.
[31] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)

inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence."[32]  Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[33]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[34]  The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[35]  If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[36]  The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[37]

---

(citations omitted).

[32] *Id*. (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotations omitted).

[33] *Id*. at 399 (citing *Anderson*, 477 U.S. at 248).

[34] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).

[35] *Id*. at 1265.

[36] *See Celotex*, 477 U.S. at 322-23.

[37] *Id*. at 324 (quoting FED. R. CIV. P. 56(e)).

"When parties file cross motions for summary judgment," the court must "review 'each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.'"[38] "This is because 'each party, as a movant for summary judgment, bears the burden of establishing that no genuine dispute of material fact exists and that the movant is entitled to judgment as a matter of law.'"[39]

The fact that one party fails to satisfy that burden on his own Rule 56 motion does not automatically indicate that the opposing party has satisfied its burden and should be granted summary judgment on the other motion. The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard. Both motions must be denied if the court finds that there is a genuine dispute of material fact. But if there is no genuine dispute and one or the other party is entitled to prevail as a matter of law, the court will render judgment.[40]

## III.    ANALYSIS

The parties' Motions and the briefing thereto requires the Court to make two determinations. First, the Court resolves whether LAILD took the necessary action to appropriate CMP's property under Louisiana law. Second, the Court addresses whether CMP has a compensable claim against LAILD for a taking under the Fifth

---

[38] *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 297–298 (5th Cir. 2014) (quoting *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)).

[39] *Gruver v. La. ex rel. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 654 F.Supp.3d 539, 545 (M.D. La. 2023) (quoting 10A MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE (Wright & Miller) § 2720 (4th ed. 2022)).

[40] *Id.* (quoting KANE, *supra* note 35).

and Fourteenth Amendments, 42 U.S.C. § 1983, and the Louisiana Constitution. The Court will consider each in turn.

### A. An Appropriation Did Not Occur Before Occupation of the Property.

LAILD claims, pursuant to Louisiana Civil Code art. 665, that it had the authority to appropriate CMP's property and that, by passing a resolution, even after the fact, it had done so.[41] LAILD further urges this Court to follow the Louisiana Court of Appeal for the Fifth Circuit's holding in *Magee v. West Jefferson Levee District*, in which that court held that failure to comply with certain statutory provisions La. R.S. § 38:301 did not entitle the property owner to additional compensation.[42] LAILD further notes that CMP's principal, Tac Carrere, "was on notice of the Project and actually participated with the planning, alignment, mitigation issues and other issues for years."[43] Plaintiff, however, argues that LAILD never had any authority to appropriate its land under Louisiana law because (1) the property at issue is not subject to the type of servitude enumerated in Louisiana Civil Code art. 665 and (2) LAILD failed to pass an appropriating resolution before commencing the taking of CMP's property for the levee project.[44]

As an initial matter, the Court finds it unnecessary to resolve the issue of whether LAILD had the authority to appropriate CMP's property because, even if LAILD had appropriation authority, LAILD failed to follow the statute outlining the

---

[41] R. Doc. 57-1 at pp. 20-22.
[42] *Id.* (citing 235 So.3d 1230, 1237-44 (La. Ct. App. 5th Cir. 2017)).
[43] *Id.* at p. 22.
[44] R. Doc. 76 at pp. 9-11.

process in which an appropriation may occur.[45] To that end, Louisiana Revised Statute § 38:301 provides, in pertinent part:

> C. (1)(a) All lands, exclusive of batture, and improvements hereafter actually taken, used, damaged, or destroyed for levee or levee drainage purposes shall be paid for at fair market value to the full extent of the loss.
>
> (b)(i) The owner shall be given written notice of the appropriating resolution by the levee board within ten days of the date of its passage.[46]
>
> ***
>
> (e) Notwithstanding any other provision to the contrary, the various levee districts shall also have the authority to appropriate lands and improvements for temporary servitudes for levee construction purposes. As to these temporary servitudes, the "fair market value" shall mean the use value of the lands actually used for the period of time utilized by the appropriating agency.
>
> (f) It shall be the duty of the appropriating agency to specify and delineate at the time of the appropriating resolution, whether areas taken shall be burdened with a permanent levee servitude or a temporary servitude for levee construction purposes.
>
> (g) "Use" shall be deemed to occur at the time the levee board formally adopts its resolution specifically describing an area to be utilized for levees and levee drainage purposes through the exercise or acquisition of a permanent levee servitude or a temporary servitude provided that actual use of the property commences within two years of the adoption of the resolution. Notice by certified mail shall be given to the owner within five days of the adoption of the resolution.[47]

---

[45] LA. CIV. CODE art. 665 provides, in pertinent part, that "[s]ervitudes imposed for the public or common utility relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers and for the making and repairing of levees, roads, and other public or common works. Such servitudes also exist on property necessary for the building of levees and other water control structures on the alignment approved by the U.S. Army Corps of Engineers as provided by law, including the repairing of hurricane protection levees."

