UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CMP, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-2298** |
| **BOARD OF COMMISSIONERS FOR THE LAFITTE AREA INDEPENDENT LEVEE DISTRICT** | **SECTION: D (1)** |

### ORDER AND REASONS

Before the Court is a Motion in *Limine* and *Daubert*/Article 702 Motion to Exclude Plaintiff's Expert Testimony Applying an Improper Measure of Compensation for Appropriation, filed by Defendant Board of Commissioners for the Lafitte Area Independent Levee District ("LAILD").[1] Plaintiff CMP, LLC ("CMP") Opposes the Motion.[2] LAILD has filed a Reply,[3] along with a Supplemental Memorandum in Support of the instant Motion.[4] After a careful review of the parties' memoranda, the record, and the applicable law, the Court **DENIES** the Motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case concerns an alleged taking of nearly eighteen acres of real property within the bounds of the Lafitte Area Independent Levee District in Jefferson Parish, Louisiana.[5] CMP owns property within the boundaries of the LAILD in Jefferson Parish.[6] As a part of the Rosethorne Basin Lafitte Tidal Protection Levee Project, LAILD entered CMP's property on or about May 27, 2024 to raise the height of an

---

[1] R. Doc. 59.
[2] R. Doc. 74.
[3] R. Doc. 84.
[4] R. Doc. 87.
[5] R. Doc. 1.
[6] *Id.*

existing levee.[7] Nearly three months later, on August 22, 2024, LAILD passed Resolution 495 that provided for an appropriation of the portion of CMP's land containing the levee.[8] On September 20, 2024, CMP filed the instant suit against LAILD for a failure to pay just compensation for a taking under the Louisiana Constitution, the Fifth and Fourteenth Amendments, and 42 U.S.C. §1983.[9]

Throughout the course of the underlying suit, CMP hired three experts to assist in calculating the value of its land occupied by LAILD. On June 23, 2025, Dr. Fred Fellner and Dr. Malcolm Guidry, professional consulting arborists, issued a single, joint report calculating the value of the trees and associated pulpwood located on the tract of property taken by LAILD.[10] According to Drs. Fellner and Guidry, "the value of the trees removed to facilitate work to construct/modify levees and drainage work resulted in the loss of approximately 1,400 tons of bottom land."[11] Using an average market price of $12 per ton, Drs. Fellner and Guidry estimated that the total loss equated to $16,048369.[12] Thereafter, on June 27, 2025, Baldwin R. Justice issued an Appraisal Report providing "an opinion of the 'just compensation' necessary to place [CMP] in the 'same pecuniary position' as prior to the taking" of the land by

---

[7] R. Doc. 1.
[8] R. Doc. 50-1; R. Doc. 50-2.
[9] R. Doc. 1.
[10] R. Doc. 87-1.
[11] *Id.* at p. 3.
[12] *Id.* Specifically, Drs. Fellner and Guidry stated that "Based upon a range of prices we chose an average market price of $12 per ton. The total loss, therefore, is calculated at 1,337.39 tons X 12 $/ton = $16,048369." *Id.* That final calculation appears to be a typographical or mathematical error which does not impact this analysis.

LAILD.[13] Mr. Justice concluded that the total just compensation owed to CMP, as a result of the alleged taking by LAILD, was $3,755,000.[14]

On August 18, 2025, LAILD filed the instant Motion in *Limine* and *Daubert*/Article 702 Motion to Exclude Plaintiff's Expert Testimony Applying an Improper Measure of Compensation for Appropriation, seeking to exclude, or alternatively limit, the testimony of CMP's expert witnesses Baldwin R. Justice, Dr. Fred Fellner, and Dr. Malcolm Guidry.[15] In the Motion, LAILD contends that:

> Plaintiff identified and designated Justice as an expert in land value appraising to determine the market value of property appropriated (and already compensated) by LAILD. At Plaintiff's direction, Justice offered an appraisal report that seeks to independently determine compensation due for the appropriation. Justice issues his report and opinions, however, under the false assumption provided by Plaintiff that the claim involves an 'eminent domain' or expropriation legal standard, despite the fact that this case only involves the more restricted compensatory scheme of an appropriation by an arm of the State of Louisiana for the building of a levee. Accordingly, Plaintiff and Justice advance an incorrect and legally impermissible measure of compensation for this claim that is not only improper and irrelevant, but would only serve to mislead or confuse the jury and unfairly prejudice LAILD.[16]

Further, as it pertains to CMP's witnesses Drs. Fellner and Guidry, LAILD asserts that:

> Dr. Fellner and Mr. Guidry opine that Plaintiff is entitled to loss of bottom land pulp wood. Under *Jarreau*, the measure of compensation for an appropriation is fair market value which 'does not include loss profits or other severance damages.' If Dr. Fellner and/or Mr. Guidry are allowed to testify that Plaintiff suffered loss of damages that he is not legally entitled to recover, such testimony would be inherently not helpful to the trier of fact and unreliable under Article 702. Moreover,

---

[13] R. Doc. 59-5 at p. 4.
[14] *Id.* at p. 6.
[15] R. Doc. 59; R. Doc. 87.
[16] R. Doc. 59 at p. 1.