[46] La. R.S. §§ 38:301(C)(1)(a), (b)(i).

[47] La. R.S. §§ 38:301(C)(e)–(g).

Moreover, the Louisiana Supreme Court has explained that a levee district effects an appropriation "by a resolution of the appropriating authority, without the need for a judicial proceeding."[48]

LAILD readily concedes that it first entered CMP's land on May 27, 2024.[49] LAILD, however, did not pass Resolution 495 until August 22, 2024.[50] Thus, at issue here, there was a near three-month period in which LAILD occupied CMP's land without passing a formal resolution. In those three months, LAILD failed to comply with § 38:301's mandate that "[t]he owner shall be given written notice of the appropriating resolution by the levee board within ten days of the date of its passage."[51] Additionally during this period, LAILD failed to "specify and delineate . . . whether areas taken shall be burdened with a permanent levee servitude or a temporary servitude for levee construction purposes."[52] In sum, LAILD violated the plain language of § 38:301.

LAILD's argument, however, does not end there. Despite conceding that the resolution was passed after entering CMP's property, LAILD argues that the right of appropriation gives it the ability to "act first and talk later[,]" thereby allowing it to first perform work on the land and pass the resolution after the fact.[53] The Court disagrees. The "act first and talk later" axiom does not permit an appropriating

---

[48] *S. Lafourche Levee Dist. v. Jarreau*, 217 So. 3d 298, 305 (La. 2017); *see also Winter Quarters Hunting & Fishing Club, LLC v. Bd. of Commissioners, Fifth Louisiana Levee Dist.*, No. 3:19-CV-00887, 2020 WL 6550503, at *7 (W.D. La. Nov. 6, 2020).

[49] R. Doc. 48-2, *LAILD Daily Project Diary* at pp. 35-39

[50] R. Doc. 50-1; R. Doc. 50-2.

[51] La. R.S. § 38:301(C)(1)(b)(i).

[52] La. R.S. § 38:301(C)(1)(f).

[53] R. Doc. 51-2 at ¶ 2; R. Doc. 57-1 at p. 17 (quoting *Magee v. W. Jefferson Levee Dist.,* 235 So. 3d 1230, 1237 (La. Ct. App. 5th Cir. 2017)).

agency to occupy property first and then pass a resolution later; it permits the agency to pass a resolution and then occupy the land while discussions continue regarding the amount of compensation to be paid for the appropriated land.[54]

Additionally, insofar as LAILD asserts that the Louisiana Fifth Circuit Court of Appeal held in *Magee v. West Jefferson Levee District*[55] that non-compliance with La. R.S. § 38:301 did not entitle the *Magee* plaintiffs to additional compensation, the Court finds such reasoning unpersuasive. Notedly, in *Magee*, the appropriating agency complied with § 38:301's resolution and notice requirements that LAILD, here, has failed to do.[56] Again, LAILD neither passed a resolution nor notified the owner of said resolution until after they had begun to occupy Plaintiff's property. Case law and the plain text of the statute demonstrate that an appropriation occurs at the time of the *resolution*.[57] Without a resolution, no appropriation can occur. Second, LAILD contends that *Magee* held that § 38:301 is directive, as opposed to mandatory, and thus no additional compensation for the plaintiffs was warranted even though the *Magee* defendant violated the plain language of the statute.[58] This Court isskeptical of using such methods of statutory interpretation.[59]

---

[54] *See* LA. CONST. art. VI, § 42.

[55] 235 So. 3d 1230.

[56] *Magee,* 235 So. 3d at 1240-41.

[57] *See South Lafourche Levee District*, 217 So.3d at 305 ("Appropriation, as opposed to expropriation, is carried out by a resolution of the appropriating authority, without the need for a judicial proceeding.").

[58] *Magee v. W. Jefferson Levee Dist.,* 235 So. 3d 1230, 1240-41 (La. Ct. App. 5th Cir. 2017).