of the expert report and analyses submitted by Baldwin Justice, MAI, Mr. Fellner and Mr. Guidry. Exclusion or limitation of their opinions must be denied."[21]

In Reply, LAILD claims that:

> Plaintiff's objections to the manner in which this appropriation took place do not change the fact that it is and was an appropriation and nothing more. Under the law of appropriation, the valuation of property utilized for the purpose of building a levee or heightening a levee is the more restrictive just compensation measure required by the Fifth Amendment, which is the fair market value of the property at the time of the appropriation, based on current use of the property, before the proposed appropriated use, and without allowing for any change in value caused by levee construction. Fair market value does not include loss profits or other severance damages like loss timber or pulpwood, and does not include speculative or remote uses for a property, like business plans or highest and best use that were never brought into fruition in over twenty years.[22]

Therefore, according to LAILD:

> Plaintiff's experts seek to opine as to damages that Plaintiff is simply not entitled to under the law. With respect to Plaintiff's arborists' opinions, any losses for pulpwood are simply not included within the ambit of fair market value and to allow introduction of testimony concerning damages that Plaintiff is not entitled to is prejudicial to LAILD and only serves to confuse the jury. With regard to fair market value, both LAILD and Plaintiff's appraiser experts did assess fair market value. However, Plaintiff's appraiser did not stop his analysis at the appropriate measure of compensation. Rather, he went on to appraise it as an inverse condemnation (as he was instructed to do so by Plaintiff's counsel) and included speculative severance damages and consideration of the property's purported 'highest and best use' even though that exceeded current use. Given the law in this matter as to the legal public servitude in place and the fact that this is an appropriation, any testimony as to the wrong measurement of compensation and the speculative nature and circumstances taken into account by Mr. Baldwin in overinflating the valuation can do nothing more than confuse the jury, mislead the jury and prejudice LAILD.[23]

---

[21] *Id.* at p. 6.
[22] R. Doc. 84 at p. 4.
[23] *Id.* at pp. 4–5.

5

## II.     LEGAL STANDARD

The district court has considerable discretion to admit or exclude expert testimony under Fed. R. Evid. 702,[24] and the burden rests with the party seeking to present the testimony to show that the requirements of Rule 702 are met.[25] Rule 702 first requires that a witness is qualified "as an expert by knowledge, skill, experience, training, or education[.]"[26] "District courts must be assured that the proffered witness is qualified to testify by virtue of his knowledge, skill, experience, training, or education."[27] "To qualify as an expert, the witness must have such knowledge or experience in his field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth."[28]

Rule 702 provides that an expert witness "qualified . . . by knowledge, skill, experience, training, or education may testify in the form of an opinion" when all of the following requirements are met:

> (a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)     the testimony is based on sufficient facts or data;
> (c)     the testimony is the product of reliable principles and methods; and
> (d)     the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.[29]

---

[24] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000); *Tajonera v. Black Elk Energy Offshore Operations, LLC*, Civ. A. No. 13-0366 c/w 13-0550, 13-5137, 13-2496, 13-5508, 13-6413, 14-374, 14-1714, 2016 WL 3180776, at *8 (E.D. La. June 7, 2016) (Brown, J.) (citing authority).
[25] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).
[26] Fed. R. Evid. 702.
[27] *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013)(citation modified).
[28] *U.S. v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999)(discussing witnesses whose expertise is based purely on experience).
[29] Fed. R. Evid. 702.

Rule 702 codifies the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which charges district courts to act as "gatekeepers" when determining the admissibility of expert testimony.[30] "To be admissible under Rule 702, the court must find that the evidence is both relevant and reliable."[31] Even if an expert satisfies *Daubert* and Rule 702, "[e]xperts cannot 'render conclusions of law' or provide opinions on legal issues."[32]

According to the Fifth Circuit, reliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid, while relevance depends on whether the reasoning or methodology underlying the testimony can be properly applied to the facts at issue.[33] The purpose of the reliability requirement is to exclude expert testimony based merely on subjective belief or unsupported speculation.[34]

To satisfy the reliability prong of the *Daubert*/Rule 702 analysis, a "party seeking to introduce expert testimony must show (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[35] To prove reliability, the proponent of the expert testimony must

---

[30] *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).
[31] *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012) (citing *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010)).
[32] *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009)).
[33] *Ebron*, 683 F.3d at 139 (quoting *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002)).
[34] *Tajonera*, 2016 WL 3180776, at *8 (citing *Daubert*, 509 U.S. at 590).
[35] *Recif Res., LLC v. Juniper Cap. Advisors, L.P.*, Civ. A. No. H-19-2953, 2020 WL 5623982, at *2 (S.D. Tex. Sept. 18, 2020) (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)) (internal quotation marks omitted).

present some objective, independent validation of the expert's methodology.[36] The reliability inquiry requires the Court to consider certain factors including: (1) whether the technique has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the technique's potential error rate; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique is generally accepted in the relevant scientific community.[37] The objective of this Court's gatekeeper role is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[38]

Finally, proposed "expert testimony must be relevant, not simply in the sense all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue."[39] "[T]he trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument."[40]