[59] The Court does not expressly make a ruling as to the directive or mandatory nature of § 38:301. The Court, however, reiterates some of the basic tenants of statutory interpretation enumerated by the Louisiana Supreme Court. "Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent . . . When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the legislative intent." *South Lafourche Levee District*, 217 So.3d at 304 (citation modified).

Because LAILD occupied CMP's property before passing Resolution 495, the Court finds that LAILD did not appropriate CMP's property. The Court makes no finding regarding whether LAILD possessed the authority to appropriate the land based on La. Civil Code art. 665 and only notes that it had failed effectuate an appropriation in this matter. As a result, the Court finds that there is no genuine dispute of material fact regarding the attempt to appropriate CMP's land and finds that an appropriation did not occur as a matter of law.

## B. There is No Genuine Issue of Material Fact that a Partial Taking Did Occur.[60]

Having found that LAILD failed to appropriate CMP's property under La. R.S. § 38:301, the Court next addresses whether CMP is entitled to summary judgment for its claim of a taking under the Fifth and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983, and Article I, Section 4 of the Louisiana Constitution.

CMP argues that it is entitled to compensation for LAILD's occupation of its property.[61] LAILD, in turn, contends that it appropriated the portion of CMP's property in order to raise an existing levee and that it has already tendered fair market value to CMP in the form of the July 21, 2025 check for $63,527.00.[62] LAILD further argues that the allegations set forth in CMP's Complaint amount to nothing

---

[60] Notably, the Court finds that even if it, prior to the instant Order and Reasons, granted LAILD's Motion to Withdraw or Amend Responses to Requests for Admissions (R. Doc. 98), thereby allowing LAILD to amend its deemed admissions with its August 21, 2025 supplemental responses to requests for admissions (R. Doc. 98-3), its ruling would not change. In fact, LAILD's August 21, 2025 supplemental responses to requests for admissions provide an even greater justification for granting summary judgment in favor of CMP on the issue of a partial taking. *See, e.g.*, R. Doc. 98-3 at p. 3 (LAILD admitting that it "did not file any legal petition, injunction or motion for relief relating to CMP's [p]roperty with a court of competent jurisdiction prior to entering CMP's Property").
[61] R. Doc. 48-1 at p. 15.
[62] R. Doc. 51 at p. 19; R. Doc. 57-1 at p. 24.

more than a trespass, which is not actionable under 42 U.S.C. §1983.[63] The Court first addresses the federal claims and subsequently addresses the state law claims.

### 1. Federal Claims

The Supreme Court has provided guidance regarding the genesis of a claim under the Takings Clause of the Fifth Amendment:

> When the government physically acquires private property for a public use, the Takings Clause imposes a clear and categorical obligation to provide the owner with just compensation. The Court's physical takings jurisprudence is as old as the Republic. The government commits a physical taking when it uses its power of eminent domain to formally condemn property. The same is true when the government physically takes possession of property without acquiring title to it. And the government likewise effects a physical taking when it occupies property—say, by recurring flooding as a result of building a dam. These sorts of physical appropriations constitute the clearest sort of taking, and we assess them using a simple, *per se* rule: The government must pay for what it takes.[64]

Thus, it is axiomatic that "[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it."[65] Divestment of ownership is not required; a governmental entity can even effect "a physical taking when it occupies property."[66] If the government does so, the property owner "may bring his claim in federal court under § 1983 at that time."[67]

One such claim is a claim for inverse condemnation in which a property owner brings an action against a governmental defendant "to recover the value of property which has been taken in fact by the governmental defendant, even though no formal

---

[63] R. Doc. 83 at p. 3

[64] *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147–48 (2021)(citation modified).

[65] *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 185 (2019).

[66] *Cedar Point Nursery*, 594 U.S. at 148.

[67] *Knick,* 588 U.S. at 185.

exercise of the power of eminent domain has been attempted by the taking agency."[68] Because federal law, including the Constitution, does not create any interests in real property, whether such interest existed "is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'"[69]

To determine whether a government action is an unconstitutional taking under the U.S. Constitution versus a tort-based trespass, courts use a two-part analysis set forth in *Ridge Line, Inc. v. United States*.[70] A property loss compensable as a taking only results when (1) "the government intends to invade a protected property interest or the asserted invasion is the 'direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action'" and (2) "the nature and magnitude of the government action" are substantial.[71] Even if the effects of the government's actions are predictable, for a constitutional taking to have occurred "an invasion must appropriate a benefit to the government at the expense of the property owner, or at least preempt the owners [sic] right to enjoy his property for an extended period of time, rather than merely inflict an injury that reduces its value."[72]

The common law tort of trespass cannot, however, be the subject of a suit under 42 U.S.C. §1983. Neither the Fifth Circuit nor the United States Supreme Court have

---

[68] *United States v. Clarke*, 445 U.S. 253, 257 (1980).