### III. ANALYSIS

LAILD does not challenge the qualifications of Baldwin Justice, Dr. Fellner, or Dr. Guidry, nor does it argue that their expert reports are the products of unreliable methodology or principles.[41] Instead, LAILD contends that the expert reports of

---

[36] *Id.* (citing *Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013)).
[37] *See Burleson v. Texas Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004).
[38] *Kumho Tire Co.*, 526 U.S. at 152; *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006).
[39] *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).
[40] *In re Air Crash Disaster at New Orleans, Louisiana*, 795 F.2d 1230, 1233 (5th Cir. 1986).
[41] The Court acknowledges that LAILD has stated that "[i]f Dr. Fellner and/or Mr. Guidry are allowed to testify that Plaintiff suffered loss of damages that he is not legally entitled to recover, such testimony would be inherently not helpful to the trier of fact and *unreliable* under Article 702." R. Doc. 87 at p. 2 (emphasis added). LAILD, however, fails to address how the joint report of Drs. Fellner and

Baldwin Justice, Fred Fellner, and Malcolm Guidry are irrelevant because they apply an improper method of valuation and/or compensation. The Court disagrees.

Even if evidence satisfies the requirements of Rule 702, "[o]ther evidentiary rules, such as Rule 403, may still operate to exclude the evidence."[42] Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, or if the fact it seeks to prove is of consequence in determining the action.[43] While all relevant evidence is admissible, the Court may exclude relevant evidence if its probative value is substantially outweighed by danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[44] However, the Fifth Circuit has held that, "[t]he exclusion of evidence under Rule 403 should occur only sparingly."[45] Additionally, "[r]elevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403."[46] District courts are afforded wide discretion in determining the relevance and admissibility of evidence under Fed. R. Evid. 401 and 402.[47] A district court's ruling on evidentiary issues is reviewed by an appellate court for an abuse of discretion.[48]

---

Guidry are products of unreliable methodology under Rule 702. *See* R. Docs. 59, 84, and 87. A mere assertion, with nothing more, is insufficient to challenge the underlying methodology of the expert reports.

[42] *U.S. v. Posado*, 57 F.3d 428, 435 (5th Cir. 1995)(citing *Daubert*, 509 U.S. at 595).
[43] Fed. R. Evid. 401.
[44] Fed. R. Evid. 403.
[45] *United States v. Pace*, 10 F.3d 1106, 1115-16 (5th Cir. 1993); *See United States v. Powers*, 168 F.3d 741, 749 (5th Cir. 1999) (same).
[46] *Pace*, 10 F.3d at 1115-16 (quotation omitted).
[47] *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008).
[48] *Kelly v. Boeing Petroleum Services, Inc.*, 61 F.3d 350, 356 (5th Cir. 1995).

Thus, when the district court conducts "a carefully detailed analysis of the evidentiary issues and the court's own ruling, appellate courts are chary about finding an abuse of discretion."[49]

Here, the Court finds that both the expert report of Baldwin Justice, along with Drs. Fellner and Guidry's joint report, are relevant to the issue of damages. All three experts opine on the valuation of the land taken by LAILD, and their reports will assist the jury in understanding the appropriate amount of compensation, if any, owed to CMP. Moreover, the Court finds that the testimony based on the expert reports do not present a danger of unfair prejudice, will not confuse the issues, or mislead the jury. In a previous Order and Reasons, the Court has found that LAILD engaged in an unconstitutional partial taking of CMP's property and determined that CMP is entitled to recover damages pursuant to the theory of inverse condemnation under Louisiana law.[50] Specifically, the Court reasoned that CMP would be entitled to present evidence relating to the "highest and best use" of the taken property, severance damages, and fair market value of the property.[51]

The Court's determination as to the legal standard for any damages undercuts LAILD's argument, as such evidence is relevant for the jury in deciding the factual determination of damages. Because CMP's expert reports enumerate damages consistent with those categories, the Court declines to exclude the testimony of the

---

[49] *Id.*
[50] R. Doc. 106.
[51] *Id.*

experts as to their expert reports under Rule 403.[52] Importantly, to the extent that any portion of the reports are inconsistent with the Court's legal determination of appropriate damages for a partial taking as set forth in detail in the Court's previous Order and Reasons,[53] the experts will be precluded from testifying as to those inconsistent parts of the reports. Finally, as appropriate in our justice system, LAILD may use cross-examination, its own experts, or argument to the jury to counter the testimony of CMP's experts.

### IV.     CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Motion in *Limine* and *Daubert*/Article 702 Motion to Exclude Plaintiff's Expert Testimony Applying an Improper Measure of Compensation for Appropriation[54] is **DENIED.**

New Orleans, Louisiana, January 22, 2026.

*/s/ Wendy B. Vitter*
**WENDY B. VITTER**
**United States District Judge**

---

[52] The Court has separately deferred its ruling as to whether both arborists, Drs. Fellner and Guidry, may testify or whether allowing both to testify would be a waste of time and present needless cumulative evidence. *See* R. Doc. 108.
[53] R. Doc. 106.
[54] R. Doc. 59.

11