[69] *Phillips v. Washington Legal Found.,* 524 U.S. 156, 164 (1998) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).

[70] 346 F.3d 1346, 1355 (Fed. Cir. 2003).

[71] *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1355 (Fed. Cir. 2003) (quoting *Columbia Basin Orchard v. United States,* 132 Ct.Cl. 445, 132 F.Supp. 707, 709 (1955)); *see also Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 38–39, 133 S. Ct. 511, 522, 184 L. Ed. 2d 417 (2012) (citing *Ridge Line, Inc.*, 346 F.3d at 1355-56).

[72] *Id.*

directly addressed the issue, but other circuits, including the Tenth Circuit, have addressed that issue. That Court found that "a trespass to property, negligent or intentional, is a common law tort; it does not infringe the federal constitution" and is thus not actionable under 42 U.S.C. §1983.[73] While the Court finds that reasoning persuasive, it need not address that question in this Order and Reasons. Even if the tort of trespass is actionable under 42 U.S.C. § 1983, the Court finds that CMP's actions constitute a partial taking, as opposed to a mere trespass, for the reasons set forth below.

Here, CMP brings the instant suit under an inverse condemnation theory under § 1983, in which it attempts to recover the value of its property which LAILD had previously taken. CMP argues that LAILD physically invaded CMP's land on May 27, 2024.[74] LAILD does not deny that it entered CMP's property on that day and only argues that it "entered the property lawfully and with Plaintiff's having notice of the Project."[75] LAILD further concedes that "LAILD passed the Resolution of Appropriation after entering the Property to perform levee protection work as allowed under Louisiana law."[76] Because the Court previously found that LAILD had not successfully appropriated the property at the time of the taking, a post-*hoc* resolution cannot, in this case, ameliorate LAILD's prior acts.

---

[73] *Wise v. Bravo*, 666 F.2d 1328, 1335 (10th Cir. 1981); *see also Brown v. Brienen*, 722 F.2d 360, 364 (7th Cir. 1983) ("Most common law wrongs are not actionable under section 1983, though by definition they involve the deprivation of a legally protected interest."); *but see Knick*, 588 U.S. at 207 (Thomas, J., concurring)("I do not understand the Court's opinion to foreclose the application of ordinary remedial principles to takings claims and related common-law tort claims, such as trespass. I therefore join it in full.").

[74] R. Doc. 48-2, *LAILD Daily Project Diary* at pp. 35-39.

[75] R. Doc. 51-2 at ¶ 1.

[76] *Id.*

The Court finds that there is no genuine dispute of material fact that LAILD entered part of CMP's land without first providing compensation, thereby constituting LAILD's actions as a partial taking.[77] Furthermore, there is no genuine dispute of material fact regarding the actions taken by LAILD on CMP's land. LAILD heightened an existing levee and performed maintenance and mitigation related to federal and non-federal hurricane protection projects.[78] Additionally, CMP has pointed to voluminous record evidence that details LAILD's actions at the site, including clearing, grubbing, burning, and "making small piles of debris to burn" beginning on May 27 and May 28, 2024.[79]

The Court now turns to evidence of the nature and magnitude of the government's action. As noted above, for a constitutional taking to have occurred "an invasion must appropriate a benefit to the government at the expense of the property owner, or at least preempt the owners [sic] right to enjoy his property for an extended period of time, rather than merely inflict an injury that reduces its value."[80] The parties don't dispute that LAILD entered the property and began the levee rebuild without authorization.[81] Further, they don't dispute that LAILD's agents remained on the land for three months, bringing people and equipment on the land to work the project to raise the levee, all before the resolution was passed.[82] Taken together, this

---

[77] *See U.S. v. 8.41 Acres of Land, More or Less, Situated in Orange County, State of Tex.*, 680 F.2d 388, 392 n.4 (5th Cir. 1982)("A partial taking generally refers to an appropriation in fee of a portion of a larger tract.").

[78] *Id.* at ¶ 3.

[79] R. Doc. 48-2 at pp. 36-39.

[80] *Ridge Line, Inc.*, 346 F.3d at 1355.

[81] *See* R. Doc. 51-2.

[82] *Id.*

evidence addresses both prongs of the *Ridge Line* analysis and demonstrates that the actions of LAILD rose to the level of a constitutional partial taking, as opposed to a mere trespass.

While LAILD argues that Mr. Carrere, in his deposition, called the actions a "trespass," thus giving credence to its argument that the actions amounted to no more than a trespass, reliance on the word choice of "trespass" does not absolve LAILD of its liability for a constitutional taking any more than calling a cat a dog makes the cat a dog.[83] Subjective characterization is the not the test. Moreover, LAILD fails to point to record evidence calling into question whether its actions amounted only to a trespass or to a constitutional taking. Without such, the Court cannot say that LAILD has meet its burden under Fed R. Civ. P. 56.[84]

On the other hand, CMP reiterates throughout its briefing that the actions of the LAILD are not merely a trespass and distinguishes each of the cases cited by LAILD.[85] The record evidence detailing the actions taken by LAILD on CMP's property provide proof of the activities taken on the property and that those activities amounted to more than a simple trespass.[86]

Accordingly, finding that there is no genuine dispute of material fact, the Court finds that CMP is entitled to summary judgment on its claim for a partial taking[87]

---

[83] *See* R. Doc. 57-14 at p. 1.
[84] Fed. R. Civ. P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . .").
[85] *See* R. Doc. 76 at pp. 14-15;
[86] *See, e.g.,* R. Doc. 48-2, *LAILD Daily Project Diary* at pp. 35-39.
[87] *U.S. v. 158.24 Acres of Land, More or Less, in Bee County, Texas*, 515 F.2d 230 n.2 (5th Cir. 1975)("A partial taking refers to appropriation in fee of a segment of a larger tract.").

under the Fifth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983, and that Plaintiff is entitled to a judgment of liability for a constitutional taking as a matter of law.

## 2. Louisiana Law Claims

CMP also brings a takings claim under Article I, Section 4 of the Louisiana Constitution. Article I, Section 4 of the Louisiana Constitution provides a similar cause of action when the government takes property without compensation. "[T]he cause of action arises whenever a state commits a taking without justly compensating the victim."[88] Unlike damages allowed for a taking under 42 U.S.C. §1983, Louisiana law allows plaintiffs to recover for damages both under the Louisiana Constitution and under Louisiana tort law.[89] Plaintiff, however, only asserts a claim for a state constitutional taking, not the tort of trespass.[90]

For a claim of a taking under Article I, Section 4 of the Louisiana Constitution, courts are required to:

> (1) determine if a recognized species of property right has been affected;
> (2) if it is determined that property is involved, decide whether the property has been taken or damaged in a constitutional sense; and
> (3) determine whether the taking or damaging is for a public purpose under Article I, § 4.[91]

Similar to this Court's holding regarding the claims under the Fifth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983, the Court finds that CMP

---

[88] *Crooks v. Dep't of Nat. Res.*, 340 So. 3d 574, 581 (La. 2020), *opinion corrected on reh'g* (Apr. 9, 2020).
[89] *Williams v. City of Baton Rouge*, 731 So. 2d 240, 248 (La. 1999) ("We hold that in addition to property damages resulting from this inverse condemnation, plaintiffs are also entitled to general damages under Article 2315.").
[90] *See* R. Doc. 1 at p. 5.
[91] *Avenal v. State*, 886 So.2d 1085, 1104 (La. 2004).

has sufficiently provided evidence in the record to prove that there is no genuine dispute of material fact that LAILD effected a partial taking[92] under Louisiana law. As noted above, LAILD did not effectuate an appropriation under Louisiana law. Nor did LAILD effectuate an expropriation under Louisiana law, which requires a formal procedure and usually involves the taking of ownership.[93]

Instead, LAILD's actions give rise to a claim for inverse condemnation – a specific form of a taking. "Inverse condemnation claims derive from the Takings Clauses contained in both the Fifth Amendment of the U.S. Constitution and Art. I, § 4 of the Louisiana Constitution."[94] "The action for inverse condemnation provides a procedural remedy to a property owner seeking compensation for land already taken or damaged against a governmental or private entity having the powers of eminent domain where no expropriation has commenced. The action for inverse condemnation is available in all cases where there has been a taking or damaging of property where just compensation has not been paid, without regard to whether the property is corporeal or incorporeal."[95] "The constitutional command of Art. I, § 4 is

---

[92] Under Louisiana law, like federal law, a partial taking refers to an appropriation in fee of a portion of a larger tract. *See State, Through Dept. of Highways v. Tyler*, 326 So.2d 349, 350–51 (La. 1976)(finding that a partial taking occurred where the state occupied only a portion of the landowners' property).

[93] *See South Lafourche Levee District*, 217 So. 3d at 305 ("Appropriation, as opposed to expropriation, is carried out by a resolution of the appropriating authority, without the need for a judicial proceeding. Furthermore, appropriation involves the taking of a servitude, whereas expropriation may involve the taking of ownership.")(citation modified).

[94] *Crooks*, 340 So. 3d at 581.

[95] *State Through Dept. of Transp. And Development. v. Chambers Inv. Co., Inc.*, 595 So.2d 598, 602 (1992)(citation modified).

self-executing, such that the cause of action arises whenever a state commits a taking without justly compensating the victim."[96]

First, CMP has a clear property interest in the land it owns pursuant to the Louisiana Constitution.[97] Second, LAILD readily concedes that it entered CMP's land to raise the levee on the land, thereby substantially impacting CMP's right to enjoyment in its property, among other things. Third, LAILD occupied CMP's land for a public purpose of levee flood protection. In accordance with self-executing nature of Art. I, § 4, CMP's cause of action arose when LAILD engaged in a partial taking of CMP's land without just compensation. As a result, Plaintiff is entitled to judgment as a matter of law regarding liability of its Louisiana constitutional claim for a partial taking.

### C. CMP is entitled to recover damages pursuant to federal and Louisiana law.

Having determined that LAILD's actions constitute a partial taking under both federal and Louisiana law, the Court must determine what damages CMP may recover for its federal and state law claims. CMP contends that LAILD "is liable for just compensation, damages, and all remedies available under 42 USC 1983, *et seq.*, including punitive damages, attorney's fees and all costs[.]"[98] LAILD, in contrast, maintains that CMP "is not entitled to any remedies or compensation other than what is provided for in Louisiana Constitution Article I § 4 and Article VI § 42, Louisiana

---

[96] *Crooks*, 340 So. 3d at 581.
[97] *See* La. CONST. art. I, § 4.
[98] R. Doc. 48-1 at p. 9.

Civil Code Article 655, Louisiana Revised Statute § 38:301. The compensation due has been paid."[99] The Court takes each in turn.

### 1. Federal Law

The Takings Clause of the United States Constitution states that private property shall not "be taken for public use, without just compensation."[100] "The [Supreme] Court has repeatedly held that just compensation normally is to be measured by 'the market value of the property at the time of the taking contemporaneously paid in money.'"[101] "Considerations that may not reasonably be held to affect market value are excluded[,]"[102] and "[d]eviation from this measure of just compensation has been required only 'when market value has been too difficult to find, or when its application would result in manifest injustice to owner or public.'"[103] Moreover, the Fifth Circuit has provided insight when calculating just compensation:

> The measure of compensation is to be the value of the property at the date of taking. In most cases, the value of the property can be justly determined by its monetary market value. Market value has been defined as what it fairly may be believed that a purchaser in fair market conditions would have given, or what a willing buyer would pay in cash to a willing seller, And since a hypothetical, reasonable man buyer will purchase land with an eye to not only its existing use but to other potential uses as well, fair market value takes into consideration the highest and most profitable use for which the property is adaptable and

---

[99] R. Doc. 57 at p. 2.

[100] U.S. CONST. AMEND. V.

[101] *U.S. v. 50 Acres of Land*, 469 U.S. 24, 30 (1984)(quoting *Olson v. United States,* 292 U.S. 246, 255 (1934)). *See also Horne v. Dept. Of Agriculture*, 576 U.S. 350, 369 (2015)("The Court has repeatedly held that just compensation normally is to be measured by the market value of the property at the time of the taking.")(internal quotation marks omitted); *Knick*, 588 U.S. at 192 ("[A] property owner has a constitutional claim for just compensation at the time of the taking.").

[102] *Id.*

[103] *Id.* (quoting *United States v. Commodities Trading Corp.,* 339 U.S. 121, 123 (1950)).

needed or likely to be needed in the reasonably near future to the full extent that the prospect of demand for such use affects the market value while the property is privately held. Thus, just compensation is not limited to the value of the property as presently used, but includes any additional market value it may command because of the prospects for developing it to the highest and best use for which it is suitable.[104]

Using these fair market value principles in partial takings cases, "[f]ederal courts have long held that an appropriate measure of damages in a partial-taking case is the difference between the value of the parent tract before the taking and its value after the taking."[105]

The Court finds that there is no reason to deviate from the measure of just compensation. Notedly, the market value of the property is able to be calculated, as both parties have submitted expert reports estimating the value of CMP's land.[106] Additionally, the parties have advanced no reasons as to why the application of just compensation would result in manifest injustice. The Court, too, independently finds that no manifest injustice would result from using the fair market value measure.

Moreover, because CMP has brought claims pursuant to § 1983, the Court turns to what damages CMP may recover under that statute. Section 1983 "creates a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them  by the Constitution."[107] Because it is "[a] creature of tort liability, § 1983 permits recovery of  compensatory damages,  attorney's  fees,  and

---

[104] *U.S. v. 320.0 Acres of Land, More or Less in Monroe County, State of Fla.*, 605 F.2d 762, 781 (5th Cir. 1979)(citation modified).

[105] *U.S. v. 8.41 Acres of Land, More or Less, Situated in Orange County, State of Tex.*, 680 F.2d 388, 392 (5th Cir. 1982).

[106] R. Doc. 50-2; R. Doc. 59-4; R. Doc. 59-5.

[107] *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 307 (1986)(citation modified).

when appropriate, even punitive damages."[108]    "[C]ompensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation . . . personal humiliation, and mental anguish and suffering. Deterrence is also an important purpose of this system, but it operates through the mechanism of damages that are *compensatory*—damages grounded in determinations of plaintiffs' actual losses."[109]

As to punitive damages, "such damages are available only on a showing of the requisite intent[,]" such as acts committed maliciously, wantonly, or oppressively done.[110] Thus, under federal law, and if proven at trial, CMP may be entitled to recover the difference between the fair market value of the parent tract before the taking and its fair market value after the taking, along with compensatory damages, attorney's fees, and punitive damages.

### 2. Louisiana Law

Louisiana Constitution Article I, § 4 (B)(1) provides, in pertinent part, that "[p]roperty shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit . . . ." "[O]ur constitution requires compensation even though the State has not initiated expropriation proceedings in accordance with the statutory scheme set up for that purpose. If there has been any taking or damaging, the expropriating entity is bound to make reparations according to Article I, § 4 . . . Although the

---

[108] *Stanley v. Morgan*, 120 F.4th 467, 473 (5th Cir. 2024).
[109] *Memphis Community School Dist.*, 477 U.S. at 307 (citation modified).
[110] *Id.* at 306 n.9.

legislature has not provided a procedure whereby an owner can seek damages for an uncompensated taking or damaging, [the] [Louisiana Supreme] [C]ourt has recognized the action for inverse condemnation arises out of the self-executing nature of the constitutional command to pay just compensation."[111]

"The compensation for landowners in inverse condemnation proceedings is the same as in expropriation cases: the owner is entitled to the market value of his property and severance damages."[112] "The basic purpose in all expropriation cases is to determine the 'full extent of the loss' as required by our constitution."[113] Although there is no specific formula set forth by the Louisiana legislature to assist courts in calculating the full extent of loss, the Louisiana Supreme Court turns to La. R.S. § 19:9, which states that the full extent of loss includes "the value which the property possessed before the contemplated improvement was proposed, without deducting therefrom any amount for the benefit derived by the owner from the contemplated improvement or work."[114] The Louisiana Supreme Court has further explained that:

> The legislature and the courts have developed rules which accept the fair market value of the property as a relevant consideration in determining just compensation. Fair market value has consistently been defined as the price a buyer is willing to pay after considering all of the uses that the property may be put to where such uses are not speculative, remote or contrary to law. In determining fair market value of the land taken in an expropriation case, consideration is to be given to the most profitable use to which the land can be put by reason of its location, topography, and adaptability. This theory, of taking the latter factors into consideration, is commonly known as the 'highest and best use' doctrine.[115]

---

[111] *State Through Dept. of Transp. And Development. v. Chambers Inv. Co., Inc.*, 595 So.2d at 602.
[112] *Adams v. Parish*, 978 So.2d 1202, 1208 (La. Ct. App. 2d Cir. 2008).
[113] *Exxon Pipeline Co. v. Hill*, 788 So.2d 1154, 1159 (La. 2001).
[114] *Id.* (quoting La. R.S. § 19:9).
[115] *Id.* at 1160 (citation modified).

The highest and best use of land in an expropriation case implicates several factors, including:

> Market demand; proximity to areas already developed in a compatible manner with the intended use; economic development in the area; specific plans of business and individuals, including action already taken to develop the land for that use; scarcity of the land available for that use; negotiations with buyers interested in the property taken for a particular use; absence of offers to buy the property made by the buyers who put it to the use urged; and the use to which the property was being put at the time of the taking.[116]

And "[i]t is well established that the current use of the property is presumed to be the highest and best use and the burden of overcoming that presumption by proving the existence of a different highest and best use based on a potential, future use is on the landowner."[117] Tying together these principles in the partial takings context, the Louisiana Supreme Court has stated:

> Our state's jurisprudence holds: the highest and best use of the land actually taken is to be considered in determining fair market value. When there is a partial taking and the land expropriated has a different highest and best use than the remainder of the landowner's tract, it appears that the courts will value the land taken separately from the remainder on the basis of its own highest and best use and will not consider the value of the land taken in relation to the whole tract. The landowner is thus to be awarded the actual market value of the particular portion of the property taken, valued according to its highest and best use. He is not limited to its average per-acre value as a pro rata portion of the parent tract where the front portion has a different and higher best-use value.[118]

---

[116] *Id.* (citing *State v. Bitterwolf*, 415 So.2d 196, 199 (La. 1982); *State v. Constant*, 369 So.2d 699, 702 (La. 1979)).

[117] *Id.*

[118] *State Through Dept. of Highways v. Hoyt*, 284 So. 2d 763, 764 (La. 1973)(citation modified); *see also State, Dept. of Transp. and Development v. Monteleone*, 106 So.3d 153, 159 (La. Ct. App. 5th Cir. 2012)("Severance damages may be awarded in expropriation cases when appropriate or properly proven. The term 'severance damages' describes those compensable damages that flow from the partial expropriation of a tract of land, i.e., the difference between the value of the remaining property before and after the taking.").

Accordingly, pursuant to state law, CMP may recover damages on its inverse condemnation claim according to the "highest and best use" doctrine, considering the factors stated herein. CMP is permitted to put on evidence of such, as it pertains to the partial taking, at trial.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff CMP, LLC's Motion for Partial Summary Judgment Related to Issue of Liability Pursuant to FRCP Rule 56[119] is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Plaintiff CMP, LLC's Motion for Partial Summary Judgment Related to Issue of Liability Pursuant to FRCP Rule 56[120] is **GRANTED IN PART** and **DENIED IN PART.** It is **GRANTED** solely as to the facts (1) that the Board effected a physical invasion of CMP's property and thus a partial taking without just compensation, in violation of the 5th and 14th Amendments of the U.S. Constitution, and/or Article I, Section 4 of the Louisiana Constitution,[121] (2) that the Board is liable for just compensation, damages, and all remedies available under 42 USC 1983, et seq., including punitive damages,

---

[119] R. Doc. 43. While CMP's Motion for Partial Summary Judgment is denied as moot, it is only denied as moot as to R. Doc. 43. The Court addresses CMP's Motion for Partial Summary Judgment filed in R. Doc. 48 next.

[120] R. Doc. 48.

[121] CMP requested summary judgment on the finding that "[t]hat the Board *willfully* effected a physical invasion of CMP's property and thus a categorical taking without just compensation, and with *callous* disregard for CMP's rights, in violation of the 5th and 14th Amendments of the U.S. Constitution, and/or Article I, Section 4 of the Louisiana Constitution." R. Doc. 48-1 at p. 9 (emphasis added). The Court makes no finding regarding LAILD's intent.

attorney's fees and all costs, and (3) that this matter proceed to the scheduled jury trial solely on the issue of just compensation and damages. It is **DENIED** in all other respects.

      **IT IS FURTHER ORDERED** that Defendant LAILD's Motion for Summary Judgment[122] is **DENIED**.

      New Orleans, Louisiana, January 22, 2026.

**WENDY B. VITTER**
**United States District Judge**

---

[122] R. Doc. 57.

27